UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| V. ) | NO.  08-148-LTS |
| ) | |
| TAREK MEHANNA ) | |

## MOTION FOR RELEASE ON BAIL

Defendant Tarek Mehanna respectfully requests that this Court order his release on bail pending trial. Mr. Mehanna should be released because the facts of his case demonstrate that he does not pose a risk of flight and is not a danger to the community. Rather, his background and his behavior throughout the investigation of this matter demonstrate that he is not dangerous and clearly does not intend to and will not flee. Mr. Mehanna has proposed conditions of release, described below, but is prepared to abide by whatever conditions the Court concludes are necessary or appropriate to assure his appearance and the community's safety.

## I. BACKGROUND

A.   Family and Professional Background

Mr. Mehanna is a United States citizen who was born in the United States, in Pittsburg, Pennsylvania. His family moved to Massachusetts when he was about seven years old. He grew up in Sudbury, and graduated from Sudbury High School in 2000. Mr. Mehanna's parents and siblings also reside in Massachusetts. Mr. Mehanna recently completed his studies at the Massachusetts College of Pharmacy and Health Sciences, and graduated on May 16, 2008. His younger brother, Tamer Mehanna, studies at the same school. Mr. Mehanna's father, Ahmed Mehanna, is a professor of medicinal chemistry there. His mother, Souad Mehanna, has a childcare business in her home. Both parents are United States citizens. Mr. Mehanna is close to his parents. He lives with them in their home in Sudbury, and they are committed to supporting their son during this difficult period. If released on bail, he would continue to live with his parents in Sudbury.

In addition to his studies, from December 2006 until recently, Mr. Mehanna worked as an intern at Walgreens Pharmacy in Marlborough, Massachusetts. He has also worked at rotating medical sites during the week, as a part of his course of study.

Mr. Mehanna is a religious person, and is a respected and
committed member of his Muslim community in Massachusetts.

At the time of his arrest, Mr. Mehanna was boarding an
airplane at Logan International Airport with his parents. This
was the first step in his move to Saudi Arabia, where he was to
fulfill his dream of living and working in the middle east. His
parents were going to accompany him on the airplane trip from
Boston to New York. At that point, they were going to see their
son off and return to Boston as he went on to Saudi Arabia. Upon
his arrival there, representatives of the King Fahad Medical
City were planning on meeting him at the airport. Mr. Mehanna
had a labor contract with the facility to become its newest
pharmacist.

B.    Background of the Investigation

Mr. Mehanna has been under investigation by the Federal
Bureau of Investigation (FBI), to his knowledge, since
approximately 2005. FBI agents have interviewed him multiple
times during that period, beginning in October of 2005. On April
22, 2008, they informed him and his parents of their intention
to charge him with making false statements to a federal officer.
At no time during this lengthy period did Mr. Mehanna take any
steps to flee in order to avoid the investigation or its

consequences. When he was informed of the government's intention
to bring charges against him, rather than fleeing, he retained
counsel in order to prepare to defend himself in court.

## II. DISCUSSION

Mr. Mehanna should be released because his behavior and
history clearly demonstrate that he is not a flight risk and he
is not a danger to the community. Mr. Mehanna has met his burden
of coming forward with evidence that he is not a flight risk or
a danger, and this evidence is sufficient to overcome any
negative presumptions against him. The government bears the
burden of persuasion to demonstrate that no conditions can
ensure Mr. Mehanna's appearance and the community's safety, and
has not met its burden in this case. Rather, the evidence shows
that any number of conditions are available which would
certainly suffice to ensure that the community is safe and these
proceedings are able to go forward with Mr. Mehanna's
participation.

A.   Factors in Detention Determination

The factors that a court must consider in a detention
hearing demonstrate that Mr. Mehanna should be released. This is
true whether or not the Court determines that he is subject to
the rebuttable presumption that no conditions can assure his

4

appearance and the safety of the community, based upon the charges that he is facing. See 18 U.S.C. § 3142(e).

Even if the Court concludes that Mr. Mehanna is subject to the presumption, that conclusion would simply require him "to produce some evidence to rebut the presumptions . . . The burden of persuasion remains with the government with regard to the questions of flight and danger." United States v. DiGiacomo, 746 F.Supp. 1176, 1181 (D. Mass. 1990). The evidence in this case supports the conclusion that Mr. Mehanna should be released pending trial and therefore rebuts any contrary statutory presumption that applies to him. The burden, therefore, is on the government to show by a preponderance of the evidence that Mr. Mehanna is a risk of flight, and by clear and convincing evidence that he is a danger to the community. See, e.g., United States v. Simone, 317 F.Supp.2d 38, 42 (D. Mass. 2004). In reaching its determination in this case, the Court must consider the nature and circumstances of the offense; the weight of the evidence; Mr. Mehanna's history and characteristics; and the nature and seriousness of the danger to any person or the community that would be posed by his release. 18 U.S.C. § 3142(g). These factors are addressed in the sections below

evaluating the risks that Mr. Mehanna will flee or pose a danger
to the community.

B.   Risk of Flight

Mr. Mehanna is a United States citizen who has spent his
life in this country. He has meaningful roots in this area. He
intends to remain in Massachusetts during the pendency of this
case. This will present no difficulty to Mr. Mehanna. His entire
immediate family, with whom he is very close, resides close to
him in Massachusetts. He has deep ties to the community as he
attended grade and high school here. He also attended college at
the same school where his father teaches and his brother
attends. His religious community is here and is an important
source of support and inspiration for him. Although his parents
are immigrants from Egypt and he has visited Egypt with them on
vacations, his home is in Massachusetts. He has always lived in
the United States. This history, and these community and family
ties, are important factors demonstrating that he is not likely
to pose a flight risk. He also has no history or drug or alcohol
abuse, and his religion forbids the use of drugs and alcohol.
See § 3142(g)(3)(A). Mr. Mehanna has no criminal record and has
never been arrested; as such, he was not on probation, parole,

or other release for any offense when arrested in this case. See § 3142(g)(3)(B).

Mr. Mehanna proposes as a condition of release that he turn his passport in to pretrial services. Furthermore, Mr. Mehanna is not wealthy, and FBI agents have also told Mr. Mehanna that they have alerted intelligence agencies in Egypt and Saudi Arabia about him. Under these circumstances, Mr. Mehanna could be in more danger if he left the United States than in the United States. This fact would be a great disincentive to him if he were inclined to flee.

