UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.                                                   ) | No. 08-mj-0148 |
| ) | |
| TAREK MEHANNA, ) | |
| ) | |
| Defendant.               ) | |

ORDER ON GOVERNMENT'S MOTION FOR DETENTION.

December 9, 2008

SOROKIN, M.J.

The United States requests the detention of the Defendant, Tarek Mehanna, under 18 U.S.C. § 3142(f)(2)(a) (risk of flight) and (b) (obstruction of justice). The criminal complaint charges Mehanna with making a materially false, fictitious and fraudulent statement to an FBI agent in violation of 18 U.S.C. § 1001(a)(2).

FACTS

Mehanna is a United States citizen who was born in Pittsburgh. His family moved to Massachusetts when he was seven. He grew up in Sudbury and graduated from Sudbury High School in 2000. Both of his parents were born in Egypt and are naturalized United States citizens. He has a twenty-five year old younger brother studying at the Massachusetts College of

1

Pharmacy, who lives in Boston.  The Defendant's father is a professor at that school.  The Defendant graduated from the school in 2008.  Ms. Mehanna runs a child care business in the family home in Sudbury.

In 2006, the FBI was conducting a terrorism investigation concerning, among other matters, the participation of Daniel Maldonado in military training and action in Somalia.  On December 12, 2006, Maldonado called Mehanna and told Mehanna that he was receiving military training in Somalia and urged Mehanna to join him in training for jihad.  There is no evidence or argument before the Court suggesting that Mehanna joined Maldonado.  Phone records confirm several calls between Mehanna's cell phone and Somalia.  The next day, in a recorded telephone call, Mehanna said that Maldonado had moved to Somalia.  On December 16, 2006, the FBI interviewed Mehanna.  Much of this interview concerned a trip by Mehanna and two unidentified persons to Yemen in 2004.  The United States has provided no further detail on either the trip or the questions relating to it.  It has not suggested the inquiry about Yemen or the trip to Yemen is relevant to detention.  During the interview, the FBI also asked Mehanna about Maldonado.  Mehanna told the FBI that Maldonado was in Egypt working for a website and that he had last heard from him about two weeks earlier.  The record is unclear whether, at that time, the FBI knew that the statements were untrue.  In any event, as explained below, that become clear by February 2007.

In January 2007, Mehanna stated, in a recorded call, that "I'm gonna finish my degree, Inshallah, and if it's possible I'm gonna move overseas" to the Gulf area.

In February 2007, but prior to February 25, 2007, the media reported that Maldonado was captured.  Maldonado was subsequently charged in federal court with crimes arising from

training he received in Somalia from members of Al Qa'ida. In a February 25, 2007, telephone call Mehanna identified himself as the unnamed person who had spoken with Maldonado (in December, 2006) in articles about the communication. He speculated as to the person providing the information about the call to the FBI. Mehanna also wondered why Maldonado had confessed details of his activities because he had not described them in the call with Mehanna on December 12, 2006, only using code. Mehanna was concerned about his lie to the FBI: "That's very bad. I don't know how the heck I'm gonna explain that one. . . . but that's a problem because like lying to them in and of itself is a crime." During this call, Mehanna also said: "The only thing preventing me from leaving right now is the fact that I still have to finish school. I think, I mean, if you, if you're looking for in the long run and you wanna save yourself a lot of trouble, I think you should." The agent states that Mehanna is here advising the cooperating informant to leave the United States to avoid law enforcement scrutiny.

     At the time of these events (December, 2006, to February, 2007), Mehanna, now 26, was a student at the Massachusetts College of Pharmacy and Health Sciences. For his entire life, including the period of the FBI's investigation, Mehanna lived with his parents at their home in Sudbury. On April 22, 2008, the FBI approached Mehanna. He was advised by the FBI that he was the target of a grand jury investigation and that he would be charged with making false statements to a federal officer. In a letter to the Court later in April, Mehanna requested the appointment of counsel. The assigned district judge found Mehanna indigent and appointed him a lawyer pursuant to the Criminal Justice Act.

