```
                   UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS


_____
                            )
UNITED STATES OF AMERICA    )
                            )
V.                          )         NO. 09-CR-10017-GAO
                            )
TAREK MEHANNA               )
_____)
```

### DEFENDANT MEHANNA'S EMERGENCY MOTION FOR ORDER REGARDING DISCOVERY ORGANIZATION, FORMAT, AND TIMING

Defendant Tarek Mehanna, through undersigned counsel moves this court for an order requiring the government to produce discovery in an organized, formatted, and timely fashion. Mr. Mehanna respectfully asks that the court order the government to:

1) Provide the defense with an index of every document, image, audio, and video file produced, including what the document or item is, where and when the government obtained it, who created it, and who is identified in the document or item.

2) Provide the defense with a master index for every hard drive the government produced. The columns in a master index should include the government's evidence number, when each piece of evidence was obtained, a description of the evidence, how the

1

        government referred to the evidence electronically on the hard drives or optical media produced to the defendant (e.g. the filenames of forensic images), how the government referred to the evidence physically (e.g. labels or handwritten notes) on the hard drives or optical media produced, and a narrative description regarding how the government obtained the evidence.

3) Furnish the defense with trial exhibit list and a trial witness list. The government may supplement that list as necessary.

4) Identify discovery items that the government does not intend to use as trial exhibits.

5) Agree with the defense on a clean numbering system so that in motions and at trial, both parties can reference evidence in a systematic and organized fashion.

## I. Introduction

The government's discovery is an unmanageable black hole of information. Defense counsel could spend years looking at it and still not review it thoroughly. Mr. Mehanna respectfully asks this court to now intervene because Due Process and Speedy Trial principles as well as

Rule 16 of the Federal Rules of Criminal Procedure require that this court set reasonable boundaries for the volume, organization, and timing of all discovery produced to date and any future discovery.

**II.  The government dumped an avalanche of discovery on the defendant.**

The government produced an enormous quantity of material in discovery. These materials are a largely undifferentiated mass, without description of what the government understands the discovery to be, from whom or when the government acquired it, or from what specific location the government seized it. In addition, because of the government's threadbare descriptions of these items, it is impossible to determine whether or how it is complying with its discovery obligations under the United States Constitution, the United States Code, the Federal Rules of Criminal Procedure, the Federal Rules of Evidence, and the District of Massachusetts' Local Rules.

The government "has delivered so much documentation that it has virtually buried the defense under an avalanche of discovery of documentary and electronic outpourings, and thus rendered the defense incapable of distilling that which is germane and relevant to the impending trial." *United States v. McDade*, 1992 WL 382351, *1 (E.D. Pa.

1992). The government produced thousands and hundreds of thousands of pages of documents and hundreds of gigabytes of electronic data, most of which are irrelevant and immaterial to the elements of the offenses charged in the Second Superceding Indictment (hereafter "Indictment"), without identifying which documents are *Brady* materials, which are *Jencks* materials, which are F.R.C.P. 6, 12, 16, 26.2, and 41 materials, and which are F.R.E. 404(b) materials.

### III. The current state of discovery is unworkable for both the parties and the court.

The government sent over pile after pile of poorly identified and unnumbered documents, images, audio, video, and hard drive discovery. The government produced evidence in drips and drops from November 14, 2008 through October 25, 2010. The government sent the defense 13 letters over this time, each containing a vague list of enclosed items. The defense matched very few items up with their descriptions, like police reports or subpoenas. The rest is nearly impossible to manage.

First, the government sent over packets of unnumbered and largely unidentified documents and images. We simply ask this court to order the government to index these items, including what the item is, where and when the

government obtained it, who created it, and who is identified in the document or item.

Second, the hard drive and audio/ video evidence is the most expensive and problematic discovery of the lot. The defense spent months taking active measures to manage this discovery. The defense retained a reputable computer forensic firm, Arsenal Consulting, for the electronic evidence. The CEO, Mark Spencer, identified 650,000 files and folders from the forensic images of computer systems that the government dumped on the defense across 98 hard drives, CD's, and DVD's (Affidavit of Mark Spencer attached as Exhibit A). The 8 forensic images of computer systems represent 300 gigabytes of raw information. To put 300 gigabytes in perspective, Mr. Spencer cites to a source that suggests we would need to consider the volume of information contained on 3 library floors of academic journals.

The government provided the defense with no guidance as to what these files were, where they came from, and what inside these physical objects was relevant to their investigation and prosecution. The government also sent hundreds of audio files to the defense in different places – on CD's, on hard drives, and cassette tapes. Again, the

government did not identify this evidence in any organized way.

Mr. Spencer concluded that it is not feasible for his firm or Mr. Mehanna's attorneys to review every item contained within hundreds of gigabytes of electronic information ("live" and deleted files, fragments of files, metadata, etc.). Forensic analysis normally involves identifying relevant items from vast volumes of electronic information by using search criteria and then applying additional scrutiny to those items. In this case, the Government has already identified relevant items from the hard drives, as indicated in its detailed Proffer and no doubt through Grand Jury proceedings. The defense needs to know what those items are to focus forensic analysis, rather than wasting money and time on a vast universe of irrelevant information (Spencer Affidavit).

