UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                )
UNITED STATES OF AMERICA )
                                )
V.                              )          NO. 09-CR-10017-GAO
                                )
TAREK MEHANNA                   )
_____)

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO
DISMISS COUNTS ONE THROUGH THREE BASED ON VAGUENESS AND
OVERBREADTH**

**I. Introduction**

The defendant, Tarek Mehanna, moves that this Court dismiss
Counts One through Three of the Second Superseding Indictment
because 18 U.S.C. § 2339A and 18 U.S.C. § 2339B are
unconstitutionally vague and overbroad, both on their face and
as applied to the defendant, in violation of the Due Process
Clause of the Fifth Amendment. Vagueness and overbreadth
challenges are properly brought pre-trial. "[A] motion alleging
a defect in instituting the prosecution" under Fed. R. Crim. P.
12(b)(3)(A) or "a motion alleging a defect in the indictment or
information" under Rule 12(b)(3)(B) *must* be raised pre-trial.
See also United States v. Vanderberg, 358 F.2d 6, 10 (7th Cir.
1966). Because 18 U.S.C. § 2339A and 18 U.S.C. § 2339B infringe
upon speech, not just conduct, this Court must conduct a strict

scrutiny review of their constitutionality. <u>Holder v. Humanitarian Law Project</u>, 130 S.Ct. 2705, 2710 (2010).

## II.  18 U.S.C. § 2339A and 18 U.S.C. § 2339B Are Unconstitutionally Vague.

As a matter of due process, a criminal statute that fails to give a person of ordinary intelligence fair notice that his or her contemplated conduct is forbidden should be deemed void for vagueness. <u>Cline v. Frink Dairy Co.,</u> 274 U.S. 445, 448 (1927). 18 U.S.C. § 2339A and 18 U.S.C. § 2339B are unconstitutionally broad and vague on their face and as applied to the defendant because they subject the exercise of his right to free speech and association under the First Amendment to an unascertainable standard. As applied, the statutes authorize punishment of constitutionally protected conduct. They are vague in that one must necessarily guess when speech and association rise to the level of criminal conduct. As a result, 18 U.S.C. § 2339A and 18 U.S.C. § 2339B are void for vagueness.

18 U.S.C. § 2339A and 18 U.S.C. § 2339B are unconstitutionally vague, (1) where they do not give the average person adequate notice and fair warning as to the standard of conduct required by law, (2) where they do not "define the criminal offense...in a manner that does not encourage arbitrary and discriminatory enforcement," <u>Kolender v. Lawson</u>, 461 U.S. 352, 357 (1983), and (3) where they unreasonably impinge upon or

2

inhibit fundamental constitutionally protected freedoms. The conduct prohibited or commanded by the material support statutes is in terms so vague that persons of common intelligence such as the defendant must necessarily guess at the meaning of each statutory provision and differ as to its application. See Coates v. City of Cincinnati, 402 U.S. 611, 614 (1971) and Smith v. Goguen, 415 U.S. 566, 572 n.8 (1974).

18 U.S.C. § 2339A and 18 U.S.C. § 2339B are vague because they do not put individuals on notice that if they encourage jihad in the abstract or they translate jihadi material, whether or not they are acting in coordination with terrorists or a terrorist organization, they are committing the crime of providing material support to terrorists or to a terrorist organization. The defendant could not have understood what conduct § 2339A and § 2339B actually proscribes because as interpreted by the Government, the statutes provide no clear dividing line between free speech and criminal conduct. "No one may be required to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the [Government] commands or forbids." Lanzetta v. New Jersey, 306 U.S. 451, 453 (1939). See Holder, 130 S.Ct. at 2720 (finding that § 2339B was not vague as applied to the plaintiffs, but noting that "[o]f course, the scope of the material-support statute may not be clear in every application.").

3

§ 2339A and § 2339B "define the criminal offense...in a manner that...encourage[s] arbitrary and discriminatory enforcement." Kolender, supra, 461 U.S. at 35. Here, the Government casts too wide a net, leaving courts to determine who is rightfully detained and who is not under these material support statutes. See Colautti v. Franklin, 439 U.S. 379, 390 (1979). The result will inevitably include arbitrary and capricious enforcement of the statutes as well as violations of citizens' rights, also making it void for vagueness. Papachristou v. Jacksonville, 405 U.S. 156, 162 (1972).

