UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                             )
UNITED STATES OF AMERICA     )
                             )
V.                           )        NO. 09-CR-10017-GAO
                             )
TAREK MEHANNA                )
                             )
_____)
```

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS PORTIONS OF COUNTS ONE THROUGH THREE OF THE SECOND SUPERSEDING INDICTMENT

### I. Introduction

The defendant, Tarek Mehanna, moves that this Court dismiss those portions of counts one through three of the Second Superseding Indictment that are based on speech that is protected by the First Amendment.

### II. Facts

The Second Superseding Indictment (hereafter "indictment") in this case was returned on June 17, 2010. It alleged, *inter alia*, that the defendant and his co-defendant, Ahmad Abousamra ("Abousamra"), conspired to provide material support or resources to Al-Qaeda, in violation of 18 U.S.C. § 2339B (Count One); conspired to provide material support to terrorists, in

violation of 18 U.S.C. § 2339A (Count Two); and provided and attempted to provide material support to terrorists, in violation of 18 U.S.C. § 2339A (Count Three).

The United States has made it clear through its presentations at the bail arguments that the government considers the defendant's speech *itself* is a violation of these statutes. The government also views this speech to be overt acts in furtherance of the other conspiracy counts. For example, the government alleges that the defendant provided "expert advice and assistance" to a terrorist organization, when his only skill was his knowledge of both the English and Arabic languages. His translation of a document written by someone else and readily available on the internet is an act protected by the First Amendment, and cannot be the basis for a criminal prosecution.

## A.    Count One

The government has charged the defendant with conspiracy to provide material support or resources to Al-Qaeda, in violation of 18 U.S.C. § 2339B. The government alleges acts that are protected speech under the First Amendment.[1] They include:

---

[1] The government also alleges overt acts that the defendant does *not* argue are protected speech. They include:

- In 2002, Abousamra traveled to Pakistan, made a phone call, and called two phone companies to facilitate his entry into a terrorist training camp (Indictment, Count One, ¶¶ 1-3);

- The defendant watched "jihadi videos" with friends (Indictment, Count One, ¶ 4);

- He lent compact discs to people in the Boston area to "create like-minded youth" (Indictment, Count One, ¶ 5);

- He discussed with friends their view of suicide bombings, the killing of civilians, and dying on the battlefield for Allah (Indictment, Count One, ¶ 6);

- He translated texts that were and remain freely available on the Internet (Indictment, Count One, ¶¶ 16-18, 21-22, 25);

- He looked for information online about the nineteen 9/11 hijackers (Indictment, Count One, ¶ 19);

---

- In 2003, Abousamra traveled to California for advice on how to receive terrorist training (Indictment, Count One, ¶ 8);
- In 2003, Abousamra gave $5,000 to someone (Indictment, Count One, ¶ 9);
- In 2004, Abousamra entered Iraq to fight against U.S. forces (Indictment, Count One, ¶ 15);
- In 2004, Abousamra and the defendant traveled to Yemen to attend a terrorist training camp (Indictment, Count One, ¶¶ 7, 11-14);
- The defendant gave false information to agents of the FBI (Indictment, Count One, ¶ 27).

The defendant does not now move to dismiss the charges based on these overt acts. He moves to dismiss the charges only to the extent they are based on the defendant's protected speech. He reserves the right, however, to move for dismissal of the charges based on these overt acts, and to make any other legal challenges available to him.

- He asked a friend for information on how to transfer files from one computer to another (Indictment, Count One, ¶ 20);

- He asked Abousamra how to shield his identity from the metadata on media that he was translating (Indictment, Count One, ¶ 23).

## B.   Count Two

The government has charged the defendant with conspiracy to provide material support or resources to terrorists, in violation of 18 U.S.C. § 2339A. The overt acts alleged in this count are identical to Count One in most pertinent ways. For Count Two, the government made the additional allegations that the defendant agreed to (but never did) translate a video about an insurgent leader in Iraq (Indictment, Count Two, ¶ 18), and the defendant gave someone a DVD of footage from Afghanistan and Chechnya. (Indictment, Count Two, ¶ 28).

