```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS
```

```
                              )
UNITED STATES OF AMERICA      )
                              )
V.                            )       NO. 09-CR-10017-GAO
                              )
TAREK MEHANNA                 )
                              )
```

### DEFENDANT'S MOTION IN LIMINE TO SUPPRESS VIDEO OF MUTILATION OF U.S. SERVICEMEN IN IRAQ AND TO SUPPRESS DEFENDANT'S COMMENTS CONCERNING THE VIDEO

#### I. Introduction

The defendant, Tarek Mehanna, requests that this Court suppress the use at trial of a video found by the government during a search of the defendant's home computer. As grounds therefore, the defendant states the following.

#### II. Facts

In 2006, agents of the United States government executed a delayed notice (or "sneak-and-peek") search of the defendant's home and personal computer. Among the thousands of documents, texts, videos, audio files, and instant messages, they discovered one particular video.

The images depicted in this video are, to say the least, extremely gruesome. They depict men in Fallujah, Iraq, with the

1

severed head of an American soldier. The video also depicts the carved out torso of another American soldier whose organs and skeletal structure can be seen. Voice-over tracks of Osama bin Laden and Abu Musab al Zarkawi are heard with Bin Laden praising the Iraqi mujahideen for their operations against the Americans.

Counsel for the defendant viewed this video. Collectively, counsel has approximately seventy-five years of criminal law experience, both as defense counsel and prosecutors. Counsel has had to view all types of video and photographic evidence in child pornography, child rape, adult rape, and multiple murder cases. The video at issue is similarly disturbing, and because it is not probative, would only serve to inflame the jury and result in unfair prejudice against the defendant.

In the Second Superseding Indictment, the government alleges as an overt act for Counts One (conspiracy to provide material support to a foreign terrorist organization) and Two (conspiracy to provide material support to terrorists) that the defendant watched, gave to friends, and commented favorably on the video. In its proffer for detention, the government repeated a lengthy instant message conversation between the defendant and another person regarding the video. Specifically, this person asked the defendant if there was to be a trial of the soldiers accused of the rape of a 15-year old Iraqi girl. The defendant

responded that there would be, "but, who cares . . . Texas BBQ is the way to go."

The Second Superseding Indictment indicated that the defendant made his favorable comments as a result of a recent report of "a rape committed by a serviceman." The rape was not as antiseptic as the government would have it. The following report describes the rape of 15-year old Abeer Qassim:

CHICAGO TRIBUNE
Copyright 2006 Chicago Tribune Company

July 4, 2006

Section: News

Neighbor tells chilling tale of family's slaying
Teen, family feared U.S. soldiers, he says

Ellen Knickmeyer, The Washington Post. Two special correspondents in Mahmoudiya and special correspondent Bassam Sebti in Baghdad contributed to this report.

Fifteen-year-old Abeer Qassim Hamza was afraid, her mother told a neighbor.

As pretty as she was young, the girl had attracted the unwelcome attention of U.S. soldiers manning a checkpoint that the girl passed through almost daily in their neighborhood in the south-central city of Mahmoudiya, her mother told the neighbor.

Abeer told her mother again and again in her last days that the soldiers had made advances toward her, a neighbor, Omar Janabi, said over the weekend, recounting a conversation he said he had with the girl's mother, Fikhriya, on March 10.

Fikhriya feared the Americans might come for her daughter at night, at their home. She asked her neighbor if Abeer could sleep at his house. Janabi said he agreed.

Then, "I tried to reassure her, remove some of her fear," Janabi said. "I told her, `The Americans would not do such a thing.'"

Abeer did not live to take up the offer of shelter at Janabi's home.

On Monday, federal prosecutors in North Carolina filed rape and murder charges against Steven Green, a 21-year-old former U.S. soldier who they said shot the girl's family and then raped her along with another soldier before shooting her to death.

