UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    )
                               )
                               )
        v.                )     Criminal No. 09-10017-GAO
                               )
                               )
TAREK MEHANNA              )

## GOVERNMENT'S MOTION TO QUASH SUBPOENA SERVED ON CASE AGENTS

The United States of America, by and through United States Attorney Carmen M. Ortiz, and Assistant United States Attorneys ("AUSA") Jeffrey Auerhahn and Aloke S. Chakravarty, for the District of Massachusetts, and Jeffrey D. Groharing, Trial Attorney, Counterterrorism Section, National Security Division, United States Department of Justice, files this motion to quash a subpoena that was served on the case agents in this case.

On November 7, 2011, the defense subpoenaed the testimony and documents of the case agents in this case, Special Agent Heidi Williams and Task Force Agent Thomas Daly.  A copy of the subpoenas, along with cover letter and affidavit are attached. The document portion of the subpoena demands: "Any and all documents related to her investigation in this case and any and all statements, whether written or oral (reduced to writing), of any witnesses she interviewed.  These documents include, but are not limited to, and [sic] all FBI "302" reports and any and all handwritten and typed notes."

1

The agents have been and will be available for testimony absent the need for a subpoena.  The demand for documents, however, should be quashed, as an end-run around the discovery rules.  Responsive discoverable documents in this case have already been produced through the rules of discovery, and in compliance with orders of this Court.

**I. Rule 16**

Federal Rule of Criminal Procedure 16 governs the discovery of relevant materials within the possession, custody and control of the prosecution team.  Fed. R. Crim. P. 16.  Unlike a pre-trial subpoena to a third-party, the investigative information sought in the defense's trial subpoena is exactly the type of discovery information which is subject to Rules 16 and 26.2.  *See* Fed. R. Crim. P. 16(a)(1, 2), 26.2(a); *United States v. Henry*, 482 F.3d 27, 30 (1st Cir. 2007) (upholding quashing of defense trial subpoena as inappropriate discovery device for potential impeachment information of government's cooperating witness). *Compare with* Government's Motion to Quash, Dkt. 295.

A defendant may not use a Rule 17 trial subpoena for discovery. *United States v. Nixon*, 418 U.S. 683, 699-700 (1974); *United States v. Arditti*, 955 F.2d 331, 346 (5th Cir. 1992) (rejecting defense attempt "to gain knowledge that he could not obtain under rule 16(a)(1)"). "While a Rule 17(c) subpoena *duces tecum* is a legitimate device to obtain evidentiary material, it

2

was never intended to be a broad discovery device going beyond that which is required either by Rule 16 of the Federal Rules of Criminal Procedure or by *Brady*." *United States v. Edwards*, 191 F. Supp. 2d 88, 89 (D.C. 2002), *citing*, *United States v. Hardy*, 224 F.3d 752, 755 (8th Cir. 2000) (Rule 17(c) was "not intended to provide an additional means of discovery"). *See, e.g., United States v. Jenkins*, No. 02 CR. 1384(RCC), 2003 WL 1461477, at *5 (S.D.N.Y. Mar. 21, 2003)(Rule 16(a)(2) bars disclosure of reports generated by local law enforcement agents, even when subpoenaed under Rule 17(c)); *United States v. Hatfield*, No. 06-CR-0550(JS), 2009 WL 2030350, at *2 (E.D.N.Y. July 14, 2009); *United States v. Basciano*, No. 97-1264, 1998 WL 88098, at *1-2 (2d Cir. Feb. 26, 1998) (the court refused to enforce the defense subpoenas for documents because it determined that the Waterfront Commission is a law enforcement body, and its records were protected under the law enforcement privilege and were not discoverable under Rule 16).  Therefore, the defense is not entitled to re-open the months of discovery litigation in this case by sending trial subpoenas, during trial, for materials that they either were denied before trial, or which they chose not to seek when the issue was ripe.

If the subpoena is left to stand, in addition to the burden in this case, such devices could be used in every case to duplicate discovery and inappropriately encourage a defendant to

rummage through the government's files, which (particularly in this case) contain a significant amount of classified information and materials, in a pure fishing expedition.  This is precisely the type of end-run that is discouraged in the use of Rule 17.

## II. Rule 17 & Jencks

Rule 17(h) explicitly states that a party is not permitted to subpoena the statement of a witness under Rule 17.  Instead, Rule 26.2 controls the production of such statements.  As defense witnesses, it is the defense who has the burden of production of Jencks statements to the government, not the other way around. Fed. R. Crim. P. 26.2.

Neither does the government have an obligation under the Jencks Act to search for and disclose records for a defense witness, whether such witness is a government agent or not.  The facts at issue do not require the government to conduct an in-depth search of its voluminous and often classified files for impeachment information related to *other witnesses*, that it has already searched for and produced if discoverable under Rule 16 or Brady/Giglio.

## III. Rule 17(c) Trial Subpoena

Even without the controlling rules discussed above, the typical test for enforcement of a Rule 17(c) trial subpoena is whether the subpoena constitutes a good faith effort to obtain identified **evidence** rather than a general "fishing expedition"

4

that attempts to use the rule as a discovery device. *United States v. Cuthbertson*, 651 F.2d 139, 144 (3d Cir. 1980), *cert. denied*, 449 U.S. 1126.   The extent of the defense showing is insufficient to support their request for evidence.

