UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA      )
                              )
                              )
        v.                    )    Criminal No. 09-10017-GAO
                              )
                              )
TAREK MEHANNA                 )

**MOTION TO PUBLISH EXHIBITS 58 AND 58A TO THE JURY**

The United States of America, by and through United States Attorney Carmen M. Ortiz, and Assistant United States Attorneys ("AUSA") Jeffrey Auerhahn and Aloke S. Chakravarty, for the District of Massachusetts, and Jeffrey D. Groharing, Trial Attorney, Counterterrorism Section, National Security Division, United States Department of Justice, herein renews the government's request to admit one of the videos found on the defendant's computer, and herein amplifies upon the highly probative nature of admitting Exhibits 58 and 58A, demonstrates that the probative value in the publication of these exhibits is not substantially outweighed by the risk of unfair prejudice to the defendant.  Fed. R. Evid. 403.

**Exhibit 58: the Juthath Video**

As previously discussed in court, Exhibit 58 is a video called Juthath, which the defendant stored on his computer, disseminated, and commented upon to his associates.  Juthath, which literally means "corpse," includes an introductory image with a voiceover by Usama bin Laden, followed by images of two

U.S. serviceman's mutilated remains being further abused by mujahideen in Iraq. The graphic portion of the video depicting these remains have been redacted from Exhibit 58, and it is not the intention of the government to display these parts of the video to the jury, nor to include such scenes in the video segments that will be offered as an exhibit.

The government has prepared a verbatim translation for this video, Exhibit 58A (attached hereto), and its relevance has been established, that is, the defendant did not just generally oppose the war in Iraq, but instead specifically support al Qa'ida and the actions against U.S. servicemen – acts which are at the heart of the allegations against the defendant. The video begins with the words and image of Usama bin Laden in support of the actions depicted in the video, which are clearly not unfairly prejudicial. The images of the mutilated servicemen, which while highly relevant to corroborate the objective of the defendant's actions, have been sanitized. Consequently, the reference to the fact that the images depict gruesome scenes is sufficiently muted while still permitting the government to advance probative evidence as to the defendant's intent and objectives with respect to the charges. The fact that this video was gruesome is important for the jury to know when they assess the probative nature of why it was that the defendant took particular glee in sharing and discussing it.

**Exhibit 58A : the Translation of the video**

Per the court's previous rulings, the government has prepared a complete verbatim translation of exhibit 58.  The translation is significant in several respects and further demonstrates the probative nature of these exhibits.

First, the translation makes clear that the video is a product of the media institute of al Qa'ida, significant in that the defendant conspired to support al Qa'ida, in part, through these activities.

Second, the video makes clear that al Qa'ida's activities were coordinated between bin Laden and the activities in Iraq, and the defendant was aware of this coordination.

Third, the speech of Zarqawi, who the defendant idolized second only to bin Laden, makes clear that the objectives of the depicted acts is to motivate Muslims to kill Americans and to use media to do it.  He says notably: "It is truly hard for people like them -subservient slaves- to see themselves killing the American master[]" and "[w]hat is truly unfortunate and scary is that the media of the sinner crusaders – with the help of our fellow citizens - was able to influence the development of the Muslim personality."

**Defendant's Comments on, and Distribution of, the Video**

Evidence tying the video to the defendant, aside from the defendant's possession and storage of it, further establishes the

3

probative nexus both to the objectives of his actions and the charged conspiracies, his general state of mind, interpreting his coded references, and specifically what he encouraged others to accept as the appropriate response to U.S. forces in Iraq.

Exhibit 734 (attached as an exhibit to this motion), establishes in the defendant's own words what is depicted in the video, why the mutilation occurred, and why it was the defendant's preferable course of action in Iraq.  The defendant tells Tauqir that the video shows the aftermath of the process of revenge against "hicks" from the same "baseball team" [the same unit] as the rapist [of an Iraqi girl].  The defendant then sends the file to Tauqir, sends a smiley face, and then describes that the mujahideen dissected the bodies, and states that one can see the soldiers' ribs and internal organs in the video.  When asked whether the perpetrators of the rape were being tried in court, the defendant's response was "who cares Texas BBQ is the way to go".  The sanitized video and translation are precisely the type of sanitized evidence which can give a profound insight to the jury as to the defendant's intentions, without having to expose them to graphic and disturbing images.  The fact that someone, the defendant in this case, would find joy in something so horrific is highly probative of his intent toward U.S. soldiers in Iraq, and his alignment with al Qa'ida's activities there, and especially in a sanitized form, is not unfairly prejudicial.  It

is made obvious that the defendant did not encourage "protected" discussions and other speech against the war, but rather action against the soldiers who were executing it.  This evidence is highly and directly probative of the conspiracy to kill servicemen and related charges of material support.

In addition, significant as relates to the conspiracy, the defendant makes numerous references in conversations with others, espousing to them the virtues of the actions in the video, and suggesting to others the importance of watching the video (to see how their enemies should be treated).  This evidence is directly and highly probative of the government's theory that the defendant attempted and agreed to provide others as personnel and to distribute al Qa'ida media to advance that objective of the charged conspiracies, as well as (as stated) establishing what that ultimate objective was, i.e., kill U.S. servicemen.  Where the defense advances a theory that after the invasion of Iraq the defendant was anxious to obtain religious or linguistic training in Yemen, the defendant's reaction to this video is strong evidence that his intentions on that trip were in fact to support the jihad in Iraq against Americans.

