```
                    UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MASSACHUSETTS




                                    )
UNITED STATES OF AMERICA,           )
                                    )
         Plaintiff,                 )
                                    ) Criminal Action
v.                                  ) No. 09-10017-GAO
                                    )
TAREK MEHANNA,                      )
                                    )
         Defendant.                 )
                                    )




              BEFORE THE HONORABLE GEORGE A. O'TOOLE, JR.
                     UNITED STATES DISTRICT JUDGE



                          CHARGING CONFERENCE



              John J. Moakley United States Courthouse
                          Courtroom No. 9
                          One Courthouse Way
                    Boston, Massachusetts  02210
                     Thursday, December 15, 2011
                            11:19 a.m.



                    Marcia G. Patrisso, RMR, CRR
                       Official Court Reporter
                 John J. Moakley U.S. Courthouse
                  One Courthouse Way, Room 3510
                    Boston, Massachusetts  02210
                          (617) 737-8728

              Mechanical Steno - Computer-Aided Transcript
```

```
 1    APPEARANCES:

 2         OFFICE OF THE UNITED STATES ATTORNEY
           By: Aloke Chakravarty and Jeffrey Auerhahn,
 3             Assistant U.S. Attorneys
           John Joseph Moakley Federal Courthouse
 4         Suite 9200
           Boston, Massachusetts  02210
 5         - and -
           UNITED STATES DEPARTMENT OF JUSTICE
 6         By: Jeffrey D. Groharing, Trial Attorney
               National Security Division
 7         950 Pennsylvania Avenue, NW
           Washington, D.C.  20530
 8         On Behalf of the Government

 9         CARNEY & BASSIL
           By: J.W. Carney, Jr., Esq.
10             Janice Bassil, Esq.
               John E. Oh, Esq.
11         20 Park Plaza
           Suite 1405
12         Boston, Massachusetts  02216
           - and -
13         LAW OFFICE OF SEJAL H. PATEL, LLC
           By: Sejal H. Patel, Esq.
14         101 Tremont Street
           Suite 800
15         Boston, Massachusetts  02108
           On Behalf of the Defendant

16

17

18

19

20

21

22

23

24

25
```

1                (The following proceedings were held in open court

2       before the Honorable George A. O'Toole, Jr., United States

3       District Judge, United States District Court, District of

4       Massachusetts, at the John J. Moakley United States Courthouse,

5       One Courthouse Way, Boston, Massachusetts, on December 15,

6       2011.

7                The defendant, Tarek Mehanna, is present with counsel.

8       Assistant U.S. Attorneys Aloke Chakravarty and Jeffrey Auerhahn

9       are present, along with Jeffrey D. Groharing, Trial Attorney,

10      U.S. Department of Justice, National Security Division.)

11               THE CLERK:  All rise.

12               (The Court enters the courtroom at 11:19 a.m.)

13               THE CLERK:  For a continuation of the Mehanna trial.

14      Please be seated.

15               THE COURT:  Good morning.

16               COUNSEL IN UNISON:  Good morning, your Honor.

17               THE COURT:  I think perhaps the first order of

18      business would be the Rule 29 motion.

19               MR. CARNEY:  Your Honor, there's a motion related to

00:24 20    that that I just would like to bring to your attention.  At one

21      point in this -- in these proceedings we moved to dismiss based

22      on vagueness grounds.  Your Honor denied the motion to dismiss.

23      We raised that issue again at the close of the government's

24      evidence, and we now raise it one more time.  We're asking to

25      renew our motion to dismiss Counts 1 through 3 of the

1    indictment based on vagueness and overbreadth for the reasons

2    that we advanced during our motion.

3          THE COURT:  All right.  I adhere to the ruling.  The

4    motion is denied.

5          MR. CARNEY:  In terms of the Rule 29 motion, I submit

6    on the papers, and don't waive any argument, but I would like

7    to focus the Court on two things:  the first is what evidence

8    should the jury be able to consider in support of the material

9    support charges; for example, what overt act or acts is the

00:25 10   government able to argue consists of material support to

11   terrorists?  Let me identify the first one I would like to

12   focus on.

13          The government has alleged that the alleged lie of

14   Tarek Mehanna to Daniel Maldonado can constitute material

15   support to al Qa'ida, or material support generally.  I submit

16   that as the evidence has come in here, it cannot.  And so I'm

17   either moving for a judgment of acquittal or requesting a

18   ruling of law, but basically what I'm focused on is the fact

19   that the lie, even if true, did not constitute material

00:26 20   support.

21          And I guess the way conceptually to think about this,

22   your Honor -- or what I found easiest to think about it -- is

23   if the defendant were charged in Counts 1, 2 and 3 with

24   material support, and the only evidence that the government

25   offered, the sole evidence, was that Tarek Mehanna lied to an

1    FBI agent about the whereabouts of Daniel Maldonado, would the

2    Court grant a directed verdict of acquittal, or judgment of

3    acquittal, if that were the only evidence presented in the

4    material support case?

5            I submit that the Court would grant that motion.  It's

6    certainly not granting the motion in regard to whether he made

7    a false statement or conspired to make a false statement, but

8    simply whether that is enough for material support.  And I

9    submit that the lie told about Maldonado, even if true, does

00:27 10   not come within any of the categories that constitute material

11   support.

12           As the Court remembers, Mr. Maldonado moved to Somalia

13   because it was under a Muslim rule of law.  The Islamic Courts

14   Union oversaw the country.  They were not a designated federal

15   terrorist organization.  Shortly after Maldonado arrived there,

16   the neighboring country of Ethiopia invaded Somalia, and

17   Somalia called every able-bodied person together to defend the

18   country, and Maldonado was one of them.

19           This lie about where Maldonado was does not provide

00:27 20   material support in any other designated categories toward

21   either someone engaged in a terrorist act or someone who is a

22   designated federal terrorist organization.  So however your

23   Honor wants to frame it, at its core I'm asking for a ruling

24   that that evidence cannot be argued in support of those three

25   indictments.

1          The second ruling of law I'm seeking is that the

2     government has not proven that the translating of documents by

3     the defendant, the disseminating of documents by the defendant,

4     the advocating various positions by the defendant is anything

5     but independent advocacy, as the evidence has shown; and,

6     therefore, that cannot be relied upon to prove its case of

7     material support.  Again, I would use the analogy if the first

8     three counts only alleged those activities, would the Court

9     direct a verdict of not guilty on each?  And I submit the

00:29 10     answer would have to be "yes."

11          That's what I have on that motion, your Honor.

12          THE COURT:  Okay.  For the government?

13          MR. CHAKRAVARTY:  Thank you, your Honor.

14          First, the government has met -- has satisfied its

15     burden, we would argue, beyond a reasonable doubt with regards

16     to each of the elements that the jury is going to receive with

17     regard to each of the offenses.

18          Starting first with a common theme behind two of the

19     defense's requests to limit the scope -- I guess this is a

00:29 20     slight variation from Rule 29, it's more of a limiting scope of

21     argument under the auspice that there are certain theories

22     which cannot result in a -- cannot be the basis of a conviction

23     on the material support counts, the first is the apparent

24     misconception that the defendant has to personally do every

25     aspect of the conspiracy himself.  And that's germane both to

1    this notion that he can engage with others to engage in

2    advocacy, which is ultimately for the jury to decide, and the

3    defense is free to argue that that advocacy was independent,

4    but simply if the defendant engaged in exclusively

5    speech-related conduct -- and that's not the evidence in this

6    case, but if that were the evidence in this case -- then if

7    that speech-related conduct is done in coordination with others

8    for the benefit of the foreign terrorist organization, then

9    clearly that could constitute material support, and it's up to

00:30 10    the defense and the parties to argue what inferences there are.

11        But the idea that there's a conspiracy means that in

12    for a penny, in for a pound, if others are doing other roles in

13    the conspiracy which are more active, as long as the defendant

14    meets the requisite mens rea and the intent and the objective,

15    then even if his activity is purely speech related -- and,

16    again, that's not the case here, but even if that were the

17    case, then he could be held liable.

18        But the other significant -- and this goes back to the

19    first argument that Mr. Carney made, a significant, I think,

00:31 20    misapprehension is that, first, there is no overt act element

21    in either of the material support statutes, and he conflates an

22    overt act with a designated form of material support under the

23    statute.  Because there's no overt act element, all of those

24    overt acts that are -- that the defendant and others within the

25    conspiracy engaged in help serve notice to the jury as to what

1    the contours of the conspiracy were.

2          But the charge is very clear:  conspiracy to provide

3    material support in one of the designated forms to the

4    designated terrorist organizations, not that he engaged in

5    specific acts or specific theories of liability within that

6    charge.  So what's operative here is what the defendant, his

7    intent was, whether he came to a meeting of the minds with

8    others, and not necessarily his role in accomplishing each

9    aspect of the conspiracy.

00:32 10          I say all that because it's germane to some of the

11    other arguments which we anticipate are going to come up, but

12    there are a variety -- a myriad of theories of liability under

13    the material support statute, and it's not simply the binary

14    solution of either translating or conducting speech online

15    versus going to Yemen and the related activities there.  There

16    are a host of other basis of liability including, for example,

17    the Daniel Maldonado calls.