Mr. Mehanna's behavior over the past several years strongly suggests that he will appear as required by the Court and does not have any intention to flee. He has been aware for a very long time of the investigation into his actions and its progress, and he has not fled the country or made any attempt to flee. Even when he and his parents were informed that the government was considering bringing serious charges against him, he did not flee and instead retained counsel, demonstrating his intent to remain and fight the charges legally. Nonetheless, he could not keep his life on hold indefinitely. When he had an opportunity to obtain a prestigious job at a renowned medical facility in Saudi Arabia, he accepted it. He did not do so

7

surreptitiously, but openly, telling family and friends about this opportunity. The present criminal charge against him has led his family to notify the medical facility that he will no longer be accepting the job. While the fact that he has never been arrested prior to this case necessarily means that Mr. Mehanna has no record of appearing as required at past court hearings, these circumstances demonstrate that he does not intend to flee. See § 3142(g)(3)(A). Rather, he has acted responsibily by preparing to present a defense against the government's accusations.

Finally, Mr. Mehanna's parents, with whom he has a very close and open relationship, are willing to serve as Mr. Mehanna's custodians, if necessary. Mr. Mehanna is willing to take whatever steps are deemed necessary to secure his appearance, including the appointment of his parents as his custodians; restrictions on his personal associations or travel; reporting on a regular basis to pretrial services; compliance with a specified curfew; and any other conditions that the Court finds are suited to his case. Given these facts, Mr. Mehanna respectfully requests that the Court set whatever condition or combination of conditions it deems necessary for his release on bail pending trial.

C.   Danger to the Community

Mr. Mehanna does not pose any danger to the community, nor does the government allege that he does in the affidavit filed by Special Agent Nambu. He has no prior criminal record and he is not accused of any acts of violence in this case. Mr. Mehanna is not accused of activities that pose any danger to his community. There is no allegation that Mr. Mehanna has ever in his life acted violently against any institution or individual, or that he has ever so much as handled a firearm or explosive. See § 3142(g)(1). The "clear and convicing" evidence of a threat to safety that has formed the basis of detention in other cases is not present here.

C.   Proposed Conditions for Release

While Mr. Mehanna is amenable to any reasonable conditions of release that the Court deems appropriate pursuant to 18 U.S.C. § 3142(c), he offers the following three proposed conditions:

1.   He will be required to provide a $50,000 unsecured bond;

2.   His movements will be restricted to the Commonwealth of Massachusetts. He will not be allowed to travel to any other state in the United States of America or any foreign country;

3.   He will turn in his passport to pretrial services.

### III. CONCLUSION

Mr. Mehanna's family ties, substantial ties to the United States and his local community in Massachusetts, lack of criminal record, and choice not to flee although aware of a possible criminal charge being brought against him since April of 2008 all demonstrate that reasonable conditions can be crafted to assure his presence as required without in any way jeopardizing these proceedings or the safety of any person or the community. Mr. Mehanna therefore respectfully requests that this Court grant his motion for release.

Tarek Mehanna
By His Attorneys

CARNEY & BASSIL

/s/ J.W. Carney, Jr.
J. W. Carney, Jr.
B.B.O. # 074760
Carney & Bassil
20 Park Plaza, Suite 1405
Boston, MA 02116
617-338-5566  tel
617-338-5587  fax
jcarney@CarneyBassil.com

Dated: November 18, 2008

**APPENDIX**

Exhibit 1          Tarek Mehanna's diploma from Massachusetts
                   College of Pharmacy and Health Sciences

Exhibit 2          Ahmed Mehanna's on-line profile as professor
                   of medicinal chemistry at Massachusetts
                   College of Pharmacy and Health Sciences

Exhibit 3          On-line information regarding King Fahad
                   Medical City

Exhibit 4          Tarek Mehanna's labor contract with King
                   Fahad Medical City



# Massachusetts College of Pharmacy and Health Sciences

UPON RECOMMENDATION OF THE FACULTY,

AND BY AUTHORITY OF THE BOARD OF TRUSTEES, CONFERS UPON

## TAREK A. MEHANNA

THE DEGREE OF

## DOCTOR OF PHARMACY

WITH THE HONORS, RIGHTS, PRIVILEGES AND RESPONSIBILITIES PERTAINING THERETO.

IN TESTIMONY WHEREOF, THIS DIPLOMA HAS BEEN SIGNED BY THE DULY AUTHORIZED OFFICERS

OF THE COLLEGE AND THE BOARD OF TRUSTEES AND SEALED WITH ITS CORPORATE SEAL.

MAY 16, 2008

CHAIRMAN, BOARD OF TRUSTEES

VICE PRESIDENT FOR ACADEMIC AFFAIRS AND PROVOST

PRESIDENT

DEAN, SCHOOL OF PHARMACY

# MASSACHUSETTS COLLEGE *of* PHARMACY *and* HEALTH SCI



Directory

home › directories

In This Sec

A-Z List
By Schoc
By Progr
By Camp
Search

## ...med S. Mehanna, PhD
...fessor of Medicinal
...mistry

...phone: 617.732.2955
...il: ahmed.mehanna@mcphs.edu
...ary Office: W326
...puses: Boston

**Schools/Departments**
Graduate Studies

Pharmaceutical Sciences-Boston

School of Pharmacy-Boston

**Programs**
Chemistry/Medicinal Chemistry (MS, PhD)

Chemistry/Pharmaceutical Chemistry (BS/MS)

Pharmaceutical Sciences (BS)

Pharmaceutics (MS, PhD)

**Education**
PhD in Medicinal Chemistry, 1986
School of Pharmacy
University of Pittsburgh, Pittsburgh, Penn.

**Areas Of Teaching**
Undergraduate: Medicinal Chemistry

Graduate: Heterocyclic Chemistry

Chemistry of Peptides and Proteins

Advanced Medicinal Chemistry

## Scholarly Interests
Educational Articles

Drug Design:
Design, Synthesis and Biological Testing of hemoglobin-S antigelling agents, for potential use as drugs to treat Sickle Cell Anemia.

Design, Synthesis and Biological Testing of Novel Calcium Channel blockers for potential use as antihypertensive, antianginal, and antiarrhythmic agents.

Design, Synthesis and Biological Testing of non-competitive inhibitors for Angiotensin Converting Enzyme for potential use as antihypertensive, antianginal and antiarrhythmic agents.

Design, Synthesis and Biological Testing of Hemoglobin Modifiers, for potential use as anticancer agents.

Development of Analytical Techniques to evaluate the biological activities of Organic compounds, especially in the areas of ACE inhibitors and Sickle Cell Research.

## Peer-Reviewed Articles & Book Chapters
Nase Z. Alsharif, Kimberly A. Galt, Ahmed S. Mehanna, Robert Chapman, and Alaba M. Ogunbadeniyi. Instructional Model to Teach Clinically Relevant Medicinal Chemistry. American Journal of Pharmaceutical Education, 2006; 70(4), Article 91, page1-12.