     In May of 2008, Mehanna graduated pharmacy school. He was and had been working as an intern at Walgreens Pharmacy in Marlborough, Massachusetts and at a local hospital. At

some point, Mehanna sought and obtained employment from a hospital in Saudi Arabia. He made the arrangements necessary to move, permanently, to Saudi Arabia. On November 8, 2008, agents arrested Mehanna as he was boarding a plane at Logan Airport to fly to New York where he was transferring to a flight to Saudi Arabia. He had a one-way ticket. His parents had purchased round trip tickets from Boston to New York so they could accompany him on the first part of his journey. Nothing in the record suggests that Mehanna sought or obtained the employment overseas secretly.

Mehanna has no criminal record.

Many members of the community have submitted letters attesting to Mehanna's character. An attending physician at UMASS Memorial for the past 14 years says Mehanna has been a "mentor and role model to the youth of the [Worcester Islamic Center] community" including the doctor's three sons. The Imam described this work as volunteering to participate in programs to help teens stay away from drugs, violence and criminal activities. A mother wrote of his polite demeanor, eagerness to help others and his willingness to spend time guiding teenagers to be better members of society. The President of the Islamic Center of Boston - Wayland described Mehanna as a volunteer teacher at the center known as someone "devoted to his family and friends." Several professors from the Pharmacy school wrote similar letters to describe Mehanna. The past President of the Islamic Center wrote positively of the Friday night sermons Mehanna presented to the congregation.

Mehanna's parents have offered to post their home in Sudbury to secure this release. They purchased the home in 1999 upon selling their former home in Sudbury. They purchased the home with the aid of a $350,000 mortgage. They own the home outright today. They paid

off the mortgage through a combination of savings and the sale of a stock in a pharmaceutical company that the Defendant's father received as a result of consulting work he performed. The home is assessed at $882,000. In addition, the parents have savings amounting to approximately $208,000, as well as 401(k) assets totaling approximately $125,000.[1] Neither parent has a criminal record. Both are described in glowing terms for their behavior and responsibility in the various letters submitted to the Court.

## LAW

The Defendant may be detained only if the Government establishes by a preponderance of the evidence that he poses a risk of flight or obstruction of justice and that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community ". 18 U.S.C. § 3142; United States v. Salerno, 481 U.S. 739 (1987); United States v. Patriarca, 948 F.2d 789 (1st Cir.1991).

In making the determination whether "any condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community," the statute directs consideration of the following factors:

(1) the nature and circumstances of the offense charges, including whether the offense is a crime of violence, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including

    (A) the person's character, physical and mental condition, family ties,

---

[1] The parents also own an apartment in Egypt which they purchased for approximately $23,000 in 2001. They believe its value has declined.

>       employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B)    whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law;
>
> (4)    the nature and seriousness of the danger to any other person or the community that would be posed by the person's release. . . .

18 U.S.C. § 3142(g).[2]

## ANALYSIS

The following facts support Mehanna's release. He appreciated his exposure to criminal prosecution at least as early as February 2007, yet he remained in the United States. In April, 2008, when confronted by FBI agents, he sought counsel and did not flee. Although he subsequently made preparations to leave the United States, he did not do so in secret. He has no criminal record. He is a United States citizen both born and raised here. His immediate family lives in Greater Boston. Many members of the community attest to his character. The United States has not sought his detention on the grounds that he poses a danger to the community nor has it suggested that he poses a public safety risk or that his release creates a risk of violence.

Nonetheless, the United States's Motion in this case is understandable: the Defendant had made plans to relocate to Saudi Arabia for an indefinite period of time and he was beginning his airplane trip (with a one-way ticket) to that destination at the time of his arrest. Several other facts buttress this concern. Saudi Arabia has no extradition treaty with the United States. In

---

[2] There has been no suggestion that this case is one involving a "Federal crime of terrorism" as that term is used in § 3142.

February, 2007, Mehanna stated that the only reason he had not left the United States was his desire to finish school, something that has now occurred.  Finally, the evidence from the United States suggests that Mehanna was planning to relocate to Saudi Arabia (or at least the Gulf region) out of a desire to live in that region, not merely because of a job opportunity, for over a year.  If convicted, the Sentencing Guidelines recommend a sentence of eight years.