Mr. Spencer concludes that it is critical that the government produce a master index that describes all the electronic evidence they have produced. It is also critical that the government furnish a list of the particular exhibits from the electronic evidence that they will use at trial. With a master index of the electronic evidence, all parties can quickly and accurately refer to the same piece of evidence and determine from where exhibits originated. A

6

master index is particularly important here because the government made multiple productions over time. In addition, the electronic information is in a wide variety of formats with different labeling conventions that can make cross-referencing the government's discovery letters difficult if not impossible.

The columns in a master index should include the government's evidence number, when the government obtained each piece of evidence, a description of the evidence, how the government referred to the evidence electronically on the hard drives or optical media produced to the defendant (e.g. the filenames of forensic images), how the government referred to the evidence physically (e.g. labels or handwritten notes) on the hard drives or optical media produced, and a narrative description regarding how the evidence was obtained. The government should also produce a similar index for work product it generated related to searches of the electronic evidence.

It is equally important that the government identify those pieces of evidence that it will not use at trial. For example, the government gave the defense two CD's containing "live websites" that we could navigate. The government gave us no direction as to what on those CD's applied to this case, and given the sheer volume of posts

7

on the sites, we could be reading those websites for weeks aimlessly. If those CD's are either not relevant at all or marginally relevant, that information will at least help us focus our time and investigative efforts.

The manner in which the government produced that discovery is uniquely messy, costly, prejudicial, and inefficient (Affidavit of Sejal H. Patel, Esq. at Exhibit B). Defense counsel, Sejal H. Patel, is a former federal prosecutor and worked on numerous large fraud investigations both as a prosecutor and a defense attorney. Many of her prior cases involved conspiracy charges, like in this one. In the 75+ civil and criminal cases Ms. Patel has worked on involving extensive discovery, she has never seen a party produce discovery like this, in a wholly unorganized fashion with no direction to opposing counsel as to what is and is not relevant to the investigation. If the court does not order the government to organize its production, Ms. Patel estimates the overall cost of this litigation to be well over $1 million, and an October trial date may not be realistic.

**IV.   The government refused defense counsels' many attempts to resolve discovery issues.**

Defense counsel tried unsuccessfully in writing and in person to work these issues out with the government.

On October 1, 2010, the defendant wrote to the government to request additional discovery and to ask the government to properly number and organize discovery produced to date. The government responded on October 25, 2010 and refused nearly every defense request. Specifically, the government refused to identify discovery by category, and it made no effort in its response to rectify the numbering or indexing situation.

The defense sent a second letter on November 12, 2010 alerting the government again to the utter lack of organization and the defense's inability to review discovery. The government offered to meet with the defense. At a meeting on December 3, 2010, counsel for the defendant and Mark Spencer, met with AUSA Auerhahn and two case agents. The government did not bring their computer forensics people to the meeting.

The government takes the nonsensical position that it will not agree to any joint system to identify and refer to the discovery. For example, there are over 2,000 pages of instant messages. Counsel has numbered the messages sequentially through a computer program. The government refuses to refer to the emails other than by the filename (often Arabic and lengthy), the date and the time.

So, while the defense proposes identifying a particular message as "IM-1," the government insists instead on identifying the same message as "Message from [ibnul_khattab82@yahoo.com:Mu'awiyah](ibnul_khattab82@yahoo.com:Mu'awiyah)) on Sat Feb 04 14:55:06 2006 to aazarinni_hotmail.com.log." Given the sheer number of documents and other types of discovery in this case, the government's system allows for no thumbnail, quick way of finding anything. What we propose is what all civil litigants do in discovery, through depositions, and at trial. The simple purpose of our recommendation is to save everyone time and make the pretrial and trial processes move efficiently.

The government organized their discovery in accordion files, grouping tapes, CD's, and hard drives with a particular discovery letter. The government sees no reason why the defense should not follow suit – even though it makes no sense. All Arabic CD's require translation as a group, not accordion file by accordion file. Mark Spencer works with all of the hard drive evidence in a single batch, across multiple accordion files. The government reluctantly agreed to provide a master index. The government would not agree to produce the exhibits it might use at trial or exhibits it used in the grand jury. The government also would not agree to tell counsel what it

Case 1:09-cr-10017-GAO   Document 108   Filed 12/17/10   Page 11 of 16

would not use at trial, though the prosecutor gave us some "hints."

The government's discovery is both opaque and a deliberate attempt to drown defense counsel in electronic and paper data. This court must intervene, otherwise defense counsel simply cannot be ready for trial by October 2011.

**V. Many courts have ordered the government to organize discovery and early disclose witnesses and exhibits when the government engages in these abusive discovery tactics.**

District judges in other districts have issued extraordinary discovery and compliance deadline orders when the government uses the avalanche strategy of discovery as a weapon. In a case like this where there are millions of available files for review, the only efficient and practicable way to manage litigation is to require the government to identify witnesses and exhibits now, produce indexes, and eliminate those items that the government will not use at trial.