As applied to this case, the Government has arrested an individual, in part, because he shared, translated and posted literature about jihad and the mujahideen.[1] The Government asserts that one of its theories of criminal liability is that the defendant provided material support in the form of "services, expert advice and assistance, training, and personnel in the form of their online activities of translating, editing and distributing certain pro-jihadi materials for terrorists and Al Qa'ida." Government's Opposition to Defendant's Motion to Dismiss on First Amendment Grounds (hereinafter "Gov. Opp. Dismiss") at pp. 5-6. This theory of liability is precisely the

---

[1] For the purposes of this motion only, given the standard of review, the defendant assumes the alleged facts in the Indictment are true. However, this is not to be taken as a concession or stipulation to those alleged facts and many allegations will be disputed throughout trial.

type that <u>Holder</u> precludes. Material support to a foreign terrorist organization "refers to concerted activity, not independent advocacy." <u>Holder</u>, <u>supra</u> at 2710. "In particular, we in no way suggest that a regulation of independent speech would pass constitutional muster, even if the Government were to show that such speech benefits foreign terrorist organizations." <u>Id.</u> at 2730. The Government's allegation here that the defendant provided materials "for" terrorists and Al-Qaeda is also vague because it fails to put him on notice that he provided direct, material support "to" terrorists and Al-Qaeda. The Government has thereby implied that it can prosecute speech that independently advocates "for" Al-Qaeda if it benefits that organization as well as speech that provides coordinated support "to" Al-Qaeda. Such enforcement is arbitrary and capricious because federal agents have no objective criteria by which to discern protected speech from unprotected speech. The Government also obscures the boundary between *association* with others (even terrorists) about jihadi material, which is protected by the First Amendment, and *coordination* with terrorists about jihadi material in an effort to advance a terrorist cause, which is not protected.

It is telling that the Government largely focuses upon the Yemen trip in support of these charges. <u>See</u> Gov. Opp. Dismiss at pp. 2-3, 9, 16, 20-22. However, it fails to address the fact

that Count Three, the substantive charge of material support
under § 2339A, does not relate to the Yemen trip. In Count
Three, the Government does not allege that the defendant
actually provided personnel, training or services to Al-Qaeda
during the Yemen trip. As the Government admitted at the bail
hearing on February 23, 2011: "The defendant's charged with
conspiring to go there; not that he successfully obtained
terrorist training, unlike some of his coconspirators." Bail
Transcript ("Tr.") at 34. Instead, it alleges that the
translations of jihadi material and the posting of those
translations, alone, constitute material support. Even the
Government admits that "...a substantive 2339B charge might
require evidence of some tie between an FTO and a defendant[.]"
Gov. Opp. Dismiss at p. 20. The Government has not shown that
"tie" with respect to the substantive material support charge.
At minimum, then, Count Three must be dismissed for vagueness.

In support of this "translation" offense, the Government
argues as follows: "Capitalizing on their language and computer
skills, Mehanna and Abousamra translated jihad materials for the
purpose of *assisting*, *inspiring* and *encouraging* others to
provide support to terrorists and to Al Qa'ida. They became
online recruiters for violent jihad, and relished their
*perceived* role as serving a valuable function for Al Qa'ida and
others who encouraged young Muslim men to take up arms in

violent jihad...Mehanna *hoped* that the translation and digital editing of items like these would make an impact and bring people to the support of terrorists whom he idolized." Gov. Opp. Dismiss at p. 4 (emphases added). At the bail hearing, the Government conceded that the defendant never acted under the direction or control of Al-Qaeda. "The fact that the defendant was not instructed by al-Qaeda to engage in all these activities does not change the fact that it was his objective as part of the conspiracy with his fellow coconspirators to support al-Qaeda[.]" Tr. 39. "And while [39 Ways] may not have been at the direction of al-Qaeda, it certainly is appreciated by al-Qaeda." Tr. 40. The indictment does not reveal how sharing views with others about Al-Qaeda and Al-Qaeda's appreciation of those views demonstrate actual "coordination with" Al-Qaeda.