## C.   Count Three

The government has charged the defendant with providing or attempting to provide material support to terrorists, in violation of 18 U.S.C. § 2339A. The government's allegations merely mirror the language of the statute. It is evident, therefore, that the allegations made under Counts One and Two also will be used to support Count Three.

## III. Discussion

"Congress shall make no law [abridging] the freedom of speech." U.S. CONST. AM. 1. Despite Justice Hugo Black's opinion that these words are clear and absolute, Hugo Black, *The Bill of Rights*, 35 N.Y.U. L. REV. 865, 874, 879 (1960), some speech certainly can be prohibited. In contrast, however, none of the defendant's speech outlined above can be constitutionally prohibited under the First Amendment.

Speech that can be prohibited includes that which is "directed to inciting or producing imminent lawless action and is likely to incite or produce such action." Brandenburg v. Ohio, 395 U.S. 444, 447 (1969). It includes speech that furthers a conspiracy to commit a crime. Rice v. Paladin Enterprises, Inc., 128 F.3d 233, 243-44 (4th Cir. 1997); U.S. v. Mubayyid, 476 F.Supp.2d 46, 55 (D. Mass. 2007). It includes speech that is a threat to injure someone or destroy property. Watts v. United States, 394 U.S. 705 (1969); Planned Parenthood v. Am. Coalition of Life Activists, 290 F.3d 1058 (9th Cir. 2002). Although there are categories in which speech can be restricted, the First Amendment remains a bulwark against prohibiting speech that is unpopular, particularly on government policies. Snyder v. Phelps, 131 S.Ct. 1207, 1215 (2011) ("The First Amendment reflects 'a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-

open.'") (quoting <u>New York Times Co. v. Sullivan</u>, 376 U.S. 254, 270 (1964)).

In the context of a charge of providing material support to terrorists, the defendant is free to "say anything [he] wish[es] on any topic." <u>Holder v. Humanitarian Law Project</u> ("HLP"), 561 U.S. ----, 130 S.Ct. 2705, 2722-23 (2010). The Supreme Court in Holder explicitly stated that independent advocacy, even of a terrorist organization, is protected by the First Amendment. <u>Id.</u> at 2723, 2728.[2]

The First Amendment protects the defendant from being tried or convicted based on the speech alleged in the indictment. <u>Holder v. HLP</u> speaks directly to this tenet. Furthermore, the defendant's speech was not incitement under <u>Brandenburg</u>; it did not further the substantive conspiracies that the government alleges, and it did not constitute any threat.

**A.    The defendant's speech is "core" speech for First Amendment purposes**

The government alleges that the defendant (1) watched videos; (2) lent a compact disc to someone; (3) discussed issues with others; (4) translated texts that were available on the Internet and sent the translations to others; (5) accessed

---

[2] 18 U.S.C. § 2339B also does *not* punish membership in or association with terrorist organizations. <u>Holder v. Humanitarian Law Project</u>, 561 U.S. ----, 130 S.Ct. 2705, 2723, 2730 (2010). The defendant was *never* a member or associate of Al-Qaeda or any other terrorist organization, and the government does *not* allege that he was a member or associate.

information online; (6) asked someone how to transfer files; and
(7) asked someone how to keep his name off of a computer file of
a translation he was doing. The government's allegations
indicate the defendant did all of these things in order to
exchange ideas and generate discussion of publicly accessible
texts and videos.[3]

These acts clearly fall within the First Amendment's
conception of speech. Thomas v. Chicago Park Dist., 534 U.S.
316, 321 (2002); Kaplan v. California, 413 U.S. 115, 119-120
(1973) (films are protected by the First Amendment); Carey v.
Brown, 447 U.S. 455, 462 n.6 (1980) (quoting Consolidated Edison
Co. of N.Y. v. Public Serv. Comm'n of N.Y., 447 U.S. 530, 537
(1980)) (discussions are protected); Kleindienst v. Mandel, 408
U.S. 753, 762 (1972) (receiving information is protected); Board
of Educ., Island Trees Union Free School Dist. No. 26 v. Pico,
457 U.S. 853, 867 (1982) (transferring ideas is protected);
McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 342 (1995)
(anonymity in publication is protected); see Griswold v.