Three other soldiers, all members of the 101st Airborne Division, 502nd Infantry Regiment, are being confined to a base in Iraq while a military investigation continues.

Before leaving, the attackers attempted to set Abeer's body on fire, according to Janabi, another neighbor who spoke on condition of anonymity, the mayor of Mahmoudiya and a hospital administrator with knowledge of the death certificates and of the case overall.

Janabi was one of the first people to arrive at the house after the attack, he told a Washington Post special correspondent at the home of local tribal leaders. He said he found Abeer sprawled dead in a corner, her hair and a pillow next to her consumed by fire, and her dress pushed up to her neck.

"I was sure from the first glance that she had been raped," he said.

U.S. soldiers initially ascribed the killings to Sunni insurgents active in the area, the U.S. military and local residents said. That puzzled residents, who knew the family was Sunni, Janabi said. Other residents assumed Shiite Muslim militiamen were responsible.

But on June 23, three months after the incident, two soldiers of the 502nd came forward to say that soldiers of the unit were responsible, a U.S. military official said last week. The military began an investigation the next day, the official said.

The rape allegation makes the case potentially incendiary in Iraq, where it is seen as a crime smearing the honor of the family and the victim.

Death certificates viewed at the hospital identified the victims as Fikhriya Taha, 34, killed by gunshots to her head; Qassim Hamza, 45, whose head was "smashed" by bullets; Hadeel Qassim Hamza, 7, Abeer's younger sister, shot to death; and Abeer, shot

in the head. Abeer's body also showed burns, the certificate noted.

The bodies were taken to a Mahmoudiya hospital by March 12, according to Janabi and a hospital official, who spoke on condition of anonymity.

On March 13, a man identifying himself as a relative claimed the bodies for burial, the hospital official said. An hour after the man left with the bodies, U.S. soldiers came to the hospital and asked about the bodies, the hospital official said. The next day, the official said, soldiers scoured the area, trying to find the funeral for the family.

"But they did not find it, simply because the relatives did not do it, because the death includes the rape of one of the family members, which is something shameful in our tradition," the official said. "The family kept the news a secret, fearing the disgrace. They thought it was done by militias, not U.S. forces."

Reached by telephone at his home in Iskandariyah, south of Mahmoudiya, a family member would not discuss the alleged rape or the killings.

"What is the benefit of publishing this story?" said Abeer's uncle, Bassem. "People will read about this crime. And they will forget about it the next day."

    This is 15-year old Abeer Qassim, who was raped, murdered,

and burned by U.S. Servicemen:



### III. Argument

I. **THIS COURT SHOULD SUPPRESS THE VIDEO DEPICTING THE BEHEADING OF U.S. SERVICEMEN, THE DEFENDANT'S COMMENTS CONCERNING THIS VIDEO, AND ALL RELATED EVIDENCE**

A. **The evidence is irrelevant to prove the allegations in the Second Superseding Indictment**

The government has indicated its intention to seek admission in evidence of the video at issue and the defendant's comments concerning the video in order to show the defendant's intent to provide and conspire to provide material support to Al-Qaeda. Pursuant to Federal Rule of Evidence 402, this Court

6

should exclude this evidence as irrelevant. Federal Rule of Evidence 401 defines relevant evidence as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Evidence that is irrelevant is not admissible. FED. R. EVID. 402.

The issue in this case is whether the defendant conspired to provide material support to Al-Qaeda by translating documents and by traveling to Yemen allegedly to seek out a terrorist training camp; provided material support by allegedly seeking out the camp; and providing false statements to federal agents in violation of the law. Evidence involving the U.S. Servicemen's gang rape of Abeer Qassim, the video showing the mutilation of other U.S. Servicemen, and the defendant's comments is not probative of any of the criminal allegations pending against the defendant.

The government is certainly able to introduce evidence to adduce the defendant's motive or intent to commit the crimes with which he is charged. Evidence of the gang rape, the video, and the defendant's comments is not evidence of such motive or intent.