Speculation regarding the relevance of requested documents and discovery of impeachment materials cannot satisfy the burden imposed by *Nixon*:

> [the defendant] thus has failed to establish with sufficient specificity the evidentiary nature of the requested materials. He has demonstrated why he wants to look into the material, but he has not set forth what the subpoena's materials contain, forcing the court to speculate as to the specific nature of their contents and its relevance.

*Arditti*, 955 F.2d at 346.   Stated another way, a Rule 17(c) subpoena cannot properly be issued upon a "mere hope."   *United States v. Hang*, 75 F.3d 1275, 1283-84 (8th Cir. 1996) (also noting that the defendant's request "is replete with conjecture as to the contents of the materials that might have turned up"); *see also United States v. Cuthbertson,* 630 F.2d 139, 146 (3d Cir. 1980). *See, e.g., United States v. Jenkins,* No. 02 CR. 1384(RCC), 2003 WL 1461477, at *5   (S.D.N.Y. Mar. 21, 2003) (the court granted the government's motion to quash because the defendant failed to make a sufficient showing of admissibility of internal NYPD investigative files and thus they were inadmissible as hearsay); *United States v. Manghis*, No. 08cr10090-NG, 2010 WL 349583, at *2 (D. Mass. Jan. 22, 2010)(the court granted the government's motion to quash because the defendant did not show

that his subpoenas met the requirements of relevancy, admissibility, and specificity).  The items sought in this case are not specific pieces of evidence which should be admitted in this case, and they circumvent the rules of discovery.

Not only would compliance with the defendant's trial subpoena be unreasonable due to its redundancy with the Rules of discovery, its oppressive nature, and its unsupported breadth, but given that the government's files in this matter have tranches of classified information, the procedures of the Classified Information Procedures Act should have been followed. 18 U.S.C. App. 3  § 4-6.

The subpoena issued in this case are neither narrowly targeted, nor are they novel to those materials produced under the rules through the discovery process.  Instead, they constitute a scattershot attempt by the defendant to rummage through the work product of the investigating agents to gain access to information which he either already has or to which he is not entitled.  The records sought are not exhibits of the defendant's guilt or innocence.  As they did with their discovery requests under Rule 16, the defendants have cast their Rule 17 net much wider than the law allows.

To the extent that a report of interview or impeaching material related to the government's witnesses was created, it has been produced.  The government has no obligation to scour its

files and produce all information about a government witness to
the defendant, and even less so outside the context of discovery.
Defendants have no general constitutional right to discovery in
criminal proceedings, and neither do they have a right to know
everything the government does about the defendant or witnesses.
*United States v. Jordan*, No. 09-10139-JLT, 2010 WL 625280, at *2
(D. Mass. Feb. 23, 2010) (citing *Weatherford v. Bursey*, 429 U.S.
545, 559 (1977)).  The touchstone of the government's disclosure
obligation is the "materiality" of the information, where there
is a reasonable possibility that the result would have been
different had the evidence been disclosed to the defense.
*Jordan*, 2010 WL 625280, at *2 (*citing Kyles v. Whitley*, 514 U.S.
419, 433 (1995)).  The defense is requesting documentation they
have not even identified, at best to impeach or refresh the
recollection of an FBI witness testifying for the defense about a
government witness' prior testimony.  The government's practice
of producing FBI 302 reports of witness interviews with Jencks
materials (though they are not their Jencks statements) is
designed precisely to avoid this type of mid-trial distraction.[1]

---

[1]Upon enacting 18 U.S.C. § 3500, not only was it feared that
disclosure of memoranda containing an investigative agent's
interpretations and impressions might reveal the inner workings
of the investigative process and injure the national interest,
but it was also felt to be grossly unfair to allow the defense to
use statements to impeach a witness that are the product of the
investigator's selections, interpretations and interpolations.
*Palermo v. United States*, 360 U.S. 343, 350-51 (1959).  Summaries
that were prepared after an interview which rest on the memory of

## III. Conclusion

Based on the foregoing arguments and authority, the United States respectfully requests that this Court quash the defendant's subpoenas to the case agents.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By: /s/ Aloke Chakravarty
Aloke S. Chakravarty
Jeffrey Auerhahn
Assistant U.S. Attorneys

Jeffrey D. Groharing
Trial Attorney
Counterterrorism Section
National Security Division
U.S. Department of Justice

Date:     November 17, 2011

---

the agent and statements which contain the agent's interpretations or impressions are not to be produced under the Jencks Act. *Id.* at 352-53. Furthermore, this Act does not even apply to defense witnesses. *Id. See, e.g., United States v. Disston*, 612 F.2d 1035, 1038 (7th Cir. 1980) (the statements of the witness were not producible under the Jencks Act because he was not called as a Government witness, a prerequisite to the Act's applicability); *United States v. Davis*, No. CR.A. 01-282, 2003 WL 1825602, at *2 (E.D. La. Apr. 8, 2003)(the defendants had no grounds to complain the government had violated their rights to discovery because the government had made three responses to the defendants' requests, including summaries of statements of intended witnesses and their names and addresses, and Jencks material prior to trial).

CERTIFICATE OF SERVICE

I hereby certify that I have discussed this matter with counsel, and this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

 /a/ Aloke Chakravarty
Aloke S. Chakravarty
Assistant U.S. Attorney