In Exhibit 686, the defendant asks Ihab whether he saw the video of the mutilated infidels that was done in revenge for the rape of that [Iraqi] girl ... "nice juicy BBQ."

In Exhibit 540 and 541, the defendant asks co-conspirator and Tibyan Publications group member, Abus-Saqr, whether he had

5

seen the video of the mutilated infidels and then says, "man it was Texas BBQ sauce all the way." He then tells Abus-Saqr that he wants "more BBQ sauce videos."

In Exhibit 701 the defendant asks co-conspirator Nussrah whether he wanted to see what was done in revenge for the rape, and then when Nussrah says he already saw and sends a smiley face icon, the defendant replies, "yeah heh good chop chop 2 texas bbq".

**Presentation of the Evidence**

To further minimize the risk of unfair prejudice, the government could publish the chats and video (without the graphic portions) through a linguist, who, as a neutral witness will not comment on the substance of the video and circumstances, outside of what is depicted on the video itself, i.e., that the video is consistent with the defendant's description of it. Further, a linguist who translated the video will explain that its translation is fair and accurate.

**Legal Discussion**

"By design, all evidence is meant to be prejudicial." United States v. Varoudakis, 233 F.3d 113, 122 (1st Cir. 2000) (citation and internal quotation marks omitted). This is the rule even for gruesome images. In United States v. Cartano, 420 F.2d 362, 364-65 (1st Cir. 1970), the court ruled that photographic slides that depicted head injuries were properly admitted because they were probative of issues in the case.

Visual evidence that links a defendant to a crime can be admitted even when it is quite disturbing.  See, e.g., United States v. Standish, 3 F.3d 1207, 1209 (8th Cir. 1993) (holding that a videotape of a murder scene and autopsy photos of a victim's body were admissible to link a defendant to the murder); United States v. Alfaro-Moncada, 607 F.3d 720, 734 (11th Cir. 2010) (holding that images of child pornography were admissible because they showed that the defendant knew he was in possession of child pornography); United States v. Morales-Aldahondo, 524 F.3d 115, 119-20 (1st Cir. 2008) (affirming that a trial court properly allowed the introduction of photographs and videos of child pornography because those images were necessary to make a full presentation of the crime and the number of images was limited, despite the fact that they were so distressing that a juror began crying during their presentation).  Even when a piece of evidence is inflammatory in the sense that it might offend the jurors' ideological beliefs, it can be admitted if it is relevant.  See United States v. Felton, 417 F.3d 97, 101-02 (1st Cir. 2005) (holding that evidence linking the defendants to a white supremacist organization, including a pamphlet by that organization that described "an apocalyptic future in which white women were publicly gang-raped by Negroids," was admissible because it was relevant to the defendants' beliefs, associations, and motives).

It should not be forgotten that this is a case that alleges

a conspiracy to kill; evidence of violence and desire to commit acts of violence are central to the charges.

In cases involving terrorism offenses, evidence that bears on a defendant's motive can be admitted even when the evidence includes distressing images of violence against Americans.  In United States v. Salameh, 152 F.3d 88, 110 (2d Cir. 1998), the trial of those accused of the 1993 World Trade Center bombing, the Second Circuit addressed a Rule 403 challenge to the admission of materials such as a videotape of the bombing of an American embassy.  The court concluded that the materials were not unfairly prejudicial, reasoning that even though the items "bristled with strong anti-American sentiment and advocated violence against targets in the United States," the danger of unfair prejudice did not substantially outweigh the probative value of the evidence. Id. at 111.  When the accused is not responsible for the violent message depicted in an item of evidence that was once in his possession, that item can still be used in court to illustrate his motive. See United States v. Abu-Jihaad, 630 F.3d 102, 134 (2d Cir. 2010) (confirming that a district court rightly admitted postings from a pro-jihadist website that the defendant had visited, despite the fact that prosecution could only prove that the defendant had visited the site during times when the postings were available).  Finally, a video that a defendant had watched can be admissible when it can be confirmed that the defendant had commented on it.  *In United*

*States v. Jayyousi*, the court held that a video of a CNN interview with Osama bin Laden was properly admitted as evidence for two defendants who were known to have watched and discussed the video, but was not used as evidence for a third defendant who was not known to have watched or discussed the video. 2011 WL 4346322, at *19 (11th Cir. 2011).

**Conclusion**

Wherefore, the government moves for the introduction of the Juthath video (exhibit 58), in its sanitized form, and the translation (exhibit 58A), in the manner described herein.

                        Respectfully submitted,
                        CARMEN M. ORTIZ
                        United States Attorney

                        By: /s/ Aloke Chakravarty
                        Aloke S. Chakravarty
                        Jeffrey Auerhahn
                        Assistant U.S. Attorneys

                        Jeffrey D. Groharing
                        Trial Attorney
                        Counterterrorism Section

Date:   November 21, 2011

CERTIFICATE OF SERVICE

I hereby certify that I have filed this motion through ECF and it will be served electronically upon the parties.

                        /s/ Aloke Chakravarty
                        Aloke Chakravarty
                        Assistant U.S. Attorney