18          Daniel Maldonado was providing material support to

19    al Qa'ida when -- he was attempting to provide material support

00:32 20    to al Qa'ida when he called the defendant and asked him to join

21    him.  The defendant concealed that information, lied to the FBI

22    about it, and in so doing aided and abetted Mr. Spaulding; in

23    so doing he concealed the provision or attempted provision of

24    material support; and in addition to providing evidence that he

25    himself had conspired to provide that same sort of material

1    support.

2           So it does not make sense to provide bounds on the

3    government's ability to argue things which, assuming that

4    there's a basis in fact, there is a basis in law to show to the

5    jury that even that -- those calls provided -- could constitute

6    a provision for concealing of material support under the

7    statutes.  So that would be an artificial restriction that the

8    government feels is inappropriate to confine and certainly is

9    not germane to the Rule 29.

00:33  10          THE COURT:  Okay.  Substantially for the reasons

11   articulated by Mr. Chakravarty, the motion is denied.  And I

12   think it is worth emphasizing that Counts 1 and 2 are

13   conspiracy counts, and that changes the analysis.  Count 3, of

14   course, is not a conspiracy count.

15          Let me just ask the government whether the

16   government's view is "provided or attempted to provide."

17          MR. CHAKRAVARTY:  "Attempted to provide or provide,"

18   your Honor.  The statute says "provide" -- I say that somewhat

19   in jest.  The --

00:34  20          THE COURT:  Either/or or both.

21          MR. CHAKRAVARTY:  I think the government's argument is

22   that the jury should be charged on both.  Though the

23   government's theory of the case is that he attempted to provide

24   himself, by aiding and abetting the provision of others such

25   as, for example, Ahmad Abousamra continuing on and arguably

1    providing the material support that they had both agreed to

2    provide at the beginning, that when he aides and abets

3    Abousamra or others in the course of the conspiracy under

4    *Pinkerton* liability purposes, then that is a substantive

5    provision of material support.

6        The other reason is the jury could find -- even though

7    it doesn't have to find, it could find that the defendant's

8    translation activities, that the "Expedition of Umar Hadeed"

9    did, in fact, provide material support to al Qa'ida or other

00:35 10   terrorist organizations and they should be allowed to find

11   that.  And so that's why even though the theory of the case is

12   that he tried, regardless of whether he succeeded, that's

13   enough to find him guilty, if he did succeed, then they should

14   also be able to find that.

15       And that's why I don't know the most elegant way to

16   phrase that for the jury.  The government offered it in the

17   alternative:  either he provided, and then we proposed another

18   instruction saying, "if you find that he didn't

19   provide," another form of liability under that charge is that

00:35 20   he could have attempted to provide.

21           THE COURT:  Okay.

22           MR. CARNEY:  I submit the government is limited to

23   arguing that the defendant attempted to provide because that's

24   been its theory throughout the case, that's been the evidence.

25   There's no suggestion that Mr. Mehanna did anything but

1    accompany Abousamra.  Two people going together does not mean

2    that one is attempting to help the other if they're both

3    together doing something.  There's got to be more than that.

4    For example, the way Kareem gave Abousamra money shows that he

5    was helping him, or that Abousamra did something to -- or

6    Kareem, again, paid for the tickets.  That would be an example

7    of actually helping someone.  But if two people decide to go

8    someplace, that doesn't come in as providing material support.

9         And the government is limited to suggesting through

00:36 10   the translations and all that Mr. Mehanna was attempting to

11   provide material support because here again there's been no

12   evidence presented by the government that it actually did

13   provide support.  There wasn't a single witness who said, "I

14   saw a translation by Mr. Mehanna and that inspired me to go

15   help al Qa'ida," or "I saw a video that Mr. Mehanna gave me,

16   and I saw that video and listened to what was said on it, and

17   that's why I went to Iraq or Afghanistan."  So there's a

18   failure of proof there.

19        So I believe the government should be limited, and the

00:37 20   jury should be charged, that this was an attempt and not a

21   substantial -- and not a completed act.

22        MR. CHAKRAVARTY:  Just one other point on that, and

23   it's not necessarily just to respond to Mr. Carney, but another

24   theory -- and the government stands by its position on why the

25   substantive charge is applicable, but another provision is

under the 2339A charge, the Count 3, concealing the provision

of material support is also a substantive basis of liability.

So in addition to the idea that he -- on the trip to Yemen,

when he comes back and he lies about it to the FBI -- both to

the CBP as well as to the FBI later -- that could also

constitute concealing.  So that's just another theory.

THE COURT:  Well, with respect to Count 3, I will

charge as to the full range of the statutory language that

could be argued.

So I've looked over the instructions as they've been

requested and I see -- I've pulled out what I think are the

major issues.  So I'd like to go through them, and then if

there are others that I haven't brought up, we can deal with

it.  And I'll start with the defendant's requests.

The defendant urges the jury be told that they should

be -- that any verdict would have to be unanimous as to the

type of material support provided.  It appears to me that the

government agrees with that position.  And I'm referring to a

statement on -- I guess it's page 30 of the government's

suggestion.

I just want to confirm that that's the case, that the

parties are in agreement as to that.

MR. CARNEY:  I am, your Honor.

MR. CHAKRAVARTY:  I think that's right, your Honor.

THE COURT:  Okay.  That's a separate question from

1    whether the verdict form has to reflect that or not.  We'll

2    come back to the verdict form later.

3         MR. CHAKRAVARTY:  The only caution on that, though, is

4    that the government's position is that they could be unanimous

5    on any one or more, I mean, as long as they can agree on the

6    form.

7         MR. CARNEY:  Right.

8         THE COURT:  Yeah, as long as there's at least one.

9         And then there is the question of the effect, if any,

00:39 10  of the amendments to the statute.

11        Mr. Carney, I know you want to be heard about that.

12        MR. CARNEY:  This is a highly unusual situation where

13   the government has alleged a conspiracy that encompassed the

14   period from January 1st of 2001 until a date in June of 2010

15   when the second superseding indictment was returned.  During

16   that time period the law has changed in material respects.  I

17   submit that the changes are very significant because these

18   changes allow the government to prove the case in different

19   ways than it could have proved the case on January 1, 2001, at

00:40 20  the beginning of the conspiracy.

21        The government had the option to bring multiple counts

22   of conspiracy here.  They could have brought one period that

23   would encompass the way the law originally read.  When the law

24   was changed in a material way, they could have brought a second

25   conspiracy.  When the law was changed once again in a material

1    way, they could have brought a third conspiracy reflecting the

2    new elements or ways that the crime could be committed.  And I

3    think that that would have been permissible in this case.

4         But if they are going to bring a single period of

5    conspiracy, and where during that period the Congress has made

6    it easier for the government to prove by adding ways that the

7    crime can be violated *[sic]*, I submit that the government is

8    limited to the form of the statute that was in play at the

9    beginning of the conspiracy which is the form of the statute

00:41 10   that is most favorable to the defendant; otherwise, I submit,

11   ex-post-facto considerations come into play because what would

12   have not been illegal at one point in the conspiracy becomes

13   illegal because of the amendments at a later point in the

14   conspiracy.

15        So I submit the government, for the reasons I've

16   advanced in my pleading, is bound by the version of the statute

17   that is most favorable to the defendant and the one that was,

18   in fact, in play when they claim the conspiracy began.

19        MR. CHAKRAVARTY:  Your Honor, I -- very briefly,

00:42 20   before I had a chance to read the defense submission, offered

21   two primary reasons why the government opposes having an

22   instruction based on the older statute; however, in looking

23   through the -- educated by the defense citations, I went back

24   and looked at the statute and the amendments, and it seems to

25   me with respect to two significant points -- the provision of

1    expert advice and assistance and the provision of services --

2    those, I think, are substantive changes to the statute.

3         So that's the -- to amend what I had written here

4    where it was simply to clarify the intent, and to clarify what

5    the other forms of provision of support, in fact, we would

6    agree that there were substantive changes to the services

7    effective December 17, 2004, and expert advice and assistance

8    on October 26th of 2001.

9         However, the government's primary argument remains,

00:43 10   which is, this is a conspiracy charge.  The duration of the

11   conspiracy transcended the amendment date, and that after

12   those -- the dates I just mentioned it is the -- it is the

13   current version of the statute which is applicable, and that

14   should apply for any acts which the conspiracy continued.  So

15   if the jury found just those acts, then even if it weren't in

16   the pre-amendment statute, then the defendant can appropriately

17   be convicted.

18        For purposes of preservation of the record, the

19   government would suggest that at most what -- how the Court

00:43 20   should instruct on those two forms of provision of material

21   support are services -- if the services were provided -- or

22   conspired to provide the services after December 17th, 2004,

23   and for expert advice and assistance, if after October 26,

24   2001.

25        There is one other, arguably, substantive change that

1    I don't think is necessarily applicable to the facts in this

2    case, but the jurisdictional elements of 2339A and -B also

3    changed during that amendment process; they expanded to

4    extraterritorial jurisdiction as opposed to just someone -- the

5    previous version said "someone within the jurisdiction of the

6    United States," which means either physically present or

7    otherwise within the jurisdiction of the United States.