Ahmed S. Mehanna. Insulin and Oral Anti-diabetic Agents American Journal of Pharmaceutical Education, 2005; 69(5), 1-11.

Ahmed S. Mehanna, NSAIDs: Chemistry and Pharmacological Actions, American Journal of Pharmaceutical Education. 2003; 67 (2), 1-7.

Ahmed S. Mehanna and Jinyung Kim, Design, synthesis, and biological testing of thiosalicylamide derivatives as a novel class of Calcium Channel Blockers. Bioorganic & Medicinal Chemistry. 13, 4323-4331, 2005.

Mehanna, A.S. Sickle Cell Anemia and Antisickling Agents Then and Noww Current Medicinal Chemistry, 8, 79-88, 2001.

Mehanna, A.S. and Dowling, M. Liquid Chromatographic Determination of Hippuric acid for The Evaluation of Ethacrynic Acid as Angiotensin Converting Enzyme Inhibitor. Journal of Pharmaceutical and Biomedical Analysis, 19, 967-973 (1999).

Ahmed S.Mehanna. Medicinal Chemistry Case studies in: Mastering Pharmacy Licensure &Certification, part II, By Kosgarten, and Pisano (editors), McGraw-Hill, Inc. 2006.

Ahmed S. Mehanna, Rationale of Design of Anti-HIV drugs. Burgerrs Medicinal Chemistry and Drug Discovery, 6th Edit. Volume V, Chapter 11, pp 457-483. Abraham, D.J. (editor), John Wiley and Sons Inc., New York, NY, 2003.

Cardiac Agents, Foyees Principles of Medicinal Chemistry, chapter 21, Williams, D. Lemke, T. (editors). Lippincott Williams and Wilkns, 2002.

PATENTS:
1. Mehanna, A.S. and Kim, J.T. Calcium Channel Blockers US patent # 6,951,860 B2, October 4, 2005.
2. Mehanna, A.S. and Kim, J.T. Calcium Channel Blockers. United States

Patent # 6541479 B1, March 2003.
3. Abraham,D.J.; Mahran,

### Editorials

Ahmed S. Mehanna, Book review, J. Med. Chem., 2003, Vol. 46, No.14, page 3178.

Reviewer for a manuscript titled: Metabolic Considerations in Prodrug Design, by: Luc P.Balant, for publication in Burgers Medicinal Chemistry and Drug Discovery, 6th edition, 2003, John Wiley and Sons, Inc.

Reviewer for the Journal of Medicinal Chemistry for a book titled: Cardiovascular Pharmacotherapeutics, second edition , 2003, by William H. Frishman, Edmund H. Sonnenblick and Dominic A. Sica (Eds), Second Edition, McGraw -Hill Medical Publishing Divis

Reviewer for a manuscript on non-nucleoside reverse transcriptase inhibitors, Reviewed for the journal: ACurrent Pharmaceutical Design,January 2002.

Wilson & Gisvolds Textbook of Organic Medicinal Pharmaceutical Chemistry Reviewed for Lippincott Williams & Wilkins, Baltimore, MD., Tenth Edition, July, 2001.

### Honors

School of Pharmacy teacher of the year Award, May 2004

School of Pharmacy teacher of the year Award, May 2002.

Advisor of the year Award, Massachusetts College of Pharmacy and Allied Health Sciences June 1998.

Trusteees Award for Teaching Excellence: Massachusetts College of Pharmacy and Allied Health Sciences, May1997.

Advisor of the year Award, Massachusetts College of Pharmacy and Allied Health Sciences June 1995.

Advisor of the year Award, Massachusetts College of Pharmacy and Allied Health Sciences June 1993.

Excellence in Scholarly Publication Award, Massachusetts College of Pharmacy and Allied Health Sciences, 1991.

### Current Professional Memberships, Service & Leadership

AACP, 1997-present

ACS, 1990-present

### Personal Interest

Reading

Sports: soccer, boxing

KFMC - Homepage





The Middle East's Leading English Language Daily

Wednesday 6 October 2004 (23 Sha'ban 1425)

Print Page

## Abdullah Opens Fahd Medical City
Mohammed Rasooldeen, Arab News —

RIYADH, 6 October 2004 — Crown Prince Abdullah inaugurated the 1,095-bed King Fahd Medical City (KFMC) here yesterday. A spectacular fireworks display, witnessed by thousands of people, marked the opening of the medical city, the largest in the Middle East.

The opening of KFMC coincided with the 23rd anniversary of Custodian of the Two Holy Mosques King Fahd's accession to the throne. King Fahd donated SR53.98 million last year to purchase medical equipment required by the complex.

With four hospitals, KFMC is the largest medical facility in the Middle East built at a cost of SR2.3 billion. KFMC's yearly operating budget is estimated at SR300 million for medical and non-medical maintenance and catering contracts.

"We are proud that this is the largest and the most advanced medical facility in the Middle East which specializes in treating rare and chronic diseases," said Minister of Health Dr. Hamad ibn Abdullah Al-Manie in his inaugural address. It is expected to treat more than 50,000 in-house patients and more than 600,000 outpatients annually, the minister said.

The minister announced the government's plan to establish similar specialist hospitals all over the country. Prince Abdullah will open the newly established 640-bed King Fahd Specialist Hospital in Dammam this month. The foundation stone will be laid for another specialist hospital in Hail shortly, he added.

The minister pointed out that KFMC has opened a college of medicine in September where 40 male students have been enrolled. This facility, he said, will enroll female undergraduates later.

"Crown Prince Abdullah has given his instructions to fully operate the medical city this year and establish three more centers for tumors, open heart surgery and diabetes," Al-Manie said.

Dr. Al-Manie said the decision to open the huge medical complex was taken with the support of the crown prince and added that the implementation of the medical city, which has been provided with the most sophisticated medical equipment, aims at extending excellent medical services to all citizens.

The governors of Najran and Hail, Prince Mishaal ibn Saud and Prince Saud ibn Abdul Mohsin, conveyed their greetings and good wishes to the crown prince via satellite TV screens on display to the guests who included Riyadh Governor Prince Salman. Crown Prince Abdullah presented mementos to the directors of the four hospitals of the KFMC. He also honored Dr. Abdul Aziz Niyaz, director general of medical license and pharmacies department at the Health Ministry, by awarding him the King Abdul Aziz Medal of the First Order. Niyaz made headlines after refusing to accept SR10 million bribe from the owner of a pharmacies group.