In the face of the evidence submitted by the United States, release on an unsecured bond as proposed by the Defendant will not satisfy the requirements of § 3142.  A set of restrictive and stringent conditions are, however, sufficient to reasonably assure the Defendant's appearance. If the following conditions are satisfied, then the Court will release Mehanna.

1.  To assure <u>both</u> the Defendant's appearance and his compliance with all conditions of release, the Defendant's parents shall post (a) their home in Sudbury (b) Mr. Mehanna's retirement account; and (c) $100,000.  Regarding items (b) and (c), the parents may deposit the property with the Clerk's Office or execute paperwork which would prevent the withdrawal of funds during the pendency of the case and likewise authorize the Court to take the funds in the event the Court so orders.  If necessary, the Court will issue appropriate orders upon request.  Counsel shall confer with the parents and the Assistant United States Attorneys to draft the necessary paperwork.

2.  Defendant shall surrender his United States passport and all copies of his Egyptian birth certificate to Pretrial Services (or the United States if these documents are already in its possession).

3.  Defendant shall not apply for, request, or receive a United States passport, an Egyptian birth certificate, an Egyptian passport or travel documents from any country.

4. Defendant shall reside in his parents' home and comply with an 8:00 p.m. to 8:00 a.m. curfew to be enforced by whatever means selected by Pretrial Services.

5. Defendant's travel is restricted to the District of Massachusetts.

6. Defendant's parents shall agree not to assist the Defendant, in any way, to leave Massachusetts at any time for any purpose.

7. Defendant's parents shall serve as Third Party Custodians of the Defendant.

8. The Defendant shall not contact any witness, victim, informant or officer involved in this case or any potential witness.

8. The standard and statutory conditions of release shall apply.

Under the foregoing, Mehanna's parents are posting both their home in which they raised their children and presently reside, as well as most of their other assets.  Mr. and Mrs. Mehanna raised their children in this home.  They live there.  It is their anchor in the town in which they have lived for many years (their prior home was also in Sudbury).  It is also the asset into which they have poured most of their life savings and the fruits of their years of labor.  In combination with the other postings, the Mehanna's have pledged almost all that they have.  The consequences to them of the loss of these assets would be severe.  Nothing in the record suggests that Mehanna would choose to inflict such harm on his parents.  To the contrary, the evidence reveals a strong and close relationship between Mehanna and his parents.  On the record before the Court, it is the strongest connection Mehanna has to anyone or anything.  As an adult, he has chosen to reside with his parents.  He has chosen to become an active member of the same religious center to which his parents belong and in which he was raised.  He chose to follow his father's profession and selected his father's school for graduate training.  The many letters from

people who know Mehanna and his family in several different ways all describe a close knit family, now and in the past.  While he was moving overseas, he maintained his relationship with his parents.

The United States also sought detention due to a risk of obstruction of justice.  The stringent conditions established by the Court address this concern.

Accordingly, counsel for Mehanna shall notify the deputy clerk to schedule a release hearing after counsel has completed the necessary steps to satisfy the Court's conditions.  Counsel shall also review with counsel for the United States as soon as practicable, the paperwork regarding the money and property to be posted.

## PROBABLE CAUSE

Based upon the evidence presented at the hearing, the Court finds probable cause supports the charge in the complaint.  Defense counsel's request for a copy of the report of the interview which forms the basis for the false statement charge is ALLOWED. The United States shall produce a copy of the report of the interview to defense counsel by December 17, 2008 or by that date file a memo with the Court explaining why it should not make such disclosure.  The defendant's request to subpoena the agents that interviewed him in December, 2006 is DENIED

.

## CONCLUSION

The United States' Motion for Detention (Docket #7) is DENIED. The Defendant's Motion for Release (Docket #6) is ALLOWED IN PART to the extent set forth herein and otherwise denied. The defendant shall remain in custody pending a release hearing.

/s/ Leo T. Sorokin
LEO T. SOROKIN
United States Magistrate Judge