In *McDade*, for example, the government charged the defendant, a United States Congressman, with conspiracy, racketeering, and accepting illegal gratuities. *McDade*, 1992 WL 382351 at *1. Approximately three and a half months before trial, he moved for a list of the government's

11

witnesses and exhibits, claiming that the government's avalanche of undifferentiated discovery materials had made meaningful trial preparation impossible. The government opposed the motion saying that it had no obligation to "disgorge a blueprint of its trial strategy." *Id.* at *2. The court ordered the government "to tell the defense of any discrete parcels of material that it does not plan to use at trial," and that with respect to the 2400 hours of tape-recorded conversations, "[i]f the government knows of any tapes upon which it does not intend to rely at trial, it is to identify those tapes for the defense." *Id.* at *5-*6.

The court understood "the difficulty the defense is having in attempting to pull a probative needle or two out of the many large proverbial haystacks which the government has made available." *Id.* at *4. However, it did not want to force the government to turn over its witness and exhibit list so far in advance of trial. Thus, it adopted an "intermediate approach" by ordering the government to identify the discovery that it did not intend to use at trial. *See also United States v. Washington*, 819 F. Supp. 358 (D. Vt. 1993) (Court referred to *McDade* approach with approval, but declined to order early disclosure because discovery was not actually voluminous).

In *United States v. Poindexter*, 727 F. Supp. 1470 (D.D.C. 1989), the government charged the defendant with conspiring with Oliver North to conceal the National Security Council's Iran-Contra activities by obstructing a Congressional investigation and making false statements. The Independent Counsel ("IC") produced over 300,000 pages of documents and was prepared to produce another 100,000 pages. Defendant moved to have the IC identify not just those documents upon which it "may" rely at trial (which the IC agreed to do with respect to the financial information), but also those documents that it "will" use at trial. *Id.* at 1484.

The court granted the defense motion and ordered the IC to identify "with greater specificity those among these thousands of documents in the financial, calendar, and diary areas that it intends to use at trial." *Id.* The court also ordered the IC to "identify all documents on which a witness will rely or to which he will refer." *Id.* The court could find no reason why the IC would refuse the defendant's request and "many reasons, grounded in fairness to the defendant, the protection of his rights, and not least Rule 16(a)(1)(C)" why the request should be granted. *Id.*

In *United States v. Turkish*, 458 F. Supp. 874 (S.D.N.Y. 1978), the defendants were charged with conspiracy to defraud the United States. The government served the defense with approximately 25,000 documents. The defense moved to have the government indicate which of those documents it intended to use at trial, "rather than 'bury[ing] the defendant in paper' by merely generally making all of the documents available to defendants." *Id.* at 882. The court ordered the government to "identify to the defendants those documents which it intends to offer, or to use in connection with the testimony of any witness, on its case in chief." *Id.* at 882.

In *United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987), the defendants were indicted for conspiracy to defraud FEMA through the submission of false and inflated insurance claims related to, *inter alia*, burglary losses and fire damage. Pre-trial, defendants moved for a bill of particulars identifying which of the insurance claims and invoices were fraudulent or falsified. The district court denied the motion, the defendants were convicted, and on appeal, the Second Circuit reversed. The Court held that the defendants were unable to prepare adequately for trial because "the relevance of key events was shrouded in mystery at the commencement of and throughout trial." *Id.*

at 575. "The Government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified or which of some fifteen burglaries would be demonstrated to be staged." *Id.*

Finally, in *United States v. Modi*, 197 F. Supp. 2d 525 (W.D. Va. 2002) (Judge James P. Jones), the government charged the defendants with conspiracy, mail fraud, and receiving federal health care program kickbacks. The defense moved for a bill of particulars arguing that there was a large volume of discovery. *Id.* at 530. The Court denied the motion, but it did so specifically in reliance upon the fact that the government had provided interpretive materials to the defense. "I recognize," the court wrote, "that the volume of discovery in a complex case may itself impede rather than assist the defense in its understanding of the government's case. Merely to be shown thousands of documents without any direction as to the significance of the various pieces of paper may not comport with fairness." *Id.* at 530. However, the defendants conceded that they have been provided with charts or summaries prepared by the government about the charged conduct, and the court found this to be adequate. *Id.*

## IV. Conclusion

Defendant Tarek Mehanna respectfully requests that this Honorable Court issue an order as requested on page 1 of this Motion.

                Respectfully submitted,
                TAREK MEHANNA
                By his attorneys,

                CARNEY & BASSIL

                *Janice Bassil*

                Janice Bassil
                B.B.O. # 033100
                J. W. Carney, Jr.
                B.B.O. # 074760
                20 Park Plaza, Suite 1405
                Boston, Ma. 02116
                617-338-5566

Dated: December 17, 2010

### Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on or before the above date.

                *J. W. Carney, Jr.*

                J. W. Carney, Jr.