Furthermore, in order to overcome a vagueness challenge with respect to § 2339B, the Government must also show that the defendant knew his actions would support the Al-Qaeda organization and not just its individual members. United States v. Paracha, 2006 WL 12768 at *11 (S.D.N.Y. 2006)("An essential element of the government's burden of proof on all counts of the indictment is Paracha's knowledge of Khan and al Baluchi's association with al Qaeda and his knowledge that his actions would or could support the al Qaeda organization and not simply its individual members."). Therefore, any alleged communications

7

with individual Al-Qaeda members would be insufficient, alone, to support a § 2339B charge even under the conspiracy rubric. See Paracha, supra at *1 (Government charged both conspiracy and substantive offenses under § 2339B). As applied here, the Government has presented no factual allegations that the defendant: 1) knew that the people with whom he communicated were Al-Qaeda members; and 2) knew that his online communications with these individuals would actually support Al-Qaeda as an organization.

As a result, the Government's strained arguments in its pleadings and its concessions at the bail hearing prove that these statutes are vague on their face and as applied. The fact that § 2339A and § 2339B encompass any speech that *could* benefit Al-Qaeda or *could* one day be appropriated by Al-Qaeda to further its cause proves vagueness. The Government has applied such amorphous boundaries to these statutes that it is impossible to prevent the Government from arbitrary and discriminatory enforcement. The Government fares no better when it claims that the defendant adopted a "perceived role as serving a valuable function for Al Qa'ida[,]" Gov. Opp. Dismiss at p. 4, or when it claims that the defendant "believed that he was responding to a public call of Al Qa'ida for specific types of assistance[,]" Id. at p. 22. Perception does not replace reality and the Government alleges no real connection between the defendant and

Al-Qaeda or between the defendant and terrorist activities. Put another way, as applied to the defendant, the question becomes whether material support terms like "personnel," "service" and "expert advice or assistance" require "untethered, subjective judgments"? <u>Holder</u>, 130 S.Ct. at 2720. The defendant translated <u>39 Ways</u> and other documents independently. The fact that he "hoped" that someday, the translation would matter to Al-Qaeda is not *providing* or attempting to provide that translation to Al-Qaeda. The Government's position that hope is enough demonstrates that these material support provisions involve "untethered, subjective judgments."

Individuals like the defendant are not on notice that translating a document without any coordination with known Al-Qaeda members and without any knowledge that that document will, in fact, directly support terrorist activities is a crime. In <u>Warsame</u>, the district court found that simply communicating with Al-Qaeda associates is not sufficient to survive a vagueness challenge with respect to "personnel." <u>United States v. Warsame</u>, 537 F.Supp.2d 1005, 1018 (D.Minn. 2008). It further concluded that "...Warsame remains free to sympathize with or advocate in favor of Al Qaeda." <u>Warsame</u>, 537 F.Supp.2d at 1016. "...[T]he Court finds that **mere allegations that Warsame taught English at an Al Qaeda medical clinic**, without more specific allegations tying that conduct to terrorist activity, **are not sufficient to**

**survive a vagueness challenge with respect to the term 'training.'"** <u>Id</u>. at 1019-1020 (emphases added). In <u>Taleb-Jedi</u>, the Government alleged that the defendant violated § 2339B by becoming a registered agent of an Iranian dissident organization, translating documents and teaching English classes. <u>United States v. Taleb-Jedi</u>, 566 F.Supp.2d 157, 162 (E.D.N.Y. 2008). The district court held that the allegation of the defendant's active membership in a foreign terrorist organization was not vague because such membership was "more akin to an employment relationship." <u>Taleb-Jedi</u>, 566 F.Supp.2d at 182. However, it warned the Government that its other allegations may fail a sufficiency challenge at trial because "...it is not clear for what purpose or in what scope defendant translated documents or taught English." <u>Taleb-Jedi</u>, 566 F.Supp.2d at 183. "...[C]ertain allegations, such as the chanting, teaching of English and translating of documents, without more specific facts adduced at trial, may be insufficient to survive a vagueness challenge." <u>Id</u>. at 184.