Connecticut, 381 U.S. 479, 482 (1965) (the State may not,
consistent with the First Amendment, prohibit the study of a
foreign language nor the right to print or distribute).

---

[3] For purposes of this motion, the defendant is not challenging
the factual basis of the government's allegations. This does not
mean he admits to any of them.

Indeed, the speech at issue in this case is political speech that lies at the heart of speech protected by the First Amendment. Hill v. Colorado, 530 U.S. 703, 787 (2000) (Kennedy, J., dissenting) ("Laws punishing speech which protests the lawfulness or morality of the government's own policy are the essence of the tyrannical power the First Amendment guards against"); Elrod v. Burns, 427 U.S. 347, 356 (1976) ("political belief and association constitute the core of those activities protected by the First Amendment"); Texas v. Johnson, 491 U.S. 397, 411 (1989) ("expression of dissatisfaction with the policies of this country, [is] expression situated at the core of our First Amendment values").

The recent Supreme Court case Snyder v. Phelps suggests the type of speech that is regarded as a "matter of public concern" and that therefore lies "at the heart of the First Amendment's protection." 131 S.Ct. 1207, 1215 (2011). In Snyder, the Court considered the speech of religious protestors at the funeral of a fallen U.S. soldier. This speech consisted of protestors carrying signs saying "God Hates the USA/Thank God for 9/11," "Thank God for IEDs," and "Thank God for Dead Soldiers." Id. at 1213.

The Court found that this speech involved a matter of public concern and was therefore entitled to "special protection" under the First Amendment. Id. at 1219. "Such speech

8

cannot be restricted simply because it is upsetting or arouses contempt." Id.

If the signs in Snyder involved a matter of public concern, then the defendant's speech certainly does as well. He had exchanges through the internet and in person with others about controversial topics involving global politics and religion, and he exchanged videos of events occurring in the wars in Iraq and Afghanistan. He put forward the religious beliefs he held as well as his political views on the Middle East. That these exchanges or the beliefs expressed were offensive or disagreeable does not matter. Id. ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable.") (quoting Texas v. Johnson, 491 U.S. 397, 414 (1989)).

In wartime, in fact, courts must be especially careful to preserve free speech. The Supreme Court wrote that

> [t]he greater the importance of safeguarding the community from incitements to the overthrow of our institutions by force and violence, the more imperative is the need to preserve inviolate the constitutional rights of free speech, free press and free assembly in order to maintain the opportunity for free political discussion, to the end that government may be responsive to the will of the people and that changes, if desired, may be obtained by peaceful means.

De Jonge v. Oregon, 299 U.S. 353, 365 (1937).

The Court's recent opinion in Holder v. Humanitarian Law Project further illustrates why the First Amendment protects the defendant's speech.

**B.   Holder v. Humanitarian Law Project**

Humanitarian Law Project is a United States-based, United Nations-recognized human rights organization. 561 U.S. ---, 130 S.Ct. 2705, 2713 (2010). It wanted to train two terrorist organizations to use humanitarian principles and international law to peacefully resolve their disputes, engage in political advocacy on the groups' behalf, and teach organization members how to petition bodies like the United Nations for relief. Id. at 2716. It petitioned the Supreme Court for a declaration that this activity does not constitute material support for terrorists, pursuant to 18 U.S.C. § 2339B. Id. at 2731-32.

The Court held that the First Amendment left unprotected only the "narrow category of speech to, under the direction of, or in coordination with foreign groups that the speaker knows to be terrorist organizations." Id. at 2723. "Congress has avoided any restriction on independent advocacy, or indeed any activities not directed to, coordinated with, or controlled by foreign terrorist groups." Id. at 2728.

This narrow prohibition leaves most speech protected. "Under the material-support statute, [the defendant] may say

anything [he] wish[es] on any topic." Id. at 2722-23. The
government acknowledged that § 2339B "does not prohibit
independent advocacy or expression of any kind." Id at 2723. To
be guilty of providing material support to terrorists, one must
work under the organization's "direction and control." Id. at
2721. In other words, there must be a solid "connection between
the service and the foreign group." Id. at 2722.