The gang rape occurred in March 2006, and the defendant made his comments in July 2006. This was more than two years

7

after he traveled to Yemen and a year after the defendant allegedly translated the *39 Ways to Serve and Participate in Jihad*. The defendant remained uncharged, unarrested, and free for more than two years after he made his comments. With the exception of the false statements allegations, the defendant is charged with nothing illegal during these two years.

A defendant's post hoc conduct may provide evidence of motive or intent to commit crimes that took place at an earlier date. In the instant case, however, the nature of the evidence is not probative of motive or intent. The defendant was commenting on a specific incident in which U.S. Servicemen planned and executed the gang rape, murder, and burning of Abeer Qassim, and the murder of Abeer's entire family. His response was that he supported the murder and mutilation of two U.S. Servicemen.

We may not like the defendant's reaction to this type of revenge, but we must acknowledge that it is a normal, human response. Thane Rosenbaum, a professor at Fordham University School of Law, recently wrote of revenge, "Are these vengeful feelings morally appropriate? The answer is yes . . . . Despite the stigma of vengeance, it's as natural to the human species as love and sex." Thane Rosenbaum, "Justice? Revenge? You Need Both," N.Y. TIMES, July 27, 2011, Op-Ed. The defendant's uncomfortable, but normal, response to Abeer Qassim's

victimization is simply not probative of the crimes charged in this case.

**B.  The admission of evidence of the gang rape and murder, the video, and the defendant's response would confuse and mislead the jury**

Evidence is inadmissible if its probative value is substantially outweighed by the danger that it would confuse or mislead the jury. FED. R. EVID. 403.

The prosecution should be precluded from introducing in evidence the video at issue and the defendant's comments concerning the video. The video is one of the most gruesome sights that defense counsel has ever seen. Because of this and the fact that the victims in the video were U.S. Servicemen, the jury may initially view the defendant's favorable comments in a highly negative and decontextualized light. The indictment, which mentions merely a "rape" by "a [single] serviceman," will be inadequate to place the defendant's comments in context.

If the government is permitted to introduce the video and the defendant's comments in evidence, the defendant will be forced to seek introduction in evidence testimony and documentary evidence showing that U.S. Soldiers had been making sexual advances to 15-year old Abeer Qassim, and then conspired to invade her home, gang rape her, murder her and her family, burn bodies, and engage in a cover up. The defense will show

9

that this planning was so meticulous that the soldiers even left one comrade back at base to monitor the radio.

Presented with this heinous vignette, the jury may sympathize either with the defendant and his comments or with the U.S. Servicemen who were murdered and mutilated on video (and who were from the same unit as those who raped and murdered the Qassim family, but who were not implicated in that crime). The jury will either understand why the defendant said what he said or will conclude that he celebrates incidents in which Muslims commit baseless, violent murders on Americans. They will be confused and misled, and this evidence will not help them to determine whether the defendant is guilty of the crimes alleged.

### IV. Conclusion

The government should be precluded from introducing in evidence the video at issue and the defendant's comments involving the video. If it is allowed to introduce this evidence, the defendant will be forced to introduce evidence of the crimes against Abeer Qassim and her family. This evidence is not probative, and would only confuse and mislead the jury.

> TAREK MEHANNA
> By his attorneys,
>
> CARNEY & BASSIL
>
> *J. W. Carney, Jr.*
> J. W. Carney, Jr.
> B.B.O. # 074760

*Janice Bassil*
Janice Bassil
B.B.O. # 033100

Sejal H. Patel
B.B.O. # 662259
Steven R. Morrison
B.B.O. # 669533
John E. Oh
B.B.O. # 675916
Carney & Bassil
20 Park Plaza, Suite 1405
Boston, MA 02116
617-338-5566

Dated: October 3, 2011

Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on or before the above date.

J. W. Carney, Jr.
J. W. Carney, Jr.