8          The government wouldn't have an objection to, in that

9    same parenthetical, saying the statute was amended and

00:44 10   effective December 17, 2004, if you find that services were

11   provided after that date; and the defendant was within the

12   jurisdiction of the United States, and then list the other

13   forms of material support.

14         The government doesn't concede that you have to do

15   that, but it eliminates the issue for purposes of an appellate

16   record, if there is one.  The --

17         THE COURT:  Well, just with respect to the

18   jurisdiction issue, first of all, I was going to come to that

19   later on but you've raised it.  Do you regard it as an element

00:45 20   of the offense?  It wasn't clear to me from the structure of

21   the statute that it was an element as opposed to a --

22         MR. CHAKRAVARTY:  It's not clear to me either.  I

23   think in an abundance of caution different courts have

24   instructed --

25         THE COURT:  Let's assume that it's an element.  One of

1    the -- I think maybe the first basis is that the -- it involves

2    a United States national --

3              MR. CHAKRAVARTY:  Correct.

4              THE COURT:  -- and then there are other language about

5    acts being committed within the United States and so on.

6              Would it be your intention to rely on extraterritorial

7    jurisdiction under those circumstances?

8              MR. CHAKRAVARTY:  No.  No.

9              THE COURT:  Is there any need to get into that, then?

00:45 10         MR. CHAKRAVARTY:  The government's concern is if it is

11   an element, and the jury is deciding which one of these several

12   forms matters, then we were concerned that they may construe

13   the trip to Yemen, specifically, as being something that

14   occurred outside of the United States.  As long as it's clear

15   that if the defendant is a national, then he has -- the

16   government has jurisdiction.

17             THE COURT:  I think it's unlikely in the extreme that

18   the jury would not be convinced he was a U.S. national or that

19   any acts had been committed in the United States, but they

00:46 20   would have considered the trip to Yemen was enough to do it.

21   That would be very strange.

22             MR. CHAKRAVARTY:  Fair enough.  The government

23   wouldn't have -- we wouldn't have a problem with limiting that.

24             And that raises -- triggers to me another response to

25   this issue of how to deal with amendments to the material

support statutes.  Another option that the Court has is to marry the instructions to the facts as they've come into the case.  I think that would largely eliminate the issue related to expert advice and assistance because that amendment was effective on October 26th of 2001, and the government's theory of the case, while the conspiracy certainly to go to Yemen and to provide support in those -- the forms that were -- kind of epitomized that trip, those were not the forms of expert advice and assistance which relate to the translation and the internet work which didn't occur until well after the statute had been amended.

And then the government's suggestion would be if you narrow the time period of the conspiracy to marry with the evidence as it's come in, then it eliminates what could be a confusing instruction to the jury.

THE COURT:  I'm not sure I know what you mean.

MR. CHAKRAVARTY:  So instead of saying between in or about 2001 through -- until on or about June 2010, that time period can be constrained to something like 2002 to 2010, and then the jury cannot have found that the older version of expert advice and assistance was at play.  I think it might be just easier to either say nothing or, in an abundance of caution, to add a time limitation on when they -- the jury can find that the defendant provided -- or conspired to provide expert advice and assistance.

1          (Pause.)

2          MR. CARNEY:  Your Honor, when I received the

3    government's memorandum last night in opposition to my view of

4    the statute, I checked the cases that were cited.  They stand

5    for the following propositions:  If the defendant -- if a

6    defendant begins a course of conduct in the year 2000, and in

7    the year 2001 that conduct is criminalized by Congress and he

8    continues doing the conduct after 2001, that that does not

9    violate the ex-post-facto clause because the government is

00:50 10   proving its case by the evidence that occurred between 2001

11   when the statute was enacted and through the end of the

12   conspiracy period.  I agree with that proposition, but that's

13   not what we have here.

14          The second category of cases cited by the government

15   were that if the law is changed to make the law more favorable

16   to the defendant, that is not violating the ex-post-facto law;

17   for example, if they amend the law to specifically require

18   knowledge on the part of the defendant, then that's going to

19   help the defendant, not hurt him.  And so that doesn't violate

00:50 20   the ex-post-facto law.

21          At its core what the government is asking you to do is

22   what they should have done.  And I couldn't find a single case

23   where the court tried to pull the government's feet from the

24   fire and say, "Okay.  You should have brought multiple

25   conspiracies here because of the changes in the law.  But you

brought one single conspiracy period and you are bound by the

version of the law that was in existence at the start of that

conspiracy if the changes that occurred after that penalize or

hurt or prejudice the defendant."

As I mentioned in my initial argument, if they had

brought three separate conspiracies to reflect each time the

law changed, then that's what the Court would be properly

charging the jury.  And, in fact, you notice how the analysis

changes in the count where the conspiracy period is from the

spring of 2002 to the end of 2007, if I've got that period

correct.

(Pause.)

MR. CARNEY:  Yes.  In Count 3 the period runs from the

spring of 2002 until February of 2007.  And so the law that's

in place at the beginning of 2002 is the law that guides the

Court's instructions for this conspiracy.

It would be unprecedented, based on my research in the

United States, for the Court to get so involved in this

instruction where you would be telling the jury, "Only consider

these acts that allegedly occurred during these periods for

this aspect of how to commit material support, and then I'm

going to give you a different period of time to consider for a

different aspect of material support."  It's, respectfully, not

the Court's job to do that.

Where a single conspiracy period has been alleged,

1    there's a single law that applies to that period.  And that's

2    the only question, I submit, the Court has to answer:  What is

3    the single law that applies to this period of conspiracy?  And

4    the only way that the Court can comply with the Constitution is

5    if it's the law that applied at the beginning, which is the law

6    most favorable to the defendant during that entire conspiracy

7    period.  Any other tinkering with the period of time that acts

8    occurred allegedly during the conspiracy, or bringing in new

9    parts, new elements of the conspiracy as you're proceeding

00:53 10   along, is not how juries have ever been charged as far as I can

11   see in any case that's ever been brought.

12        The solution that the government had was an easy one:

13   Bring separate conspiracies when the law changed.  Their

14   failure to do that leads the Court bound to giving one law, and

15   it's the law at the beginning of the case.

16        MR. CHAKRAVARTY:  I don't mean to belabor that.  I

17   don't think that's the case.  But just on this issue of

18   bringing, you know, different conspiracy -- the same conspiracy

19   for different time periods, I mean, the defense would probably

00:54 20   have had a very successful duplicitous motion -- duplicity

21   motion if the conspiracy were the same conspiracy to provide

22   material support and it was simply because the definition of

23   the statute had changed by altering the interpretation or

24   adding a specific element.

25        Here it sounds like the defense would be objecting to

1    a narrowing of the time scope of the conspiracy, in which case,

2    then, it would be of no point -- of no -- of routine matter for

3    the Court to instruct that after a certain date that a certain

4    element is relevant to a jury's consideration.  It happens all

5    the time in statute of limitations issues.  It happens all the

6    times in conspiracies that begin or end or somebody joins a

7    conspiracy.

8              The jury is able to figure is the fact that gives me

9    the basis to find a service provided, did that occur after

00:55 10   December 17th, 2004?  And it makes it a little bulkier to

11   describe it, but it's the same element -- it's the same

12   offense, it just describes the effective date of one of the

13   elements.

14             THE COURT:  Yes.  I agree that the amendments can be

15   dealt with by the instructions as suggested by the government.

16             The defense also suggests some particular definitions

17   of "in coordination with," and there's an interesting reference

18   to cases that are cited under the Federal Election Commission.

19   I haven't looked at those cases yet.  I will.  But if you want

00:56 20   to address that issue, I'll hear from you, or if you want to

21   rest on the request, either way.

22             MR. CARNEY:  The reason I cited those is because

23   that's the only body of law that discusses what "in

24   coordination with" means.  And as you'll see when you read

25   those cases, they were trying to focus on independent --

so-called independent groups who were providing support to a

campaign.  We see that a lot in the current election cycle.

Americans For a Stronger America will do a fantastic ad for a

political candidate.  They're unbound by laws that bind the

candidate himself or herself.

And under the current law, it can't be done in

coordination with the candidate's campaign; in other words, if

the campaign says to these various groups, "We'd like you to

run these ads the weekend before the Iowa Primary, and we'd

00:57 like you to do it on billboards and on TV," then that's "in

coordination"; but if it's a group that has no contact with the

candidate directly and is not guided by the candidate -- and,

in fact, it does things sometimes that the candidate would

prefer they not do -- then they're not acting in coordination

with the candidate.

And that body of law's the only time that I saw the

phrase "in coordination with" discussed in any kind of

analytical manner.  So since it's the same Congress that wrote

this law, I presume that they are using that term in the same

00:57 manner in this case; and, in other words, "in coordination"

does not mean "in association with" or "to the benefit of," but

it means a situation where there is direct communication

between two parties, and directly coordinate.

There's no -- no one would ever contend that the four

planes that fell from the sky or went into the buildings on

1    9/11 were not coordinated.  Of course they were.  All of those

2    people were acting in coordination and at the direction and

3    control.  But that's different from someone who is advocating,

4    even vigorously, as *Holder* says, for the same goals.  The

5    coordination has to be tied together.  And I think you'll see

6    examples of that in the campaign regulatory cases.