The complex located in the north of the capital in Sulaimaniyah area incorporates a 459-bed main hospital with specialty clinics to treat chronic diseases, a 50-bed rehabilitation unit, a 300-bed pediatric hospital, a 250-bed maternity hospital and a psychiatric hospital.

In addition to the hospitals there is a burns treatment unit, kidney center, intensive care facilities, radiology, rehabilitation facilities and spinal cord treatment unit.

The complex also includes an ambulatory care building, an administration building, a services building, 3,000 staff housing units, and a community center including a mosque, shopping center, a school, a day care center and a recreational center.

KFMC plans to use the world's first fully digitized classrooms to teach radiology to Saudi doctors.

Vitrea 2, a state of the art imaging system for medical imaging, has been built in to save time and money for clinicians. Vitrea 2 workstations provide a gallery of automated three dimensional images plus real-time reconstructions of scanner data for specific clinical applications.

One of the major advantages is that with a simple mouse click, it transforms ordinary black and white images into extremely accurate and detailed color ones. It is fast, easy to use and cost-effective, making it very attractive for multiple hospital departments.

The Kingdom currently has 320 government and private hospitals with 46,840 beds, according to a report of the Ministry of Health. The number of government hospitals reached 189 with 27,826 beds. They are supported by 1,766 primary health care centers.

Government hospitals employ 14,827 physicians, 892 pharmacists, 36,219 nurses and 21,885 paramedics.

Copyright: Arab News © 2003 All rights reserved. Site designed by: **arabix**

POWERED BY
BNET.com

FindArticles > Market Wire > October, 2008 > Article > Print friendly

**King Fahad Medical City Improves Care, Costs with Nortel Healthcare Solution**

King Fahad Medical City ,(2) one of the largest healthcare providers in the Middle East, is enhancing care and managing costs for its four hospitals, 269 primary clinics and more than 650,000 patients annually with a healthcare solution built on a foundation of Unified-Communications -ready technology from Nortel(1) (TSX: NT)(NYSE: NT).

This solution, deployed by Nortel and regional channel partner Baud Telecom, integrates IP telephony, enhanced call answering, contact center and interactive voice response (IVR) capabilities with legacy voice systems to promptly connect patients with the right clinicians for responsive, personalized care.

It also provides King Fahad Medical City, known for its technical innovation and early adoption of advanced medical technology, with a foundation for future communications-enabled e-health applications and services.

"As a leader in applying technology to improve patient care and reduce costs, we constantly strive for better and more effective ways to serve our patients," said Jumah F. Al Anazi, associate executive director, Patient Affairs, King Fahad Medical City. "Nortel has empowered us to provide each patient with even greater attention and care than before - so much so that we are widely sought for telephony consulting by Ministry of Health hospitals, clinics and patients throughout Saudi Arabia."

"More and more healthcare providers are recognizing the need for technology to enhance patient care and operational efficiency," said Ramin Attari, vice president and managing director, Nortel Middle East. "King Fahad Medical City is a leader in this evolution with help from Nortel communications solutions for safe, timely and patient-centric care."

The Nortel healthcare solution for King Fahad Medical City includes Nortel Communication Server 1000 , which provides IP and legacy telephony services for more than 5,000 extensions. It also includes Nortel's Contact Center with skills-based routing and management reporting capabilities and Nortel Media Processing Server 500 with automated routing and multi-language speech capabilities for a more efficient and personalized customer experience.

About Nortel

Nortel is a recognized leader in delivering communications capabilities that make the promise of Business Made Simple a reality for our customers. Our next-generation technologies, for both service provider and enterprise networks, support multimedia and business-critical applications. Nortel's technologies are designed to help eliminate today's barriers to efficiency, speed and performance by simplifying networks and connecting people to the information they need, when they need it. Nortel does business in more than 150 countries around the world. For more information, visit Nortel on the Web at www.nortel.com . For the latest Nortel news, visit www.nortel.com/news .

Certain statements in this press release may contain words such as "could", "expects", "may", "anticipates", "believes", "intends", "estimates", "targets", "envisions", "seeks" and other similar language and are considered forward-looking statements or information under applicable securities legislation. These statements are based on Nortel's current expectations, estimates, forecasts and projections about the operating environment, economies and markets in which Nortel operates. These statements are subject to important assumptions, risks and uncertainties, which are difficult to predict and the actual outcome may be materially different from those contemplated in forward-looking statements. For additional information with respect to certain of these and other factors, see Nortel's Annual Report on Form10-K, Quarterly Reports on Form 10-Q and other securities filings with the SEC. Unless otherwise required by applicable securities laws, Nortel disclaims any intention or

obligation to update or revise any forward-looking statements, whether as a result of new information, future events or otherwise.

(1)Nortel, the Nortel logo and the Globemark are trademarks of Nortel Networks.

(2)This is a 3rd party link as described in our Web linking practices .

Contacts: Nortel Jose-Luis Menoyo +34-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 Email: menoyo@nortel.com Nortel David Salvatore (613) 765-6807 Email: davidsa@nortel.com Website: www.nortel.com



عقد عمل موحد

# GENERAL EMPLOYMENT CONTRACT

<table>
<tr><td><u>**KINGDOM OF SAUDIA ARABIA**</u></td><td>المملكة العربية السعودية</td></tr>
<tr><td><u>**MINISTRY OF HEALTH**</u></td><td>وزارة الصحة</td></tr>
<tr><td><u>**KING FAHAD MEDICAL CITY**</u></td><td>مدينة الملك فهد الطبية</td></tr>
<tr><td><u>**CITY/RIYADH**</u></td><td>بمدينة الرياض</td></tr>
<tr><td><u>**AUTONOMOUS OPERATION PROGRAM**</u></td><td>برنامج التشغيل الذاتي</td></tr>
<tr><td><u>**KING FAHAD MEDICAL CITY**</u></td><td>مدينة الملك فهد الطبية</td></tr>
</table>

\* This contract contains nine pages including the cover.