Here, the Government's allegations are likewise deficient because they do not tie any of the defendant's translations to specific terrorist activity of which the defendant knew and intended to advance. The allegations are even more deficient than those in <u>Taleb-Jedi</u> since there is no evidence that the defendant was a member of Al-Qaeda or any other foreign

terrorist organization. Because these charges lack the
fundamental element of coordination, they must be dismissed as
unconstitutionally vague. See Federal Election Commission v.
Wisconsin Right to Life, Inc., 551 U.S. 449 (2007)(a federal
limitation on campaign expenditures not made in coordination
with a candidate's campaign (contained in the Federal Election
Campaign Act of 1971 (FECA)) was unconstitutional).

    As far as the defendant's online activities, the Internet
is a vast space where information and discussion flow freely and
quickly regardless of the user's intent or coordination with
other groups. Thus, the fact that a document posted on the
Internet may have fallen into Al-Qaeda's hands is irrelevant.
See Gov. Opp. Dismiss at p. 4. The issue is whether the
defendant actually coordinated with Al-Qaeda or worked under
their direction or control to produce these translations.
Holder, supra at 2710.

    In light of Holder's mandate of "concerted activity," the
defendant submits that the Government must demonstrate that the
defendant had an employment or contractual relationship[2] with Al-

---

[2] The Supreme Court in Holder did not specify the level of
coordination necessary for a criminal charge. "...[P]laintiffs
do not specify their expected level of coordination with the PKK
or LTTE or suggest what exactly their 'advocacy' would consist
of. Plaintiffs' proposals are phrased at such a high level of
generality that they cannot prevail in this preenforcement
challenge." Holder, supra at 2729. Therefore, it is useful to

Qaeda. Otherwise, the Government could ban all association with
Al-Qaeda in violation of the First Amendment. See Humanitarian
Law Project v. United States Dpt. of Treasury, 463 F.Supp.2d
1049 (C.D. Cal. 2006) (executive order regarding aid to foreign
terrorist organizations was unconstitutionally vague and
overbroad with regard to "otherwise associated with" provision).
In Lindh, the district court aptly described the difference
between association with a group and coordination with a group:

> [O]ne can become a member of a political party without
> also becoming part of its 'personnel'; one can visit
> an organization's training center, or actively espouse
> its cause, without thereby becoming 'personnel.'
> Simply put, the term 'personnel' does not extend to
> independent actors. Rather, it describes employees or
> employee-like operatives who serve the designated
> group and work at its command or, in Lindh's case, who
> provide themselves to serve the organization.

United States v. Lindh, 212 F.Supp.2d 541, 572 (E.D.Va. 2002)
(dismissing vagueness challenge where Lindh fought in combat on
behalf of the Taliban). See also United States v. Marzook, 383
F.Supp.2d 1056 (N.D. Illinois 2005) ("personnel" under § 2339B
not vague since it requires an employment or employment-like
relationship).

As to those individuals (unlike the defendant) who do have
some tenuous connection to Al-Qaeda, the Government draws no
clear dividing line between "association" with Al-Qaeda on the

---

turn to pre-Holder cases for guidance on this concept as it
relates to § 2339A and § 2339B.

one hand and "coordination with" Al-Qaeda on the other. Justice
Breyer, joined by Justice Ginsburg and Justice Sotomayor,
predicted this very conundrum in Holder when he noted that
"'[c]oordination' with a political group, like membership,
involves association." Holder, supra at 2733 (Breyer, J.
dissenting). Justice Breyer also predicted that the Government
would abuse its power in prosecuting independent advocacy by
reformulating it as "coordinated" advocacy. "I am not aware of
any form of words that might be used to describe 'coordination'
that would not, at a minimum, seriously chill not only the kind
of activities the plaintiffs raise before us, but also the
'independent advocacy' the Government purports to permit."
Holder, supra at 2737 (Breyer, J. dissenting). Such an abuse of
power has occurred here. Based upon the Government's submissions
in this case, there is nothing to prevent it from prosecuting
people who are mere members of Al-Qaeda, people who associate
with Al-Qaeda members and people who write books or blog posts
in support of Al-Qaeda's cause. As much as we all hope that
people abstain from advocating Al-Qaeda causes, such speech is
protected by the First Amendment in spite of its violent nature.
See Brown v. Entertainment Merchants Ass'n, 131 S.Ct. 2729, 2738
(2011).