Because Humanitarian Law Project proposed to work in
connection with terrorist organizations, the Court found that
their proposed efforts would constitute material support. Given
its narrow prohibition, however, the Court noted that it was not
addressing "the resolution of more difficult cases that may
arise under the statute in the future." Id. at 2712.

The case at bar is one of those future cases, but it is not
a difficult one. The defendant engaged in speech and did so
independently. He did not do so under the direction or control
or in coordination with Al-Qaeda or any other designated
terrorist organization. The indictment reflects the fact that
the defendant never had any such connection.

The government highlights its inability to establish this
connection by arguing in its Opposition to Defendant's Renewed
Motion for Release on Bail that the defendant was "tasked
(directly or indirectly)" by "individuals with direct or
indirect connection to" Al-Qaeda to perform translations of

publicly available texts. (Gov't Opp. 15, 19 n. 18). Despite the government's use of the word "tasking," there is no evidence that the defendant acted under the control or direction of Al-Qaeda. Furthermore, even if the government's tenuous and multiple degrees of separation[4] between the defendant and Al-Qaeda were real, it shows that the defendant's correspondents with whom he shared his translations were *not* members of Al-Qaeda. Even if they had some connection to Al-Qaeda, the government has not produced and will not produce any evidence establishing the defendant's awareness.

The government also argued in its Opposition to Defendant's Renewed Motion for Release on Bail that they did not need to prove that the defendant's speech was under the direction or control or in coordination with a terrorist organization. The government believes that if the defendant provided translations that he believed Al-Qaeda "could use" or that advanced their objective, he is guilty of conspiracy to provide material support. This directly contradicts the explicit language in Holder. Under the direction or control or in coordination with means active mutual participation between a defendant and a terrorist organization. The plaintiffs in Holder would be guilty

---

[4] Courts have uniformly discounted the strength of unsubstantiated degrees-of-separation arguments. Mazzeo v. Gibbons, 2010 WL 3910072, *6 (D. Nev.); Pharmacy Records v. Nassar, 572 F.Supp.2d 869, 876 (E.D. Mich. 2008); WE Media, Inc. v. General Elec. Corp., 218 F.Supp.2d 463, 475 (S.D.N.Y. 2002).

of material support because they intended to work directly with
terrorist organizations, regardless of the peaceful nature of
the work that was proposed.[5]

Under the First Amendment and HLP, the defendant was free
to say anything he wished on any topic. He did so, and the
government has indicted him based on this speech. This
indictment violates the defendant's First Amendment rights and
must be dismissed.

**C.**     **The defendant's speech is not incitement**

Speech may be prohibited if it constitutes "advocacy of the
use of force or law violation" and if that advocacy "is directed
to inciting or producing imminent lawless action and is likely
to incite or produce such action." Brandenburg v. Ohio, 395 U.S.
444, 447 (1969). "[T]he mere abstract teaching of the moral
propriety or even moral necessity for a resort to force and
violence" may not be prohibited. Id. at 448.

Consistent with Brandenburg, the defendant's speech is
clearly protected. The defendant's speech is not even advocacy,
much less advocacy that was intended and likely to lead to
imminent lawless action. Rather, the defendant's speech consists
of watching videos describing insurgent fighters in Iraq and

---

[5] The Court in Holder, specifically noted that it could not
determine the degree or coordination or direction needed to
violate the material support law because it did not have
specific activities before it.

depicting military operations against U.S. forces. It consists
of conversations the defendant had with others about
controversial topics. It consists of translations of readily
available texts.

The government has repeatedly referred to the defendant's
translation of the "39 Ways to Serve and Participate in Jihad"
as evidence of his support of foreign terrorist groups. He
translated it and Tibyan Publications, a web site, placed it on
their site. The government alleges that the defendant hoped his
work would convince others of his view of things, (Indictment,
Count One, ¶ 5), "lead to action," (Indictment, Count One, ¶
16), and "make an impact." (Indictment, Count One, ¶ 22). The
very purpose of speech is to persuade. Hill v. Colorado, 530
U.S. 703, 716 (2000) ("The right to free speech, of course,
includes the right to attempt to persuade others to change their
views"); Lee v. Weisman, 505 U.S. 577, 591 (1992) ("[T]he very
object of some of our most important speech is to persuade. . .