7         MR. CHAKRAVARTY:  Your Honor, this is a question that

8    the jury should decide.  There's no -- it's not in the statutes

9    "in coordination with."  That's a *Holder*-given term.  It's for

00:59 10   the jury to decide whether something is in coordination with,

11   unlike "direction and control."  Under the provision of

12   personnel it's spelled out in the statute, "This is what we

13   mean by direction and control," and so, consequently, that

14   instruction may be more appropriate.  But "in coordination

15   with" is a matter of argument.

16        Mr. Carney can make the precise argument he just made

17   to the jury to argue that the defendant was not working in

18   coordination with.  And, again, the conspiracy, I should add,

19   was not working in coordination with either a designated

00:59 20   terrorist organization or with terrorists, but it's not for the

21   Court to set artificial bounds on what the jury should be able

22   to consider.

23        The other point about it is it clearly is not a quid

24   pro quo as per the Election Commission.  It's illegal to give

25   money to al Qa'ida; it's not inherently illegal to give money

1    to a political candidate.  It's the corruption aspect which is

2    being punished as the social ill in the election scheme.

3    That's not the motivation or the basis for material support.

4    Congress has made clear that you can't provide support with one

5    of these organizations, and so I think the Court should stay

6    out of that.

7         And as your Honor has indicated before and as we've

8    proposed, I think in the context of the First Amendment

9    instructions, it's up for the jury to decide.  If they find it

01:00 10   was in coordination with, then the defendant can be liable for

11   those type of speech-related activities; and if they don't,

12   then it's independent advocacy, but that fact is for the jury

13   to decide.

14        THE COURT:  Okay.  Well, I will look at it.  I will

15   say that before seeing the argument this morning, my

16   inclination was to give a plain-and-ordinary-meaning

17   instruction to the jury about undefined -- terms that are not

18   specifically defined, as in contrast, "material support" is

19   specifically defined.  But I will reconsider that in light of

01:00 20   the argument and I'll look at the cases you've cited.

21        I guess that sort of leads us to the next -- I know

22   we've had this discussion before, but the request includes

23   several requests for First Amendment-related instructions.

24        MR. CARNEY:  Yes, your Honor.

25        As was done in the Mubayyid case in Worcester, once

1    again, I -- and my Arabic is rusty regarding how to exactly

2    pronounce that name -- but Judge Saylor gave instructions on

3    the First Amendment in that case, and I think they're

4    appropriate to be given in this case.

5         THE COURT:  Well, I think I've made my position clear

6    earlier in the case, and the government sort of cites that in

7    its request, and that is that there is not a -- strictly

8    speaking, a First Amendment issue to be presented, if one could

9    be presented to a jury in those terms.  The question is the

01:02 10   violation of the statute are not -- since the statute itself,

11   by not punishing independent advocacy, accommodates the First

12   Amendment already.  And so to violate the statute one would

13   have to go beyond independent advocacy into the kind of

14   material support that the statute defines, and the *Holder* case

15   says that is not protected.

16        So I don't think there's any need to involve the jury

17   in consideration of the First Amendment.

18        MR. CARNEY:  I object.

19        THE COURT:  Noted.

01:02 20        The defense requests a self-defense instruction.

21        MR. CARNEY:  I think it's a standard instruction in

22   murder cases, and I took the standard instruction in murder

23   cases to apply it here.

24        MR. CHAKRAVARTY:  The government would object to that.

25   This is not a murder case, your Honor.

1          THE COURT:  Right.  I think it's inapt.  Even in a

2     murder case one of the issues in the instruction is immediacy,

3     and there's no -- the circumstances are very different from the

4     common law self-defense theories.

5          MR. CARNEY:  I think if this were going forward as a

6     murder case, the defense of others, which was part of the

7     self-defense instructions, would come into play.  If someone

8     feels that he has to go to a country to defend a country from

9     an invading army, as the United States did to help the Afghans

01:03 10    oppose Russia, I think that is coming to the defense of others.

11    And so if it is proper to come to the defense of others in that

12    situation, then I believe that instruction is applicable.

13         THE COURT:  Okay.  I disagree and will not give a

14    self-defense -- or defense of others, I should say, I think is

15    more apt -- I accept your correction on that -- I will not give

16    that instruction.

17         Now, with respect to Counts 6 and 7, there is

18    a -- those counts plead a potential enhancement of the maximum

19    penalty.  I think that both sides agree that that will require

01:04 20    a jury finding to increase the maximum under *Apprendi*.  The

21    defense, I think, goes a little further and asks for a

22    particular instruction that I understand to be based on an

23    interpretation of the sentencing guidelines, that there must

24    have been an actual obstruction of terrorism investigation.

25         MR. CARNEY:  I believe that's based on how the law has

1    been instructed to juries in other circuits, in particular, the

2    Fourth Circuit.

3           THE COURT:  Again, I haven't had a chance to look at

4    the particular cases, but as I read the request, it was making

5    reference to Guideline Section 3A1.4, which is a guideline

6    enhancement for terrorism.  And from the text -- I will look at

7    the cases, but from the text it appears that the cases were

8    dealing with that enhancement and not the *Apprendi* -- I think

9    the only issue is *Apprendi*, in short, and that is, there is no

01:05  10    question that in order to increase the maximum available

11    sentence the matter has to be decided by the jury.  It's still,

12    of course, the law in this circuit and elsewhere that guideline

13    enhancements can be determined as sentencing factors at the

14    appropriate time.

15           MR. CARNEY:  And I think that enhancement has to show

16    that the false statement was intended to promote a federal

17    crime of terrorism, intended to promote a federal crime of

18    terrorism as opposed to simply being related to a terrorist

19    investigation.  That's the distinction I'm making.

01:06  20           THE COURT:  When you say "that enhancement," you're

21    referring to the statutory --

22           MR. CARNEY:  I'm referring to other statutes that have

23    been interpreted by other judges who have instructed juries, so

24    that it's not that the false statement is simply related to a

25    terrorism investigation; the false statement has to be intended

1    to promote a federal crime of terrorism.

2         MR. CHAKRAVARTY:  The government, obviously, takes a

3    different view of that.  We think that Mr. Carney has correctly

4    asserted the standard under the guidelines but not the standard

5    under the statute which says if the offense -- if the false

6    statement offense involves international or domestic terrorism,

7    not the obstruction.

8         The other point -- I would just point out in the

9    defense-proposed instructions related to the false statement

01:07 10   charges, they ask for an instruction of specific intent, which

11   I think is extraneous and not consistent with First Circuit

12   pattern instructions or any other instruction given in a false

13   statement 1001 case.

14        THE COURT:  You're talking about the substantive

15   offenses of false statements?

16        MR. CHAKRAVARTY:  Correct.  Correct.

17        And I think they also cite to it in the conspiracy.

18   They say in the conspiracy we also have to prove specific

19   intent.  There's obviously the willfulness of the conspiracy --

01:07 20        THE COURT:  You have the dual aspect of intent in any

21   conspiracy, intent to join the conspiracy, intent to accomplish

22   the illegal objective.  The latter could be called "specific

23   intent."

24        MR. CHAKRAVARTY:  Fair enough.  But they go on to say

25   that the statement was made with specific intent as opposed to

1    the purpose of the conspiracy was to the specific intent to

2    meet the objective.  And it may just be taking the -- from the

3    substantive offenses and putting that into the conspiracy, but

4    it's the other disagreement we have.

5              THE COURT:  The statutory enhancement of the maximum

6    potential penalty refers to involving international or domestic

7    terrorism, and then there are some extended definitions, I

8    think, in 1182 of those terms.

9              Do you rely on both or just international?

01:08 10             MR. CHAKRAVARTY:  Just international, your Honor.

11             THE COURT:  Okay.  Those were the items that I had

12    from the defendant.  If there are others you would like to

13    highlight?

14             MR. CARNEY:  Does your Honor have defendant's

15    memorandum concerning the application of the terrorism

16    enhancement to a false statement charge?

17             THE COURT:  I believe so.

18             MR. CARNEY:  I have it as Document 380.

19             THE COURT:  Maybe not.

01:09 20             MR. CARNEY:  I can give you a hard copy --

21             THE COURT:  I can pull it up.

22             MR. CARNEY:  -- given that I have it as Document 380.

23             THE COURT:  I can pull it up.

24             (Pause.)

25             MR. CARNEY:  I have a lobby copy if that would be of

1    assistance.

2              THE COURT:  I have it right here.

3              So, yes, I have it, is the answer to the question.

4              MR. CARNEY:  All right.  I would direct the Court to

5    the language of the Eastern District of Virginia and the two

6    cases cited on page 4 which has the most fulsome discussion of

7    the requirement to instruct in the manner which we're

8    requesting.

9              THE COURT:  Yes.  And I will look at those two cases.

01:10 10   I have not yet, but I will.  And if they change my mind, they

11   will; if they don't, they don't.

12             Okay.

13             MR. CARNEY:  There are a couple of other motions

14   that --

15             THE COURT:  I want to stay with the instructions for a

16   minute.  Anything else?  All of this that I raised I've taken

17   from your requests.  Is there anything else that I haven't

18   touched upon that you think is important to bring up?