M.O.H

**KING FAHAD MEDICAL CITY - RIYADH**

**AUTONOMOUS OPERATION PROGRAM**

**KING FAHAD MEDICAL CITY**

وزارة الصحة

مدينة الملك فهد الطبية

برنامج التشغيل الذاتي لمدينة الملك فهد الطبية

رقم الاجراء:       التاريخ: 04-08-1429

عقد عمل

**EMPLOYMENT CONTRACT**

This agreement has been made between :

KING FAHAD MEDICAL CITY

Hereafter shall be referred to as (first party)

and

**Employee_no:**

**Name: Tarek Mehanna**

**Nationality: American**

ID/Passport No :

**103222574**

And hereafter shll be referred to as (second party)

the following:

لقد تم الاتفاق بين كل من:

مدينة الملك فهد الطبية

يشار إليها فيما بعد ب (الطرف الأول)

و

رقم الموظف:

الأسم: طارق مهنا

الجنسية: أمريكي

بموجب بطاقة أحوال/جواز سفر رقم:

**103222574**

ويشار اليه فيما بعد بـ(الطرف الثاني)

على التالي:

*Article (1) Job and Assignment:*

The second party will be assigned by the first party to work at the King Fahad Medical city ,Riyadh , in accordance with the work requirement, and to carry out all assigned duties as follows:

**Position title:Clinical Pharmacist Consultant**

المادة (1) العمل و الوظيفة:

أن يعمل الطرف الثاني لدى الطرف الأول في مدينة الملك فهد الطبية بالرياض والقيام بجميع متطلبات الوظيفة على النحو التالي:

مسمى الوظيفة: استشاري صيدلي اكلينيكي

*Article(2)contract period:*

The contract is valid for (12 ) Hijri (Arabic) month, commencing from the date of arrival of the second party to KFMC (local hire) or to the kingdom (overseas hire). Renewed automatically for the same period. Conditions by virtue of the law, if no written notice is given by either party for termination of contract at least 60 days before the expiry date, except for temporary contracts.

المادة (2) مدة العقد:

مدة هذه العقد ( 12 )شهر هجرية ويسري مفعوله من تاريخ وصول الطرف الثاني للمدينة الطبية ورفع مباشرته للعمل إلا إذا كان التعاقد خارجيا فيكون من وقت وصوله للمملكة على أن يبدأ العمل خلال ثلاثة أيام من ذلك ويجدد العقد تلقائيا ويقوة النظام مالم يخطر أحد الطرفين الآخر كتابياً بمدة لاتقل عن ستين يوم ما عدا العقود المؤقتة.

2

**M.O.H**

**KING FAHAD MEDICAL CITY - RIYADH**

**AUTONOMOUS OPERATION PROGRAM**

**KING FAHAD MEDICAL CITY**

وزارة الصحة

مدينة الملك فهد الطبية

برنامج التشغيل الذاتي لمدينة الملك فهد الطبية

*Article (3) Contract status:* :   **Family**

Contract status for each category is determined by the stated terms and conditions.

المادة رقم (3) نوعية العقد      عائلي

تحدد نوعية العقد لكل فئة حسب ما نصت عليه شروط ومميزات كل فئة.

*Article (4) Salaries and benefits:*

The second party shall be entitled to the following payments by the first party for completing the assignments ;

A. A monthly salary of SR.(21569 ) paid at the end of the hijri month, except for temporary contracts.

B. Transport allowance SR.( 600 ) paid at the end of the hijri month , the second party shall not be entitled to such allowance , if transport is provided by KFMC to and from the work site , or the employee is living in the KFMC compound . This allowance is paid only once even if transport is required more than once.

C. The first party shall provide housing to the second party if available, either in or out side the KFMC housing , in line with its stated policy and the employee housing entitlement ,depending on the contract status (married/ single) with a monthly housing allowance SR.( 3595 ) . The second party shall be entitled to such allowance if housing is not provided by the KFMC, but if the second party has left KFCM housing on his/her own discretion or if one of the married couple is receiving housing allowance from any other government agency he/she shall not be eligible for such allowance.

D. Cooked meals free of charge shall be provided to eligible employees on duty, and to eligible female staff living inside KFMC Campus, as per first part catering entitlement.

E. End of Severance Payment:

The first party shall pay the employee a severance payment for the period of service according to the approved policies of KFMC, and not less than what have been stated in the Saudi labor law and explanatory direction issued by the MOH for these articles.

المادة (4) الأجور والعزايا:

يدفع الطرف الأول للطرف الثاني مقابل قيامه بالمهام الموكلة إليه والمتعارف عليها الآتي :

أ. أجر و قدره:( 21569 ) ريال سعودي في نهاية كل شهر هجري ما عدا العقود المؤقتة.

ب. بدل نقل وقدره ( 600 ) ريال سعودي في نهاية كل شهر هجري ولا يستحق الطرف الثاني هذا البدل إذا أ منت له الطرف الأول وسيلة نقل من سكنه إلى عمله أو كان سكنه داخل سور مقر العمل ويستحق هذا البدل مرة واحدة شهريا حتى وإن كان يؤدي عمله أكثر من مرة.

ج. يؤمن الطرف الأول سكن للطرف الثاني سواء بالمدينة أو خارجها متى ماكان ذلك متوفرا على ضوء تعليمات لائحة السكن المعمول بها بالمدينة الطبية وتبعا للوظيفة التي يشغلها الطرف الثاني ونوعية العقد متزوج أو أعزبا ويصرف له بـــــدل سكن شهري وقدره ( 3595 ) ريال سعودي في حالة عدم تأمين السكن ولا يصرف بدل السكن أو بدل النقل لمن يخرج من سكن المدينة بناء على رغبته أو تم تأمين السكن لأي من الزوجين من المدينة أو أي جهة حكومية أخرى، وتكون حرية الاختيار بين البديلين لإدارة المدينة وفق مايتوفر لها.

د. وجبات الطعام أثناء المتاوبات وداخل السكن الجماعي الخاص بالموظفات العازبات على حسب تعليمات الوجبات المطبية المطبقة على عمالة الطرف الأول.

هـ. مكافأة نهاية الخدمة:

صرف مكافأة نهاية الخدمة وفق للسياسة المعتمدة بالمدينة لهذا الغرض وبما لايقل عن المنصوص عليه من نظام العمل والعمال السعودي وما صدر من تعليمات توضيحية لهذه المادة من قبل الوزارة.

3

M.O.H

KING FAHAD MEDICAL CITY - RIYADH

AUTONOMOUS OPERATION PROGRAM

KING FAHAD MEDICAL CITY

وزارة الصحة

مدينة الملك فهد الطبية

برنامج التشغيل الذاتي لمدينة الملك فهد الطبية

*Article (5) Probation Period:*

The second party shall be subjected to a fully paid probationary period being the first ninety (90) days of his or her service, except for temporary contracts. The first party may in its absolute discretion terminate this agreement during this period without previous notice and the second party is not entitled to any compensations.

المادة (5) مدة الاختبار :

يخضع الطرف الثاني لفترة اختبار وقدرها (90) يوماً من بداية العقد مدفوعة الأجر عدا العقود المؤقتة وللطرف الأول الحق في إنهاء العقد خلال فترة الاختبار المذكورة بدون إشعار مسبق ولا يستحق للطرف الثاني أي تعويض بسبب ذلك.