A person of ordinary intelligence would not be on notice
that although one can legally watch and distribute violent video

games – some of which glorify the maiming and dismemberment of

others and glorify the killing of people in certain ethnic

groups - one can not legally watch and distribute jihadi videos

and jihadi literature (such as the 39 Ways) on the Internet.

> Justice ALITO has done considerable independent
> research to identify, see *post,* at 2749 – 2750, nn.
> 13–18, video games in which "the violence is
> astounding," *post,* at 2749. "Victims are dismembered,
> decapitated, disemboweled, set on fire, and chopped
> into little pieces....Blood gushes, splatters, and
> pools." *Ibid.* Justice ALITO recounts all these
> disgusting video games in order to disgust us—but
> disgust is not a valid basis for restricting
> expression. And the same is true of Justice ALITO's
> description, *post,* at 2749 – 2750, of those video
> games he has discovered that have a racial or ethnic
> motive for their violence—" 'ethnic cleansing' [of]
> ... African Americans, Latinos, or Jews." To what end
> does he relate this? Does it somehow increase the
> "aggressiveness" that California wishes to suppress?
> Who knows? But it does arouse the reader's ire, and
> the reader's desire to put an end to this horrible
> message. Thus, ironically, Justice ALITO's argument
> highlights the precise danger posed by the California
> Act: that the *ideas* expressed by speech—whether it be
> violence, or gore, or racism—and not its objective
> effects, may be the real reason for governmental
> proscription.

Brown v. Entertainment Merchants Ass'n, 131 S.Ct. 2729, 2738

(2011). Similarly here, the Government recounts at length in the

Second Superseding Indictment the violent, disturbing nature of

videos and posts and their glorification of killing Americans in

the battlefield. The Government highlights the defendant's

response to the death of an American soldier after the invasion

of Fallujah, Iraq – "who cares, Texas BBQ is the way to go."

Indictment at p. 9. But to what end does the Government recount
this? As much as the Government insists that evidence of his
speech, translations and video-watching habits will be used as
evidence of the defendant's intent, see Gov. Opp. Dismiss at p.
20, such intent must be of a *criminal* nature. While
conversations about going to a terrorist training camp in Yemen
and fully participating at that camp certainly qualify as
evidence of a *criminal* intent, translating and viewing videos do
not. Contrast United States v. Khan, 309 F.Supp.2d 789, 822
(E.D. Va. 2004) ("The conspiracy alleged...was not to provide
'personnel' who would speak on behalf of [the FTO], or provide
moral support, or simply receive training, but to provide
personnel who, after receiving training, would serve that
organization as soldiers, recruiters, and procurers of
supplies."). At minimum, the Government must show that the
defendant coordinated with Al-Qaeda to produce these
translations and that such translations constituted "specialized
knowledge" or the type of information that could not be readily
accessed on the Internet via another source. See United States
v. Kassir, 2009 WL 2913651 at *8 (S.D.N.Y. 2009) (sufficient
evidence supporting material support charge, in part, because
expert "testified that the training materials provided through
the [Islamic Media Center] were actually not available elsewhere

on the Internet at the time of the offense[.]"). The Government
has failed to allege such facts.

Because individuals like the defendant are not on notice as
to the difference between protected speech and association and
unprotected speech and association, this Court must dismiss the
charges under 18 U.S.C. § 2339A and 18 U.S.C. § 2339B as
unconstitutionally vague.