."); Eisenstadt v. Baird, 405 U.S. 438, 459 (1972) ("The First
Amendment protects the opportunity to persuade to action. . .
."); Thomas v. Collins, 323 U.S. 516, 537 (1945) ("'Free trade
in ideas' means free trade in the opportunity to persuade to
action, not merely to describe facts."). The question is whether
the defendant intended to advocate the use of force or violation
of law. He did not, and the indictment does not indicate that he

did. The *39 Ways* provides many suggestions as to how a Muslim may participate in defending his faith without joining a fighting force.

Even if the translation suggested the use of force or lawless action under certain situations, the evidence does not indicate that the defendant intended that his speech lead to *imminent* lawless action or was likely to do so. The defendant watched movies, translated texts, and talked with a few people about controversial topics inherent in the wars in Iraq and Afghanistan. This is not the kind of speech that would lead listeners to immediately engage in violence or lawless action. The indictment attests to the fact that the defendant's speech led to absolutely nothing. Of all the speech by which the defendant is accused, the government is able to point to only a single effect: on one occasion, one of the defendant's correspondents said, "[t]hings are clearer now." (Indictment, Count One, ¶ 5).

**D.    The defendant's speech did not further any conspiracy**

In order to establish a conspiracy, the government must prove, in part, that an illegal objective is coupled with one or more overt acts in furtherance of the objective. U.S. v. Dahlstrom, 713 F.2d 1423, 1429 (9th Cir. 1983); see Direct Sales Co. v. U.S., 319 U.S. 703 (1943); U.S. v. Falcone, 311 U.S. 205

(1940); U.S. v. Pinckney, 85 F.3d 4, 8 (2nd Cir. 1996); U.S. v. Blakeney, 942 F.2d 1001, 1009 (6th Cir. 1991).

The government has charged the defendant with, *inter alia*, conspiracy to provide material support to Al-Qaeda (Count One) and conspiracy to provide material support to terrorists (Count Two). The indictment does not explicitly state what conduct the government considers to be material support.

Despite the lack of specificity, the defendant is able to determine that the material support envisioned in counts one and two is comprised of one or more of the following allegations: (1) Abousamra's 2002 trip to Pakistan (Indictment, Count One, ¶¶ 1-3; Count Two, ¶¶ 1-5); (2) the defendant's and Abousamra's 2004 trip to Yemen (Indictment, Count One, ¶¶ 7-8, 10-15; Count Two, ¶¶ 8-9, 11-16); or (3) the defendant's speech as described in this memorandum (Indictment, Count One, ¶¶ 4-6, 16-25; Count Two, ¶¶ 6-7, 17-24, 28).

The government has indicated that the defendant's speech itself constitutes material support. It has also indicated that this speech is used as overt acts to support other material support. The government cannot do so without violating the First Amendment.

As noted above, "overt acts" for the purpose of establishing a conspiracy are acts done to further a conspiracy. See Samuels v. Mackell, 401 U.S. 66, 75 (1971) (Douglas, J.

concurring); Epton v. New York, 390 U.S. 29, 29 n.* (1968).
"[E]ven constitutionally protected speech may constitute an
overt act in a conspiracy charge." U.S. v. Mubayyid, 476
F.Supp.2d 46, 55 (D. Mass. 2007). Speech that is "an integral
part" of a crime or that is a "means to get a crime successfully
committed" can be an overt act. Rice v. Paladin Enterprises,
Inc., 128 F.3d 233, 243-44 (4th Cir. 1997).

Speech that is integral to a crime consists of, for
example, a conversation about where to make a drug deal or how
to build a bomb. This is quite different from translating a
document or video that supports a point of view or suggests a
course of conduct. Id. Indeed, the First Amendment "leaves the
way wide open for people to favor, discuss, advocate or incite
causes and doctrines however obnoxious and antagonistic such
views may be to the rest of us." Cole v. Richardson, 405 U.S.