19             MR. CARNEY:  On Counts 6 and 7?

01:11 20            THE COURT:  On anything regarding the instructions.

21             MR. CARNEY:  I also submitted a supplemental jury

22   instruction this morning entitled "Defendant's Request for

23   Supplemental Jury Instruction."

24             THE COURT:  I have that now, but I'm looking at it for

25   the first time.

1              Well, I'll take that into account with respect to what

2    I say with respect to independent advocacy.  Looking at it

3    quickly, it appears to be a correct statement.

4              MR. CHAKRAVARTY:  The government -- I'm sorry.

5              MR. CARNEY:  The last two issues I have relate to the

6    motion filed earlier this week to strike coconspirator --

7              THE COURT:  Yeah.  Again, I'm not quite finished with

8    the instructions.  I don't know whether Mr. Chakravarty was

9    rising --

01:12 10              MR. CHAKRAVARTY:  I was just going to -- on that one,

11    the independent advocacy instruction, the government would

12    suggest that this instruction, as written, both -- you know, it

13    describes the evidence in the case as opposed to describing

14    what the law is that the jury should be applying which, I

15    think, given how you were going to instruct on independent

16    advocacy, is going to subsume this.  So we would suggest this

17    is going to be surplus to whatever --

18              THE COURT:  Well, yeah, I typically don't use the

19    formal language suggested by the parties anyway because I put

01:12 20    it in my own terms, so it's unlikely I would say it exactly

21    this way.

22              MR. CHAKRAVARTY:  And the government --

23              THE COURT:  I think the point of it is to dramatize

24    that even provocative advocacy, that is just advocacy, does not

25    violate the statute.

1          MR. CHAKRAVARTY:  Right.  The way this is couched,

2     however, it's an affirmative defense to the statute, and

3     that -- which is not necessarily how the -- the statute reads

4     the government has to prove the coordination with or the other

5     aspects of it.  Here, the way that it is characterized is

6     evidence has been presented to show the opposite and the

7     government has to overcome that burden.  That's the issue.

8          THE COURT:  Okay.  I understand.

9          Now, still staying with the instructions, anything

01:13 10    from the government on its instructions or anything it wants to

11     point out that I haven't --

12          MR. CHAKRAVARTY:  No, I think the main point was the

13     error that we had not looked at the effective date of those

14     amendments, which we've discussed already.

15          I also included the conspiracy outside of the context

16     of each of the specific charges, so that all of the suggested

17     instructions on what a conspiracy is because it permeates so

18     many of the charges, we proposed it in one place.  But

19     obviously, your Honor is free to --

01:13 20          THE COURT:  I'm going to do that.  I'm going to give a

21     general definition of "conspiracy" so I don't have to repeat it

22     four times.

23          MR. CHAKRAVARTY:  The other -- I don't think we need

24     to argue about -- we did propose the no freedom of religion, no

25     freedom of speech except in the context that your Honor has

1    previously described, and also, a factual impossibility is not

2    a defense.

3              THE COURT:  What does that --

4              MR. CHAKRAVARTY:  Specifically with regards to the

5    attempts and conspiracy charges, whether they could have

6    succeeded in providing material support is not at issue here.

7    And we suspect, especially with regards to the Yemen

8    allegations, that that will be a defense.

9              THE COURT:  Okay.  I think that may deal with the

01:15 10   instructions.

11             Now, with respect to the verdict form, everybody's in

12   agreement that Count 6 and 7 need a -- if there's a conviction,

13   then there would have to be a second question; otherwise, I

14   think a general verdict will be sufficient, and that the

15   primary issue -- I think the reason that the defendant

16   suggested a more special verdict would be because of the date

17   issue, but we've already talked about that and I think that can

18   be dealt with as an instruction, and we can then submit a

19   general verdict on those matters.

01:15 20             Now, let's get to the *Petrozziello* issue, I guess.

21             MR. CARNEY:  I actually submitted the special verdict

22   form on another basis, your Honor.

23             THE COURT:  Well, the First Amendment basis?

24             MR. CARNEY:  Well, yes.

25             THE COURT:  In other words, you wanted to isolate what

1    you think is closer to advocacy than something else might be?

2             MR. CARNEY:  Let me put it in a simple manner so I can

3    understand it.  The government is alleging, in essence, that

4    the defendant did two things:  Number one, he provided material

5    support by going to Yemen with the specific intent of going to

6    Iraq and fight U.S. soldiers; the second basis is because he

7    translated documents that were freely available on the

8    internet, that he disseminated videos that were available on

9    the internet, that he advocated for the causes that al Qa'ida

01:16 10   supported, in part.

11             What I worry about is if the jury looks at those two

12   categories of evidence and the jury concludes the government

13   did not prove beyond a reasonable doubt that Mr. Mehanna went

14   to Yemen with that intention, but we do agree that by his

15   internet activities that provided material support and,

16   therefore, they return a verdict of guilty, an appellate court,

17   including the U.S. Supreme Court, which has identified this

18   area as a problematic area that *Holder* has not yet reached --

19   the U.S. Supreme Court would not be able to have an opportunity

01:17 20   to say that based on this record this constituted -- the

21   translating and disseminating and advocacy could be material

22   support because if the first ground were the ground found, then

23   there would be no issue because I concede the first ground.  If

24   Mr. Mehanna went to Yemen to get military training in order to

25   go to Iraq to fight U.S. soldiers, then he is guilty of

1    conspiracy or attempt to provide material support.

2         But if he's not guilty of that, we've got to know that

3    the jury found him guilty on the second basis or he has no

4    relief.  And it comes down to strictly a due process right.  If

5    there are two possible ways that a crime can be committed

6    according to the government and according to your instructions,

7    and an appellate court decides one of those two ways was not

8    possible because it was protected by the United States

9    Constitution, then if that's the only basis that the jury finds

01:18 10   the defendant guilty, it violates due process.  It's a

11   miscarriage of justice.  It's a man who's been convicted for

12   something that was constitutionally protected.

13        And the only way we're going to know that is if the

14   Court asks the jury to just distinguish between the two

15   theories that the government is basing it upon.  The jury can

16   come back finding him guilty on both.  The jury can come back

17   finding him guilty only of the Yemen trip, to use shorthand.

18   In that case, there's really no appellate issue.  But if the

19   jury comes back and says it's based solely on the evidence that

01:19 20   we contend is protected by the Constitution, and the U.S.

21   Supreme Court agrees with that, then the Court is in the

22   position -- the U.S. Supreme Court -- to provide a remedy, that

23   is to say, that that evidence was insufficient to justify this

24   conviction.

25        The only way we're going to know that is if the jury

1    is asked, "Which theory did you accept as proven beyond a

2    reasonable doubt?"  To do otherwise would be to deny the

3    defendant, I suggest, the most fundamental due process right

4    he's got in the United States, which is to not be convicted

5    based on evidence that the U.S. Constitution says was okay for

6    him to say and do and think.

7         And that's why the special verdict like this is

8    critical to this case if he's going to have due process and

9    meaningful appellate review.  To do otherwise, I respectfully

01:20 10   submit, the Court is making it so he doesn't ever have an

11   opportunity to have this issue reviewed by a higher court.  And

12   I don't think that's fair.

13        I think if the Court believes, as it does, that the

14   government can prevail on either theory, then the Court should

15   show the courage of its decision, have the jury indicate which

16   of the two theories it finds as a basis for guilt, and then let

17   your Honor's ruling be seen by the First Circuit.  And if they

18   show interest, the U.S. Supreme Court.

19        MR. CHAKRAVARTY:  Your Honor, there are no -- there's

01:21 20   a myriad of theories of liability under which the defendant can

21   be convicted of the material support statute.  It's not simply

22   the binary proposition, as I suggested earlier, of First

23   Amendment-protected activities or what otherwise would be First

24   Amendment-protected activity, as the defense argues, versus the

25   trip to Yemen.  That's shorthand, which is easier for a jury to

1    kind of understand in a way that we may argue, but that's

2    not -- as we pointed out just with the Daniel Maldonado example

3    and the Ahmad Abousamra example, to lay out every possible

4    theory of liability would not only go on for pages, but that's

5    simply not required under federal criminal law.

6         What's required is that the elements of the offense

7    are explained to the jury, that they understand the ideas of

8    vicarious liability, of aiding and abetting, of *Pinkerton,* of

9    the other forms of liability.  And then they make a decision,

01:22 10   as they do in every other case, as to whether the defendant has

11   met the elements of that offense.

12        The government recognizes that this does not allow the

13   defense to make the argument that says he was only convicted on

14   these -- internet conduct or these other things he did with

15   Tibyan Publications and the GUH and "39 Ways."  But, quite

16   frankly, that's a factual issue which the jury is going to be

17   deciding based on the instruction that you're giving them which

18   clearly delineates what they're allowed to consider and what

19   they're not allowed to consider and makes clear that

01:22 20   independent advocacy is not a basis of liability under -- if

21   that's what the defendant was doing.