*Article (6) Working Hours:*

The second party shall complete 48 working hours per week in addition to on call duties in accordance with the KFMC operational requirements, and is considered to be fully paid. The second party shall not be entitled to any additional payment in working extra hours unless authorized by the administration.

المادة (6) ساعات العمل:

تحدد ساعات العمل بـ (48 ساعة) أسبوعياً بالإضافة إلى المناوبات حسب حاجة العمل وتنظيم المدينة الطبية للمناوبات وتعتبر مدفوعة الأجر بالكامل بموجب ما يدفع للطرف الثاني من أجر ومزايا بهذا العقد ولا يحق للطرف الثاني أي أجر إضافي مقابل ساعات العمل والمناوبات الأسبوعية الموضحة أعلاه مالم يتم تكليفه بمذكرة رسمية من صاحب الصلاحية بالمدينة.

*Article (7) second party duties and tasks:*

a- The second party is committed to carry out all his/her assigned duties and tasks in the most effective and appropriate manner.

b- The second party is committed to protect and safeguard the facility equipment, tools, furniture, medicines and any other items in his/her custody, and shall be responsible for any loss or damage that may occur due to misuse or negligence.

c- The second party shall be responsible for observing and complying with the work rules and regulations during official working hours and on-call duties.

d- The second party shall be personally responsible for ascertaining and complying with the laws and traditions of the Kingdom. The establishment of good relationships with his/her superiors, colleagues, patients and clients must be maintained.

e- The second party shall be responsible for observing the KFMC dress code rules and regulations in conformity with Islamic values.

f- The second party is committed to adhere to all rules and regulations of the KFMC confidentially.

المادة (7) مهام وواجبات الطرف الثاني :

أ. يلتزم الطرف الثاني بالقيام بكافة مهام وظيفته وتأديتها على أفضل وجه وبأعلى درجة من الكفاءة.

ب. المحافظة على كافة ما يستعمله من آلات وأجهزة ومعدات وأثاث وأدوية وكل ما يستعمله في عمله أو مثبت بعهدته وتقع عليه مسؤولية فقدانها أو تلفها بسبب سوء الاستعمال أو الإهمال.

ج. الالتزام بأنظمة العمل المتبعة والتوجيهات الصادرة عن المسئولين والمحافظة على أوقات العمل الرسمية المقررة والمناوبات.

د. الالتزام باحترام أنظمة وعادات المملكة وتقاليدها وحسن المعاملة للرؤساء والزملاء والمرضى والمراجعين.

هـ. الالتزام بالزي المفروض من إدارة المدينة الطبية حسب الوظائف وبما لا يتعارض مع تعاليم الدين الحنيف.

و. الالتزام والمحافظة على سرية العمل وعدم إفشاء أسراره.

*Article (8) vacations and holidays:*

1)The second party shall be entitled upon successful completion of eleven (11) months of service, to (35) days paid annual leave, which can be fully or partially postponed for not more than one year, if approved by the KFMC, according to the policy and procedures of KFMC.

المادة (8) الإجازات :

1) يستحق الطرف الثاني إجازة سنوية مدتها (خمس وثلاثين يوماً)مدفوعة الأجر بعد مضي أحد عشر شهراً. ويجوز تأجيل الإجازة السنوية أو جزء منها بموافقة المدينة الطبية حسب مصلحة العمل لمدة لا تتجاوز سنة واحدة على أن يتم ترتيب الإجازة السنوية طبقاً لمتطلبات العمل وسياسة المدينة.

4

# M.O.H
# KING FAHAD MEDICAL CITY - RIYADH
# AUTONOMOUS OPERATION PROGRAM
# KING FAHAD MEDICAL CITY

وزارة الصحة

مدينة الملك فهد الطبية

برنامج التشغيل الذاتي لمدينة الملك فهد الطبية

2) The second party shall be entitled to three (5) days emergency leave deducted from the annual leave during each contract year with fully pay, subject to approval by KFMC administration for an acceptable reason.

3) The second party shall be entitled to five (5) days Eïd-ul-Fitr holidays .

4) The second party shall be entitled to five (5) days Eid ul-Adha and an additional (5) days once during the employment period , shall be granted to a Muslim employee who has the intention to perform Hajj (Pilgrimage), and successfully completed two (2) consecutive years of service.

5) During each contract year the second party shall be entitled to thirty (30) days sick leave with full pay and following sixty (60) days with 75 % of the basic monthly salary, any further compensation is decided by The General Medical Commission.

6) During each contract year the second party shall be entitled to 3 days mortality leave with full pay for the death of husband / wife or very close relative.

7) As KFMC policy ,Saudi female employee shall be entitled to six (6) weeks maternity leave with full pay effective from the date of delivery and is considered as part of the service period.

9) The second party (if the employee is male) will be entitled to one day paid leave if new baby in his family.

10) The second party shall be entitled to three (3) days marriage leave with full pay .

2) يستحق الطرف الثاني إجازة اضطرارية مدفوعة الأجر لمدة لا تزيد عن خمسة أيام حسب السياسة المنظمة تستقطع من الأجازات السنوية في السنة التعاقدية الواحدة متى استدعت ظروفه ذلك شريطة موافقة إدارة المدينة الطبية ووجود مبرر لقبول هذه الإجازة.

3) يستحق الطرف الثاني إجازة عيد الفطر المبارك لمدة خمسة أيام .

4) يستحق الطرف الثاني إجازة عيد الأضحى لمدة خمسة أيام ويضاف إليها للموظف المسلم الذي يرغب في أداء الحج خمسة أيام مرة واحدة كل خمس سنوات لمن أمضى سنتين عمل متواصلتين في المدينة وفقاً للمادة (70) من لائحة تنظيم العمل بالمستشفيات المشغلة ذاتياً

5) يستحق الطرف الثاني إجازة مرضية لمدة ثلاثين يوماً خلال السنة التعاقدية الواحدة براتب كامل وستين يوماً بعدها بثلاثة أرباع الراتب التعويض بعد ذلك على حسب ماتقره الهيئة الطبية العامة.

6) للطرف الثاني إجازة وفاة لمدة ثلاثة أيام مدفوعة الأجر في حالة وفاة الزوج أو الزوجة أو أحد أصوله.

7) تستحق الموظفة السعودية إجازة وضع وفق سياسة المدينة الطبية لمدة ستة أسابيع من تاريخ الوضع وتعتبر من مدة الخدمة.

8) يستحق الطرف الثاني إذا كان رجلاً إجازة لمدة يوم واحد في حالة ولادة مولود له.