### III. 18 USC § 2339A and 18 USC § 2339B Are Unconstitutionally Overbroad.

A statute is overbroad when its boundaries leave open the
possibility of punishment for protected conduct potentially
leading persons such as the defendant to eschew protected
conduct in public, and elsewhere, so as to avoid uncertain
proscriptions. Grayned v. City of Rockford, 408 U.S. 104, 109
(1972); accord, Smith, 415 U.S. at 573; Herndon v. Lowry, 301
U.S. 242, 259 (1937). Although the Supreme Court upheld § 2339B
against a particular First Amendment challenge, it recognized:
"All this is not to say that any future applications of the
material-support statute to speech or advocacy will survive
First Amendment scrutiny." Holder, supra at 2730.

18 U.S.C. § 2339A and 18 U.S.C. § 2339B are void under the
overbreadth doctrine because they penalize the defendant simply
for engaging in protected conduct. See Young v. American Mini
Theatres, Inc., 427 U.S. 50, 60 (1976), quoting Erznoznic v.

Jacksonville, 422 U.S. 205, 216 (1975). The defendant challenges these provisions because they may cause chilling of the right to free speech and because they are unconstitutional as applied to him.

A statute is overbroad, even though it appears clear, if it prohibits constitutionally protected acts. The test is a cognate yet separate analysis from vagueness. Overbreadth challenges are by nature facial challenges, created to provide a forum for "those who desire to engage in legally protected conduct but who may refrain from doing so rather than risk prosecution..." Brockett v. Spokane Arcades, 472 US. 491, 503 (1985). When the language of a statute threatens rights protected by the First Amendment, a litigant against whom the statute has been improperly applied may challenge the constitutionality of the statute for the benefit of those whose exercise of their rights may be chilled. Id.

18 U.S.C. § 2339A and 18 U.S.C. § 2339B obviously and impermissibly infringes on the right to free speech and association under the First Amendment. See Benefit v. Cambridge, 424 Mass. 918, 921 (1997)(M.G.L. Ch. 272, §66 prohibiting panhandling in public places unconstitutionally bans protected speech in traditional public forums). In effect, the material support statutes almost completely prohibit independent advocacy for Al-Qaeda and distribution of information about Al-Qaeda

17

causes, lest such advocacy and distribution be viewed by the
Government as "recruitment." <u>See</u> Gov. Opp. Dismiss at p. 4
(stating that defendant and others became "online recruiters for
violent jihad" and that a translated video "served as an
influential recruiting device for Al Qa'ida in Iraq"). <u>See</u>
<u>Hurley v. Irish-American, Gay Lesbian And Bisexual Group of</u>
<u>Boston</u>, 515 U.S. 557 (2000); <u>see</u> <u>also</u>, <u>Venuti v. Riordan</u>, 521 F.
Supp. 1027, 1030-1031 (D. Mass. 1981) (M.G.L. c. 140, §183A held
unconstitutionally overbroad and vague as it gave complete
discretion to licensing authorities and contained no governing
standards).

As such, 18 U.S.C. § 2339A and 18 U.S.C. § 2339B encompass
an unreasonable amount of speech and association protected by
the First Amendment and must be struck down.

## IV. Conclusion

The defendant is being accused of providing, attempting to
provide, and conspiring to provide material support to
terrorists. These charges are based upon an unascertainable
standard under 18 U.S.C. § 2339A and 18 U.S.C. § 2339B as to
what conduct is protected by the First Amendment and what is
not. For the above reasons, the defendant requests that this
Court dismiss Counts One through Three of the Second Superseding
Indictment on vagueness and overbreadth grounds.

## V. Hearing

The defendant requests a hearing on this motion.


TAREK MEHANNA
By his attorneys,

CARNEY & BASSIL

*J. W. Carney, Jr.*
J. W. Carney, Jr.
B.B.O. # 074760

*Janice Bassil*
Janice Bassil
B.B.O. # 033100

Sejal H. Patel
B.B.O. # 662259
Steven R. Morrison
B.B.O. # 669533
John E. Oh
B.B.O. # 675916
Carney & Bassil
20 Park Plaza, Suite 1405
Boston, MA 02116
617-338-5566

Dated: August 18, 2011


### Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on or before the above date.

*J. W. Carney, Jr.*
J. W. Carney, Jr.