676, 688-89 (1972).

In the instant case, the speech that the government alleges
is an overt act is *not* an overt act in furtherance of either
Abousamra's alleged 2002 trip to Pakistan or Abousamra and the
defendant's alleged 2004 trip to Yemen. The vast majority of
this speech took place in 2006, *well after* the two trips.
Furthermore, the content of the speech is completely irrelevant
to the success of either trip. Translating videos, discussing
controversial topics, and trading CDs with friends were not

integral to these trips abroad. This speech was independent of these trips, and therefore cannot be used as overt acts in support of material support charges based on those trips. "'Freedom of expression can be suppressed if, and to the extent that, it is so closely brigaded with illegal action as to be an inseparable part of it.'" Garrison v. State of La., 379 U.S. 64, 82 (1994) (Douglas, J., concurring). "Unless speech is so brigaded with overt acts of that kind there is nothing that may be punished." Id.

**E. The defendant's speech is not a threat**

The First Amendment permits the government to ban "true threats." Virginia v. Black, 538 U.S. 343, 359 (2003). Such threats "encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." Id.

Political hyperbole is not a true threat, and cannot be banned under the Court's true threat doctrine. Watts v. U.S., 394 U.S. 705, 708 (1969). For example, an opponent of the draft who receives orders to report for military service may say, "I am not going. If they ever make me carry a rifle the first man I want to get in my sights is" the president. Id. at 706. Similarly, merely emotional speech that may appear to be threatening is protected. During a boycott, for example, a

boycott leader's statement, "If we catch any of you going in any of them racist stores, we're gonna break your damn neck," is protected. N.A.A.C.P. v. Claiborne Hardware Co., 458 U.S. 886, 902 (1982).

In Claiborne Hardware, the Supreme Court found that the speech was protected, writing, "Speech does not lose its protected character . . . simply because it may embarrass others or coerce them into action." Id. at 910. The First Amendment's "'[f]ree trade in ideas' means free trade in the opportunity to persuade to action, not merely to describe facts." Id.

In the instant case, the defendant's speech did not constitute a threat. His speech contained no threat of violence. The defendant communicated his speech to friends or correspondents, not as an actual threat to a potential victim. See Demers ex rel. Demers v. Leominster School Dept., 263 F.Supp.2d 195, 201 (D. Mass. 2003) (no First Amendment protection if the speaker "should have foreseen that her words would be seen as a threat to the" potential victim) (citing Lovell By and Through Lovell v. Poway Unified School Dist., 90 F.3d 367, 373 (9th Cir. 1996)). To find that the defendant's speech constituted a threat would be tantamount to someone "threatening" his brother by expressing his anger only to his own wife in the privacy of the marital home.

The defendant's speech was, at worst, political hyperbole concerning the United States' actions in Iraq and Afghanistan. His speech concerned an issue of no less public importance than those in <u>Watts</u> and <u>Claiborne Hardware</u>, and his speech was much less "threatening" than in those two cases. In fact, it was not threatening at all.

## IV. Conclusion

The defendant is being accused of providing, attempting to provide, and conspiracy to provide material support to terrorists. These charges are based primarily on the defendant's speech, which is protected by the First Amendment. For the above reasons, the defendant requests that this court dismiss Counts One through Three of the Second Superseding Indictment to the extent they are based on the defendant's protected speech.

TAREK MEHANNA
By his attorneys,

CARNEY & BASSIL

*J. W. Carney, Jr.*
J. W. Carney, Jr.
B.B.O. # 074760

*Janice Bassil*
Janice Bassil
B.B.O. # 033100

Sejal H. Patel
B.B.O. # 662259
Steven R. Morrison

                                        B.B.O. # 669533
                                        John E. Oh
                                        B.B.O. # 675916
                                        Carney & Bassil
                                        20 Park Plaza, Suite 1405
                                        Boston, MA 02116
                                        617-338-5566

Dated: July 15, 2011

<u>Certificate of Service</u>

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on or before the above date.

*J. W. Carney, Jr.*
J. W. Carney, Jr.