22        With that instruction, an appellate court would be

23   assured that the correct law was being applied to the facts in

24   this case.  And that's what the Supreme Court or the First

25   Circuit or any other reviewing court would be looking at, not

1   whether the facts given -- what the shorthand that appears on a

2   verdict slip, whether those specific facts are sufficient to

3   merit liability.

4        So that's not the type of preservation of a

5   defendant's appellate rights which have ever been countenanced,

6   at least in my familiarity in federal criminal -- the charges

7   here are conspiracy to provide material support, attempt to

8   provide material support, or provision for material support,

9   and that's what should ultimately go up for review.  And the

01:23 10   fact that there are multiple theories and multiple acts that

11   the defendant himself committed, and others within the

12   conspiracy's committed, that's something to argue, and the

13   record will speak for itself on appeal.

14        MR. CARNEY:  If I may respond?

15        THE COURT:  Go ahead.

16        MR. CARNEY:  I'm sensitive to the government's

17   concerns on that, so let me propose a different way for this

18   verdict to read so as to make the question unmistakably clear.

19   The jury would be asked, "If you find the defendant guilty,

01:24 20   please indicate, A, was it solely based on evidence" -- and

21   then I would repeat what's in here as B, "was it solely based

22   on evidence which consisted of translating videos and/or texts,

23   disseminating videos and/or texts to other people, advocating

24   to other people certain views?"  The alternative would be "or

25   did you find it based on other evidence in" -- "based on other

1    evidence in the case?"

2          That way it would encompass every other theory that

3    the government wants to put forward, but it would identify what

4    is the constitutional issue here:  Did you base it solely on

5    the internet stuff?  If they say no, then the government should

6    have no problem because a guilty verdict would be based solely

7    on all the rest of the evidence.  But if they say, "Yes, we

8    based our verdict solely on what Mr. Chakravarty calls the

9    internet evidence," then that would give the issue right there.

01:25 10         And so they don't have to be given any theory; they

11   don't have to be given any evidence.  It's either that

12   evidence; alternatively, any other evidence found in the case.

13   And I think that's what would protect the defendant's rights

14   and also address exactly the issue the government raised.

15         THE COURT:  Well, I don't think so, because using the

16   language you suggested, it seems to me that there could be

17   translating videos and other texts, et cetera, that consists of

18   independent advocacy, and translating videos or other texts

19   that constitutes material support, depending on how the jurors

01:26 20   assess things.  So breaking it out by that categorization

21   doesn't answer the question, or even isolate the question.

22         MR. CARNEY:  Well, it does if an appellate court says

23   all of the translating was independent advocacy, all of the

24   disseminating videos was independent advocacy, all of the

25   expressing the views were independent advocacy.  I mean, our

1    point is we're all in on that.  We're saying:  Every single bit

2    of internet independent advocacy was protected by the First

3    Amendment to the Constitution.  All of it.  And the only way to

4    test that is if the jury says, "We find solely on that evidence

5    that the defendant provided material support."  Then the issue

6    goes up to an appellate court and an appellate court could say,

7    "Well, we find that some of that advocacy does, in fact,

8    qualify for material support."  But if the appellate court

9    says, "No, we say all of that advocacy was protected by the

01:27 10   First Amendment," then the miscarriage of justice is avoided.

11   So I respectfully disagree.

12       I mean, we're all in.  We're saying every bit of

13   independent -- every bit of internet work -- every translation,

14   every video, every chat, every email, every statement to his

15   friends that is advocating for these views -- is protected by

16   the Constitution.  If the jury relies solely on that evidence

17   to convict, then the First Circuit and the U.S. Supreme Court

18   can decide whether the evidence presented at this trial would

19   have supported -- or does support -- material support of

01:28 20   terrorists.  And if that court says no, it does not --

21       And what's notable in *Holder* is when the Court uses

22   very strong language to say, "This is not to say" -- and I'm

23   reading from page 2730.  "All this is not to say that any

24   future applications of the material support statute to speech

25   or advocacy will survive First Amendment scrutiny.  It's not to

1    say that any other statute related to speech and First

2    Amendment would satisfy the First Amendment.  In particular, we

3    in no way suggest that a regulation of independent speech would

4    pass constitutional muster even if the Congress were to show

5    that such speech benefits foreign terrorist organizations.  We

6    also do not suggest that Congress could extend the same

7    prohibition on material support at issue here to domestic

8    organizations.  We simply hold that in prohibiting the

9    particular forms of support, that the plaintiffs in this case

01:29 10    seek to provide to foreign terrorist groups, that those forms

11    of support do not violate the First Amendment."

12          The U.S. Supreme Court could not be more clear in

13    suggesting that future cases will present more difficult

14    issues.  For them to have an opportunity to rule on that issue,

15    it has to know that that was the sole basis that the jury found

16    the defendant guilty of material support.

17          And so if your Honor took, on the verdict slip, that

18    language that I use and asked the jury, "Is that the sole basis

19    for your verdict," and the alternative is -- and if they have

01:30 20    found the defendant guilty and they check that box "no," then

21    that's the end of the discussion, because then the whole

22    evidence in the entire trial that did constitute material

23    support was relied upon by the jury.  But if they check it

24    "yes," then now we know.  Now we know that's what they relied

25    upon, and that will allow the U.S. Supreme Court to have the

1    case that it's basically asking for, or suggesting is going to

2    come before it in *Holder*.

3         MR. CHAKRAVARTY:  Your Honor, just to remind the Court

4    that special verdicts are disfavored in this circuit and they

5    are -- and I'm citing to -- I guess the *Spock* case back in 1969

6    was the seminal case, and I'm looking at an unpublished opinion

7    *U.S. v. Iniro-Castro*, which articulates that, as your Honor

8    suggested, in an *Apprendi*-type circumstance where there's an

9    impact on sentencing in some way by a particular fact that can

01:31 10   be determined by the jury, then it may be appropriate, but even

11   in that case it's -- those are rare.

12        But regardless of the defense characterization of what

13   those other activities are that might be scrutinized by an

14   appellate court, there simply cannot be a precision that is

15   necessary in order to couch that decision.  So even

16   arguing -- even understanding and appreciating the reasons for

17   the defense argument, we can never be precise enough to say

18   that a text message or a chat or a post was evidence of pure

19   advocacy as opposed to, as is the case here, evidence of the

01:31 20   defendant's intent or the contours of the conspiracy or the

21   fact that he had went to Yemen or the fact he wanted to kill

22   U.S. soldiers, all of which are not necessarily germane to the

23   defendant's activities in translation and providing expert

24   advice and assistance and services to these organizations.

25        So we could sit here all day and try to couch an

1    appropriate phrase that would meet the -- what would -- how

2    the -- the issue how they would want to tee it up for the

3    appellate court.  And we're not going to be successful because

4    there will always be overlap.  And the reason for that is

5    because it's conspiracy to provide material support; it's not

6    conspiracy to advocate for, it's not conspiracy to use

7    speech-related activities in order to violate the statute.  And

8    consequently, there's just no way to disjoin that.

9         And so while it does limit some of their arguments on

01:32 10  appeal, which I would argue is also a reason not to give such

11   an instruction because there's a finality of a verdict, which

12   is appropriate, it's simply undoable the way that they want to

13   do it.  And using shorthand for something that the jury might

14   understand throws the baby out with the bath water.  It

15   disregards those very careful instructions that you're going to

16   give them with regards to each of the elements of the offense.

17        THE COURT:  Okay.  I will give it --

18        MR. CARNEY:  I must rise and say I'm offended that the

19   United States Government argues to this Court don't give a fair

01:33 20  instruction to the defendant because that way the conviction

21   might be overturned if the U.S. Supreme Court says that the

22   evidence used to convict the man was protected 100 percent by

23   the Constitution.

24        As a United States citizen I am offended by my

25   government that you would take that position.  This man is

 1    entitled to the protection of the United States Constitution

 2    and he should have it.

 3              And if this Court decides, as it has on its rulings,

 4    that you've made correct rulings, I just suggest have the

 5    courage to put -- to allow those rulings to be reviewed by the

 6    U.S. Supreme Court.  We've all been wrong sometime.

 7              MR. CHAKRAVARTY:  Those rights are being protected

 8    here.  And clearly, speech being used in the commission of a

 9    crime is not protected.  And it's that concern that the

01:34 10  government has in -- the reason for opposing it, not as counsel

 11   suggests, to avoid the defendant having a right to appeal.  If

 12   there was a way to preserve his right to appeal and to

 13   faithfully discharge the obligation to instruct the jury on

 14   what they're obligated to find, this would be a very different

 15   conversation.  It is just not possible here, and it's

 16   never -- there's no precedent for it.  And, in fact, it's been

 17   disfavored precisely for that reason of confusion.  And

 18   frankly, it would be prejudicial to the government if all of a

 19   sudden we're not breaking out that if something was

01:34 20  purely -- the verdict form itself would become a vehicle for

 21   argument and that's -- even in a special verdict case that's

 22   not what a verdict form should be.

 23              THE COURT:  All right.  I'll give counsel's arguments

 24   further consideration, but I think it's likely that there will

 25   be a general verdict.