9) يستحق الطرف الثاني إجازة زواج لمدة ثلاثة أيام مدفوعة الأجر وذلك للموظفين السعوديين فقط .

## *Article (9) Air tickets:*

*المادة ( 9 ) تذاكر الركاب:*

Second party (Non- Saudi) employee shall be entitled to air tickets as KFMC policy:

يستحق الطرف الثاني (غير السعوديين) من الموظفين تذاكر السفر وفق السياسة المحددة لذلك:

1) Single air ticket (for overseas hire) economy class, from original country to Riyadh.

1) تذاكر قدوم له من عاصمة بلده الصادر عنها جوازه إلى مقر عمله بالمملكة بالدرجة السياحية مرة واحدة عند تعاقده ما لم يكن تعاقده داخلياً.

5

M.O.H

وزارة الصحة

KING FAHAD MEDICAL CITY - RIYADH

مدينة الملك فهد الطبية

AUTONOMOUS OPERATION PROGRAM

برنامج التشغيل الذاتي لمدينة الملك فهد الطبية

KING FAHAD MEDICAL CITY

2) Return economy air tickets for the employee who is eligible for his/her annual leave along with his family (three persons maximum) provided that their stay in the Kingdom is not less than six months. Employees recruited from Europe USA or Canada shall be entitled to economy air ticket at the lowest available cost from the site of work to the point of hire.

٢) تذكرة ذهاب وعودة بالدرجة السياحية المخفضة له ولأفراد أسرته (بحد أعلى ثلاثة أفراد) وعلى أن يكونوا مقيمين معه إقامة نظامية فعلية لمدة ستة أشهر على الأقل عندما يرخص له بإجازة سنوية من مقر عمله بالمملكة إلى عاصمة بلده الصادر عنها جواز سفره. وبالنسبة للمتعاقدين من أوروبا الولايات المتحدة وكندا يتم إركابهم من مقر عملهم بالمملكة إلى الجهة التي تم تعاقدهم منها وفي حالة عدم كفاية المدة المقررة بتذاكر الدرجة السياحية المخفضة مع المدة المقررة للإجازة يتم إركابه بالدرجة السياحية العادية.

3) One way air ticket from the Kingdom airport to the designated airport for the family members of contract upon successful completion but not for resigned or terminated employees during the contract.

٣) تذاكر ذهاب فقط له ولثلاثة من أفراد أسرته بالدرجة السياحية عند ترك الخدمة بنهاية تعاقده ما لم ينهي تعاقده باستقالة خلال سريان العقد وعليه في هذه الحالة تحمل نفقات سفره ومرافقيه على حسابه الخاص.

4) Non – Saudi employees wishing to travel by land for his/ her annual leave or spending his/her annual leave locally shall be entitled to cash in lieu equivalent to half ticket price as stated in article (39) of the legislation Manual for Autonomous Hospital Operation Programs.

٤) للموظف غير السعودي إذا سافر بطريق البر أو قضى إجازته السنوية داخل المملكة أن يطلب تعويضه عن تذاكر السفر المستحقة له نقداً بما يعادل نصف قيمتها.

5) The second party is not entitled to reimburse the cash value of the issued tickets but may change the ticket route on his / her own account.

٥) لا يجوز للموظف استرداد قيمة التذاكر المصروفة ويجوز له تغيير خط سير التذكرة مع تحمل الفرق إن وجد.

6) Saudi employee traveling on an official mission (conferences, seminars.....), shall be entitled to travel tickets in accordance with the approved KFMC by-laws.

٦) يتم تأمين تذاكر السفر بالنسبة للسعوديين في حالة تكليفه بمهمة عمل رسمية أو ندوات أو مؤتمرات وفق السياسات الداخلية المعتمدة للمدينة الطبية.

_Article (10) Treatment:_

المادة (١٠) العلاج :

The second party and his / her legal dependents shall be entitled to free medical care provided by KFMC according to the medical treatment policy of KFMC.

يحق للطرف الثاني وأفراد أسرته المقيمين معه العلاج لدى مدينة الملك فهد الطبية وفق سياسة علاج الموظفين المعتمدة بالمدينة.

_Article (11) General instructions(for non Saudis):_

المادة (١١) تعليمات عامة (غير السعوديين) :

The second party shall be committed to pay any taxes indorsed by the government in the Kingdom at present or in the further also the employee shall incur all expenses for himself / herself and his / her legal dependents required for work (residence) permit exit entry visa or any fine or penalty required by the requisite authority, unless otherwise indicated in KFMC approved policy.

يلتزم الطرف الثاني بدفع أي مبالغ تفرضها حكومة المملكة حالياً ولاحقاً خلال مدة عمله وكذلك جميع ما يترتب عليه أو على أسرته من رسوم إقامة أو تأشيرات دخول أو خروج وعودة أو أية غرامات أو مخالفات تفرضها عليه الجهات المختصة، مالم يكن هناك سياسة معتمدة بالمدينة بخلاف ذلك.

Employees on married contract status must be aware that family visas are issued to legal dependents only such as:

يحاط الطرف الثاني ( على عقد متزوج ) علماً بأن أنظمة الاستقدام المعمول بها بالمملكة. تسمح باستقدام الفئات التالية من أسر المتعاقدين :

a) The wife/ wives.

أ. الزوجات.

6

M.O.H

KING FAHAD MEDICAL CITY - RIYADH

AUTONOMOUS OPERATION PROGRAM

KING FAHAD MEDICAL CITY

وزارة الصحة

مدينة الملك فهد الطبية

برنامج التشغيل الذاتي لمدينة الملك فهد الطبية

b) Unmarried daughters without age limit.

c) Sons below 18 years of age.

*Article (12) Transfer:*

The first party reserves the right to transfer the second party to any other location inside the Kingdom at any time during the contract period and will provide transport expenses to his / her new assignment including his /her dependents to a maximum of four air tickets in case of air travel after obtaining prior approval.

ب. البنات غير المتزوجات دون اشتراط سن محدد.

ج. أبناء المتعاقدين الذكور دون سن الثامنة عشرة فقط.

المادة (12) النقل:

للطرف الأول الحق في نقل الطرف الثاني لأي جهة أخرى تراها داخل المملكة في أي وقت أثناء العقد وتتحمل تكاليف سفره وأسرته إلى مقر عمله الجديد بحدود عدد للتذاكر المقررة له بهذا العقد بالنسبة لغير السعوديين إذا كان ذلك بالطائرة بعد موافقته.

*Article(13) contract termination at the responsibility of the second party:*

The first party shall have the right to terminate and cancel the contract at the expense of the second party without notice Indemnity or repatriation ticket in accordance with article (80) of the Saudi Labor and Laborers Law and Legislation Manual for Autonomous Hospital Operation Programs.