1          Now, I think, the *Petrozziello* motion.

2          MR. CARNEY:  Yes, your Honor.  I move that the

3    evidence of, in particular, unindicted coconspirators be

4    stricken from the case.  As you know, the *Petrozziello* motion

5    is made at the close of all of the evidence in the case.  I

6    submit that the government has not shown that Osama bin Laden

7    was a coconspirator with Tarek Mehanna, or that Mr. Zarqawi has

8    been a coconspirator with the defendant, or these other people

9    in the world, whether they're in Somalia or Yemen or

01:35 10    Afghanistan or Iraq or wherever they might be, they were not

11    part of this conspiracy with this man.  There may have been

12    other conspiracies that they were involved in, but not this

13    conspiracy.

14          There is not a single global conspiracy by everyone

15    who happens to agree with these particular thoughts.  And

16    without that evidence, that they were directly involved in this

17    conspiracy, their testimony cannot be admitted as an exception

18    to the hearsay rule.

19          THE COURT:  Well, I guess that's the question I have,

01:36 20    is what evidence was admitted as an exception to the hearsay

21    rule from those people?  They're on tapes, but I don't

22    think -- I don't think the issue was raised, frankly, when

23    statements by Zarqawi or Zawahiri or whoever --

24          MR. CARNEY:  I raised it.  I said they're not part of

25    the conspiracy.

        1            THE COURT:  No.  No.  But when the statements on tape

        2    were being played, that they were offered for truth, they

        3    were -- largely exhortations.  I mean, it's not --

        4            MR. CARNEY:  They were offered for the truth.  There

        5    was no limitation put on those statements.  Statements of

        6    coconspirators in a conspiracy are admitted substantively for

        7    the truth.

        8            THE COURT:  I don't think those -- well, I don't know.

        9            MR. CARNEY:  This is why I argued *De Los Santos*, the

01:37  10    First Circuit case from this August.

       11            THE COURT:  The objection to the -- we admitted

       12    volumes of chats, and so on, exhibits, subject to striking, but

       13    that was --

       14            MR. CARNEY:  Those are different.

       15            THE COURT:  -- all 403 related.

       16            I don't remember any -- I mean, normally there's been

       17    some *Petrozziello* foreshadowing when the evidence has been

       18    offered, and I don't remember any in this case.

       19            MR. CARNEY:  Your Honor, I filed a motion in limine to

01:37  20    exclude the evidence.  And on the oral argument, it focused on

       21    the *De Los Santos* case from August.  You might recall that that

       22    was a case where a defendant was charged with a drug

       23    conspiracy.  The evidence showed that there were two drug

       24    conspiracies:  One of them involved marijuana, and then a

       25    separate conspiracy involved marijuana and cocaine.  Because

1    the defendant was only involved in one conspiracy, it was

2    prejudicial error for evidence related to the other conspiracy

3    to be admitted at his trial.

4         What I argued in support of the motion in limine,

5    including in the memorandum that came with it, is that

6    Osama bin Laden might be involved in a different conspiracy,

7    the cleric in Yemen might be involved in a different

8    conspiracy, these other folks in the United Kingdom might be

9    involved in a different conspiracy, but they were not involved

01:38 10   in the conspiracy with Mr. Mehanna.

11         I concede that based on the government's evidence at

12   trial Abousamra, Aboubakr, Abuzahra, Pippin, Masood,

13   Spaulding -- they were all involved by the government's

14   evidence in this conspiracy; and, therefore, their statements

15   were admitted substantively under the exception to the

16   coconspirator rule.  Sometimes statements that the defendant

17   made or received from people in chats or on emails or in web

18   forums, they were admitted to show the defendant's state of

19   mind.  But these -- this other category of statements where the

01:39 20   defendant never had any contact with Osama bin Laden in his

21   life, that statement should not have come in as a coconspirator

22   statement because under *De Los Santos* it's a different

23   conspiracy.

24         So now we're at the end of the trial and I'm

25   identifying all of those statements by other people as not

1    having been part of the Mehanna-alleged conspiracy, therefore,

2    should be stricken.

3            THE COURT:  Well, you're arguing about who was in the

4    conspiracy.  I'm focusing on something else, which is what

5    statements are you talking about that were offered for the

6    truth by someone who might or might not be part of the

7    conspiracy?  And I don't think that statements that we've seen

8    from media of various kind of bin Laden and Zarqawi and

9    Zawahiri were offered for the truth; they were offered for an

01:40 10   example of things that were -- films that were used.  I don't

11   know.

12           But at any rate, I don't remember any discussion about

13   whether the tape should be edited because it was being offered

14   as a coconspirator statement.  I don't know.  Maybe I missed

15   something.  It would seem to me that we did give some limiting

16   instructions about various things, and the most I think that

17   would be appropriate here would be an instruction to the jury

18   clarifying that statements that Zarqawi made on a tape were not

19   offered as truth statements for proving things, but --

01:41 20           MR. CHAKRAVARTY:  The government also doesn't recall

21   that -- an objection to any of the statements of at least those

22   three leaders of al Qa'ida, that they were being objected to

23   because they were hearsay.  The government understands the

24   defense argument and we would, I guess, respond in a couple of

25   ways:  One, as *Petrozziello* -- as *De Los Santos* and other cases

1    have laid out, a coconspirator statement doesn't need to be,

2    and the government's not suggesting that -- that they're being

3    offered as coconspirator statements, as your Honor points out.

4    But to the extent there was no cautionary instruction given

5    when they came in and they can be considered by the jury for

6    all purposes, that still does not offend the hearsay exception

7    because they are, the government argues, members of a

8    conspiracy in which the defendant belonged, even if it wasn't

9    the charged conspiracy.

01:42 10         The conspiracy, as each of those individuals called

11   for individuals to come join al Qa'ida or come to join and

12   support the cause, and the defendant then -- I think the

13   evidence has certainly gotten over that threshold, and the

14   government would argue beyond a reasonable doubt that he tried

15   to respond to that call -- suggests that even people who never

16   met each other, they don't even know exist in the world, can be

17   part of the same conspiracy, and he's responding to that

18   conspiracy, he's citing to statements he said in trying to

19   persuade others, suggests that even if these were being offered

01:42 20   for the truth of their statements, then they are legitimately

21   in evidence.  They are legitimate to go the jury, and unlike

22   the motion in limine that the defense raised where they're

23   contesting the admissibility for substantive purposes of

24   specific coconspirators, here there was no objection to the

25   statements as they came in.

1      If your Honor, in order to alleviate the issue, is

2   considering giving a curative instruction, then the government

3   would agree that that would be any remedy and it should be read

4   at large, not specific to an individual, I guess,

5   coconspirator.  Well, I guess it would be hard to parse which

6   ones because the jury -- the Court, I assume, is not going to

7   spell out who every coconspirator was in the conspiracy.

8           THE COURT:  That's for the jury to decide.

9           MR. CHAKRAVARTY:  Right.  So if that's the case, it

01:43 10   makes no sense to give a curative instruction saying that, "By

11   the way, these three leaders of al Qa'ida, you shouldn't accept

12   what they're saying for the truth of the matter.  You should

13   only consider it for the evidentiary value."

14           THE COURT:  I guess my point -- I don't understand

15   anybody arguing that those statements should be accepted as

16   true -- as truth statements.

17           MR. CARNEY:  The government just did.  They said the

18   most helpful thing I could have had.

19           THE COURT:  Well, they said even if they are offered

01:43 20   for it.  But, again, I think they are -- but everybody's on the

21   wrong focus.  I just don't see these as substantive evidence

22   for the content of what was asserted, that's -- at least for

23   the leaders.

24           Now, there may be some others in this list -- I'm

25   looking at the footnote in your motion.  I don't know about

1   Ahmad Rashad, for example, and whether there's anything in any

2   of those --

3            MR. CHAKRAVARTY:  Your Honor, they are --

4            THE COURT:  -- chats.

5            MR. CHAKRAVARTY:  Going to those -- and just to not --

6   before I go to those, just before I leave the -- my

7   understanding is the only substantive use of the leaders of al

8   Qa'ida statement was by the defense when they said that by

9   listening to those statements this is how I know what al Qa'ida

01:44 10  was asking for.  So it was actually the defendant was using it

11  for a hearsay purpose, the 1998 fatwaa.

12           MR. CARNEY:  That's baloney.

13           THE COURT:  But even so, that's not offered for its

14  truth; it's offered for an impression that it created in

15  someone else.

16           MR. CARNEY:  Your Honor, I'd suggest that you revisit

17  the motion in limine to exclude this evidence on the basis that

18  these speakers were not part of the conspiracy the defendant

19  was involved in; therefore, it is not admissible under the

01:45 20  coconspirator exception to the hearsay rule as substantive

21  evidence.  Your Honor heard argument and denied it.  The

22  government then gets up and starts pouring that stuff in.

23           Your Honor made a definitive ruling, I honored it, and

24  now is the time I move to strike it.  The government just

25  argued that they believe the statements of Osama bin Laden are

1    admitted substantively against the defendant and it's not

2    necessary that the defendant ever have met Osama bin Laden;

3    they can still be present in this conspiracy.