1) If the second party forged his / her nationality or ID.

2) If the second party submitted forged documents or certificates ...etc or entered incorrect data in his /her application form to the first party to get employment.

3) If the second party failed to carry out his / her assigned duties or violated the first party rules and regulations or disclosed confidential information despite written notice.

4) If the second party proved to be unqualified or unfit for the job for any reason.

5) IF the second party behaved in a manner that caused damage or harm to the first party:

6) If the employee insults or abuses his / her superiors, colleagues, or patients and visitor verbally or by action.

7) If the second party behaved in a non-ethical manner.

8) If the second party is actively involved in political actions or accused of illegal possession or use of weapons ammunitions or promotes or provokes strikes.

9) If the employee is absented him/her self without legitimate cause for more than 20 separated days during the contract year or 10 consecutive days.

10) Any other misconduct by the employee and /or by any of his/her legal dependents which would justify the employee dismissal pursuant to article (83) of Saudi labor law.

المادة (13) فسخ العقد على مسؤولية الطرف الثاني:

يحق للطرف الأول فسخ هذا العقد على مسؤولية الطرف الثاني وعلى حسابه الشخصي دون إشعار أو تعويض أو تذاكر عودة إلى مكان التعاقد في الحالات التي نصت عليها المادة (80) من نظام العمل والعمال السعودي واللائحة التنظيمية للمستشفيات المشغلة ذاتيا على النحو التالي:

1) إذا لجأ الطرف الثاني إلى تزوير جنسيته أو استعمال هوية مزورة.

2) إذا قدم الطرف الثاني إلى الطرف الأول مستندات أو شهادات مزورة للحصول على الوظيفة أو إذا أدخل معلومات غير صحيحة أو ناقصة في طلب التوظيف.

3) إذا لم يقم الطرف الثاني بواجباته الأساسية بموجب هذا العقد أو خالف تعليمات الطرف الأول أو أفشى الأسرار الخاصة بعمله رغم إنذاره بذلك كتابيا.

4) إذا ثبت أن الطرف الثاني غير مؤهل للقيام بكامل واجباته بموجب هذا العقد لأي أسباب.

5) إذا وقع من الطرف الثاني أي تصرف يلحق الضرر بالطرف الأول.

6) إذا وقع من الطرف الثاني ضرب أو اعتداء بالفعل أو القول على أي من زملائه أو رؤسائه أو نزلاء ومراجعي المدينة.

7) إذا وقع من الطرف الثاني أي فعل يخل بالأخلاق.

8) إذا تدخل الطرف الثاني بأي نشاط سياسي أو حزبي أو جاهر به أو حصل على أي نوع من الأسلحة أو الذخيرة أو اشترك في إضراب أو حرض عليه.

9) إذا تغيب الطرف الثاني دون سبب مشروع أكثر من عشرين يوماً متفرقة خلال السنة الواحدة أو أكثر من عشرة أيام متصلة.

10) في حالة حدوث أي مخالفة أو واقعة تستوجب الفصل حسب المادة (83) من نظام العمل والعمال بالمملكة.

7

# KING FAHAD MEDICAL CITY - RIYADH
# AUTONOMOUS OPERATION PROGRAM
## KING FAHAD MEDICAL CITY

دينة الملك فهد الطبية

يل الذاتي لمدينة الملك فهد الطبية

) The first party reserves the right to terminate the contract the employee has not been certified by the Saudi Council : Health Specialties within six months from the beginning of e contract .

) Second party failure to present the original of his rtificates to the first party for verifying.

) Disciplinary termination if decided by a disciplinary mmittee or the employee being sentenced to a legal verdict more than six months imprisonment.

الأول فسخ العقد إذا لم يتمكن الطرف الثاني

لدى الهيئة السعودية للتخصصات الصحية .

بداية العقد .

توثيق أصول المؤهلات والصور وإحضارها طرف الأول .

إذا تقرر من جهة مختصة أو الحكم عليه بحد مخلة بالشرف أو الأخلاق أو الأمانة أو حكم ن ستة أشهر في أي جريمة أخرى.

## rticle (14) calendar:

لتقويم المعتمد:

abic is the formal language of this agreement and all dates entioned in this agreement are based on Hijri calendar

، هو أساس الاتفاقية وتحتسب جميع الفترات

عليها في هذا العقد على أساس التقويم .

## rticle (15) Disputes Settlement:

ت:

e two parties have agreed in principle that any controversy claim that may arise out of this contract shall be resolved arbitration to the approved policies of KFMC then by the udi labor law court. In witness hereof the parties hereto ve executed and signed this agreement which consists of o originals one for each party.

وص عليها صراحة ضمن هذه الاتفاقية يطبق معتمدة والمطبقة في المدينة ثم نظام العمل وتقع ضمن اختصاص مكاتب العمل في سعودية. وبناء على ما تقدم جرى تحرير ن قبل الطرفين على أصلين يحتفظ كل طرف

**MOH**
**KING FAHAD MEDICAL CITY-RIYADH**

**AUTONOMOUS OPERATION PROGRAM**

**KING FAHAD MEDICAL CITY**

وزارة الصحة

مدينة الملك فهد الطبية

برنامج التشغيل الذاتى لمدينة الملك فهد الطبية

Date: September 07, 2008

تحرر بتاريخ:07- 09-1429

Country: Kingdom of Saudi Arabia Riyadh City

بدولة :المملكة العربية السعودية   مدينة الرياض

<u>**Second party declaration**</u>

إقرار الطرف الثانى

I: Tarek Mehanna

أنا: طارق مهنا

Position title: **Consultant**

الوظيفة: استشاري

Herby declare that I have read and understood to the
best of my knowledge & abilities the autonomous
KFMC operation manual and the penalties &
violations attached . Their contents are an integral
part of this agreement.

أقر بأنى أطلعت على لائحة تنظيم العمل ولائحة الجزاءات والمخالفات وأن
التعليمات التى بها جزء لا يتجزأ من العقد.

Signature:---------------------------------------

وعلى ذلك جرى التوقيع/----------------

**Signatures**

**First party(King Fahad Medical City)**

التواقيع

**Name: Mohammed Hudajan Mohammed
Al-Harbi
Manager, Human Resources Dept**

Signature:

الطرف الاول:  (مدينة الملك فهد الطبيه)

الاسم:  محمد حديجان محمد الحربى

مدير إدارة الموارد البشرية

التوقيع:

**Second party(The employee)**

الطرف الثانى(الموظف)

**Name: Tarek Mehanna**
Signature:

الاسم:  طارق مهنا

التوقيع

9