4          Thank you, because that encapsulates my point exactly.

5    And once your Honor denied the motion in limine, it all came in

6    without limitation, because my understanding was your ruling

7    said it comes in for its truth.  All right.  Then here it

8    comes, and at the appropriate time --

9          THE COURT:  I think there are different classes of

01:46 10   people that may be different.  To the extent somebody says on a

11   video, "The United States is a menace," it's not offered to

12   prove that the United States is a menace but that he made the

13   statement, that it had an impression on someone else who might

14   have been influenced by it in some way.  But it's an event

15   rather than a truth statement.

16         There might be others in this list, like

17   correspondence and chats, who say things in which there's much

18   greater basis for finding a coconspiratorial relationship.  So

19   I don't think we can deal with it en masse like this.

01:46 20         MR. CHAKRAVARTY:  Your Honor, to help simplify -- or

21   at least narrow -- I don't believe there's been testimony

22   related to Abu Muhammad al-Maqdisi.  His name may have been

23   mentioned, but his role as a coconspirator I think is -- he's

24   not.  Muhammad Abid Khan, same situation; Sohail Qureshi, same

25   situation; Syed Haris Ahmed, same situation; and Samir Khan.

1        The government would agree that those -- first of all,

2    I don't think their statements have been introduced, maybe at

3    all, and certainly not for the truth of the matter.  The --

4        THE COURT:  I think the only body of statements of

5    coconspirators that may have been offered for the truth are

6    contained within chats or postings.

7        MR. CHAKRAVARTY:  Postings.  And the government points

8    to Mughal, Tsouli, Saleh al-Bualy, Tariq al-Dour, Ahmad Rashad,

9    Siddiqui and Omar Hamammi, each of whom communicated with the

01:47 10   defendant.

11        Did Mughal?  Mughal, I believe, communicated with

12   Tsouli as part -- the government alleges as part of the

13   conspiracy.

14        MR. CARNEY:  Websites of these individuals were shown

15   to the jury.  Chats between those individuals, not with

16   Mr. Mehanna, but among themselves, were admitted to the jury.

17   And respectfully, it's a hallmark rule of evidence that if a

18   motion in limine is brought saying this evidence is

19   inadmissible substantively and the motion in limine is denied

01:48 20   and the evidence comes in without any limitation at the time,

21   that horse is not only out of the barn, but it's beyond the 40

22   acres to try to give a limiting instruction now.  That's why I

23   tried to identify this *De Los Santos* issue before the

24   government even opened.

25        THE COURT:  Well, to the extent the issue rises with

1    respect to Mughal, Tsouli, Tariq al-Dour, Rashad, Hamammi, at

2    any rate, and some of these I guess I don't know the screen

3    names for --

4        MR. CHAKRAVARTY:  Saleh al-Bualy is Abu Mundhir and

5    Ensahnal Siddiqui is Abu Khubayb al-Muwahhid, is the one who

6    sent him the --

7        THE COURT:  Then he would be one.  As to those I would

8    make the necessary *Petrozziello* finding that they were

9    coconspirators.  There's a sufficient showing by the

01:49 10    government -- it's up to the jury to decide it, but there's a

11    sufficient showing to admit the statements under the rule of

12    evidence.

13        As to the others, I'm not sure there were statements

14    offered.  I'm not -- I don't think any were offered for their

15    truth.  And so to those that I have not just listed with

16    Mr. Chakravarty's assistance, I would say *Petrozziello* findings

17    are not necessary.

18        MR. CARNEY:  Perhaps I missed it.  What was the

19    limitation put on the Osama bin Laden call to come help us?

01:50 20        THE COURT:  It's not a truth assertion.  It's not

21    offered for its truth but as an event.

22        MR. CARNEY:  It's offered for its truth that

23    Osama bin Laden believes it and the defendant responded to it.

24        THE COURT:  But that's not a statement.  That's not a

25    hearsay statement; it's an inference from the evidence.  So I

1    don't think *Petrozziello* applies to those matters in evidence.

2            Okay.  What other issues?  Nothing today?

3            MR. CARNEY:  No, your Honor.

4            THE COURT:  Time?

5            MR. CHAKRAVARTY:  I'm sorry, just to clarify -- and we

6    can deal with this a little bit, hopefully, this afternoon

7    between the parties, just to make sure that the exhibits, as

8    they're going to go back -- the government has prepared hard

9    copies of the exhibits as they appear on our projector, on our

01:50  10   computer.  We've printed those out to replace the earlier

11   version that we had generated to reflect redactions and other

12   kind of changes.

13           THE COURT:  This includes exhibits from both sides?

14           MR. CHAKRAVARTY:  It does not because we don't have

15   access to their final versions.

16           THE COURT:  Well, I do -- as you know, we're using

17   this new system which will give them all the documents and

18   other exhibits in digital form and they will have that in their

19   drive.  Documentary evidence and anything else that is suitable

01:51  20   for it should be also provided in paper for their convenience.

21   It's going to be easier to flip through, I suspect, paper if

22   they want to look at chats, than to try to find them on the

23   screen, but that's up to them.  But I want to give them the

24   resource.

25           So from the defense's side can we have whatever paper

1    exhibits are suitable for that available tomorrow as well?

2            MR. CARNEY:  Yes, we can, your Honor.

3            THE COURT:  And you'll both crosscheck each other to

4    make sure you're on the same page, so to speak?

5            MR. CARNEY:  Yes, your Honor.

6            THE COURT:  Now, I understood from something the

7    government submitted, I guess, that you are providing -- you're

8    trying to -- seeking to provide an index that was slightly more

9    informative than the jurors' index?

01:52 10          MR. CHAKRAVARTY:  And slightly more -- this is a

11   version of what we had filed with the Court pretrial.  It lists

12   the exhibit number and the description of what the exhibit is,

13   but it adds a source of the evidence, essentially, which is

14   categorically.  So the results of the search of the defendant's

15   room back in 2006 are listed as "covert search"; the materials

16   on his computer are listed en masse.  And I suggest it could be

17   helpful because if the jury's looking for something, the

18   jurors' list doesn't provide them much resource and it's

19   30-some-odd pages long or longer, as opposed to if they say

01:52 20   there was a video or a chat, they'll know, well, it's in this

21   range, and then they can go to the JERS system.

22           THE COURT:  Well, I won't object if the parties can

23   agree on it, but in the absence of agreement, I think we will

24   go with what we have.

25           MS. BASSIL:  I do.

1          THE COURT:  Just on that, the jurors were taking

2     notes, and so if they think they want to see Exhibit 249

3     because it says something in their notes, I think that will be

4     enough guide for them.

5          MS. BASSIL:  That's our position, your Honor.

6          THE COURT:  All right.  And we talked briefly about

7     timing yesterday.  I think we said 75 minutes?

8          MR. CARNEY:  Yes, your Honor.

9          THE COURT:  Who will be doing the arguing?

01:53 10         MR. AUERHAHN:  I will do the closing and

11    Mr. Chakravarty will do the rebuttal.

12         MR. CARNEY:  Attorney Bassil will begin and I will

13    conclude.

14         THE COURT:  Oh, that's right.  We talked about --

15         MS. BASSIL:  Right.  And we'll do the full -- well, I

16    don't know if we'll do the full 75 minutes.  I'll be shorter

17    than he will be.

18         THE COURT:  Who will be shorter?

19         MS. BASSIL:  I will be shorter.

01:53 20         THE COURT:  You're the one who will encroach on his

21    time, then, is that it?

22         MS. BASSIL:  I won't.

23         THE COURT:  Okay.

24         MR. CHAKRAVARTY:  Your Honor, in terms of the

25    instructions going back to the jury -- and I suppose, you know,

1    it's too early to predict what the jury's questions might be

2    along the way, but the government would be of the position that

3    the instructions should go back to the jury only if they ask

4    for it; and similarly, we would favor if they ask for

5    transcripts or things that they have seen as aids in court,

6    telephone calls and stuff, if they ask for it we should provide

7    it, or the transcript of the testimony.

8              THE COURT:  Well, okay.  I think it's an unrealistic

9    dispute because I think it would be inevitable that they would

01:54 10   ask for it in this case in my experience with juries.  So I

11   will, as soon as it's been produced and certified by the

12   reporter, the transcript of my actual words I think it's

13   appropriate to send back to them.  And as I say, it will be a

14   difference of a half an hour between when they get it, if we

15   voluntarily get it or if they ask for it, so...

16             Okay.  We'll be in recess.  We'll see you at nine

17   tomorrow.

18             THE CLERK:  All rise for the Court.  The Court will be

19   in recess.

01:55 20           (The Court exited the courtroom and the proceedings

21   adjourned at 12:52 p.m.)

22

23

24

25

1       C E R T I F I C A T E

2

3           I, Marcia G. Patrisso, RMR, CRR, Official Reporter of

4   the United States District Court, do hereby certify that the

5   foregoing transcript constitutes, to the best of my skill and

6   ability, a true and accurate transcription of my stenotype

7   notes taken in the matter of Criminal Action No.

8   09-10017-GAO-1, United States of America v. Tarek Mehanna.

9

10  /s/ Marcia G. Patrisso
    MARCIA G. PATRISSO, RMR, CRR
11  Official Court Reporter

12
    Date:  December 15, 2011
13

14

15

16

17

18

19

20

21

22

23

24

25