Center on Law and Security, New York University School of Law



# Terrorist Trial Report Card:

## September 11, 2001-September 11, 2011

# Acknowledgments

**Editor-in-Chief**

Karen J. Greenberg

**Director of Research**

Susan Quatrone

**Research**

Collin Beck, Chantene Berger, Gary Berkson, Kate Berry, Brian Chelcun, Matthew Delja, Michael Eggenberger, Paul Kleist, Jordan Kohl, Elisa Mascellani, Paris Nicholls, Gabriella Ripoll, Jackie Saffir, Dominic Saglibene, Samantha Schott, Lisa Sweat, Kate Whipple, Gregory Wilbur, Christine Yurechko

The Center on Law and Security
New York University School of Law
Wilf Hall, 139 MacDougal Street, 4th floor
New York, NY  10012

212-992-8854

CLS@exchange.law.nyu.edu

# Terrorist Trial Report Card:

September 11, 2001 – September 11, 2011

Copyright © 2011 by the Center on Law and Security

## Executive Director's Introduction

## The Ten-Year Record: Terrorism and the U.S. Courts

Ten years after Al Qaeda's attack on the United States on September 11, 2001, the federal government's record on terrorism prosecutions is relatively easy to summarize: a heavy reliance on preventive law enforcement, an increasingly aggressive use of material support statutes, and a high conviction rate.  Strikingly, during the first two years of Barack Obama's presidency, the annual number of prosecutions for jihadist-related terrorism doubled.  The nature of the threat has assumed relatively clear contours, as completed or intended terrorist acts aimed against domestic U.S. targets fall into stable and recognizable patterns.  The terrorism challenge facing U.S. law enforcement reflects a mixture of domestic and internationally-inspired threats, including a small but not insignificant number of serious terrorist plots.

The strategy of prosecuting terrorism-related crimes has evolved in important ways over the course of the decade. Increasingly, the Department of Justice has focused on cases with high level charges, rather than expending scarce resources on document fraud and other low-level crimes that had absorbed an inordinate amount of prosecutorial attention during the early years of the war on terror.  Approximately 300 prosecutions, from 2001 to 2011, resulted in indictments related to jihadist terror or national security charges.  Of the several hundred resolved cases in this category, 87% resulted in convictions, roughly the same conviction rate that we find for all federal criminal indictments. The indictments remained relatively steady from 2003-2007, during the Bush years, with an average of 27 per year.  During 2009 and 2010, as mentioned, the numbers of indictments per year nearly doubled. So, too, the proportion of serious charges increased appreciably.  In 2009 and 2010 (and thus far in 2011), a significant majority of charges brought against defendants for jihadist-related offenses were for national

security or terrorism crimes, which include conspiracy to commit terrorism, weapons of mass destruction (WMD) possession and training, and providing material support to terrorist groups.

**How can we explain these sudden increases?**

The following Report suggests that three factors account for the recent spike in indictments and in the severity of charges.

- ❖ A handful of serious threats to national security in the name of Al Qaeda or affiliated groups**.**
- ❖ An escalation in FBI sting operations**.**
- ❖ An increased resort to material support charges and their use against those associated with Al Shabab**.**

The most prominent and highly publicized instances of terrorism after 9/11 have occurred or been thwarted since President Obama took office**.** Although the number of indictments and prosecutions against Al Qaeda and its network – e.g., AQAP (Al Qaeda in the Arabian Peninsula) and AQIM (Al Qaeda in the Islamic Maghreb) – has fallen off in recent years, the most serious post 9-11 U.S. related terror threats have occurred since 2009.  These cases include Faisal Shahzad, the Times Square Bomber;  Najibullah Zazi, who intended to plant explosives in the New York City subway system;  Umar Farouk Abdulmutallab, the Christmas Day bomber who attempted to blow up a plane over Detroit;  David Coleman Headley, an American born operative with Lashkar-e-Taiba who conspired in the 2008 Mumbai attack and was arrested after also plotting an attack against a Danish newspaper;  Major Nidal Hasan, the Fort Hood shooter who killed 13 soldiers;  and Carlos Bledsoe, a Muslim convert who wounded one soldier and killed another at an army recruiting station.   Four of these six defendants had ties to terror groups operating in Pakistan; two were trained in Yemen.  Three of the six had some connection to the U.S. born Al Qaeda operative, Anwar-al-Awlaki.  All had received weapons training, identified with jihadist ideology, intended to commit violence and had a connection to America.

The rise in indictments over the past two or three years is significantly affected by FBI informant operations.  Since 2009, nearly 50% of terrorism cases have involved informants (see chart #29).  At least 15% of those informant cases can be considered sting operations.  Since the early years of America's war on terror, the FBI has developed a strategy of preventive law enforcement in which agents seek to identify not only individuals engaged in terrorist activity, but those who, if approached with strong enough incentives, will agree to participate in terrorism.  In 2009 and 2010, ten of these cases, which can take years to develop, came to fruition.

Finally, the spike in the number and seriousness of terrorism-related indictments during the first half of Barack Obama's presidency can be partially attributed to the DOJ's recent focus on the Somalia-based Al Shabab, a group designated a Foreign Terrorist Organization (FTO) in February 2008.  This designation prohibits association with or support of any kind to Shabab.  Since that time, the U.S. has sought to prosecute 38 individuals for providing money, equipment, their own persons or other aid (see chart #26) to the group.  In these cases, the charge is most often material support to terror groups, a serious crime carrying with it a potential for 15 years in prison.  Although many American citizens are linked to Al Shabab, these cases can hardly be characterized as "homegrown" terrorism.  The majority of the Al Shabab cases are essentially charges against foreign fighters intending to fight in foreign wars. (The only Somali-American who has been accused of a crime against Americans, Mohamed Osman Mohamud in Portland, was not charged with any connection to Al Shabab.)

The eye-catching spike in "homegrown" terrorism relies statistically on the inclusion of individuals prosecuted for association with Al Shabab and those targeted by FBI stings, which make up more than a third of terror indictments since 2009.  Both categories may be described as resulting from preventive law enforcement measures.  These threats, though arguably incipient, never ripened into mature and imminent threats to American citizens.  In the case of Al Shabab, the perceived danger to America is based on the expectation that American-born fighters in Somalia may eventually be co-opted by Al Qaeda operatives.   Similarly, sting

operations are premised on the idea that individuals who would participate in schemes initiated by FBI informants might otherwise have been approached by an actual terrorist recruiter.

Over time, the strategy of federal terrorism prosecutions has become more confident and focused, buttressed by a strong record of convictions and the fact that no major terrorist attack has followed 9/11.  Perhaps, over the next decade, the record of prosecutorial success demonstrated in this Report will lead to an increased political and popular faith in the justice system's ability to protect the public safety as well as individual civil liberties.  Over the past decade, the Center on Law and Security has been encouraging a public conversation about issues that highlight the tension between security and liberty – for example, the weakened presumption of innocence when it comes to terrorism suspects, the excessive reliance on overly broad material support statutes, and the narrow line between legitimate FBI preventive tactics and entrapment.  We hope that renewed trust in our justice system may make this conversation recede in importance and pave the way for a forward-thinking discussion of the burgeoning global security issues of the new century.

Karen J. Greenberg
Executive Director, Center on Law and Security

# Table of Contents

*The Ten-Year Record: Terrorism and the U.S. Courts*...............................................................2

**Comprehensive Results of Post 9-11 Terrorism Prosecution** ...................................................7

    1.  Results of Prosecutions .................................................................................................7

    2.  FISA and CIPA Prosecutions ........................................................................................13

    3.  Top Statutes Charged .................................................................................................13

    4.  Terrorist Organization Affiliation .............................................................................14

    5.  Terror Targets ............................................................................................................17

    6.  Material Support Cases on the Rise ..........................................................................18

    7.  Citizenship of Defendants .........................................................................................22

    8.  Al Shabab ...................................................................................................................23

    9.  Government Informants and Entrapment ................................................................26

**Appendix A: Table of Statutes by Category** ..........................................................................27

**Appendix B: Terrorist Organization Descriptions** ..........................Error! Bookmark not defined.

*The Terrorist Trial Report Card (TTRC) tracks and analyzes all federal criminal prosecutions since September 11, 2001 that the Justice Department claims are terror-related.  This year's issue focuses on violent and non-violent crimes, all inspired by jihadist[1] ideas, 578 of the 1,054 total terror-related cases in the Center's database.[2]*

# Comprehensive Results of Post 9-11 Terrorism Prosecution

## 1.  Results of Prosecutions

The court system has resolved 431 of the 578 cases.  **Approximately 87% of all resolved cases have resulted in a conviction**.   Of 376 convicted, 349 jihadist defendants have received sentences.

| **1** Terrorism/National Security: Jihadist Crimes Since 9/11 | |
|---|---|
| Defendants charged | 310 |
| Resolved Cases | 204 |
| Convictions | 177 |
| Acquittals | 8 |
| Mistrials | 1 |
| Charges Dismissed | 13 |
| Guilty Verdicts Vacated | 5 |
| Average Sentence | 14 Years |
| Conviction Rate | 87% |

[1] The category of jihadist includes defendants who were formally or informally associated with an Islamist terror group – whether one with a global jihadist ideology (i.e. Al Qaeda) or a local Islamist movement (i.e. Hamas).  It also includes defendants unaffiliated with a terror group who aspired to such affiliation or who subscribed to a global jihadist ideology.

[2] Unless otherwise noted, charts include the group of 578 jihadist defendants from September 11, 2001 - present. This year's analysis does not incorporate data from the nearly 500 terror cases without a link to jihadist crimes, such as violence by far right wing paramilitary terror groups in South America or the United States.



Conviction for both a terrorism[3] and a national security[4] crime leads to the longest sentences.



---

[3] This category includes crimes the U.S. government has explicitly identified as involving terrorist tactics, i.e. those intended to instill fear in the larger population or aimed at governmental or symbolic targets, and support of groups engaged in such activities.
[4] This category includes crimes the U.S. government has determined threaten the nation's security interests, excluding crimes the government has explicitly identified as involving terrorist tactics, acts or organizations. National security crimes include, but are not limited to, hostage-taking, espionage, or subversive foreign relations activities.

These sentences include many defendants charged with only minor crimes, such as passport fraud.[5]



Of the group of 578 defendants, 310 have faced a terrorism or national security charge.[6]



**Sentences for those charged with terrorism or national security crimes are on average 8.5 times longer than defendants not charged with such crimes.** Eighty-eight percent of defendants charged with terror crimes are linked with a known terrorist group compared to

---

[5] For the purposes of calculation, life sentences are considered 30-year sentences.
[6] To see statutes falling under terrorism or national security, please see Appendix A.

61% of those charged with less serious crimes.



The percentage of defendants charged with terrorism or national security crimes is increasing relative to overall jihadist prosecutions, as well.



Since 2006, with the notable exception of 2007 (discussed below), the number of jihadist cases where terrorism or national security is the top charge has been at or above 57%. **In 2010, 86% of all jihadist cases involved a national security or terrorism charge. Through August 2011, 100% of cases bear these charges.**



**8** Terror or National Security Top Charge - Convicted of Any Crime

Guilty by Trial, 36.72%

Guilty by Plea, 63.28%

■ Guilty by Trial
■ Guilty by Plea



**9** All Federal Criminal Cases - Convicted of Any Crime

Guilty by Trial
4%

Guilty by Plea
96%

■ Guilty by Trial
■ Guilty by Plea

The percentage of jihadist terrorism or national security convictions that went to trial is 37%.  By contrast, the percentage of all federal criminal convictions that went to trial is 3.7%.[7]

---

[7] Here, we are comparing the conviction rate of all jihadist cases from September 2001- present to the conviction rate of all federal criminal cases in 2010 because the federal rate is relatively consistent from year to year.

| 10 Resolved Indictments | All Jihadist Cases | | Jihadist Terror or National Security Cases | | All Federal Criminal (2010) | |
|---|---|---|---|---|---|---|
| Convictions | 376 | 87.2% | 177 | 86.8% | 81,934 | 92.7% |
| Guilty by Trial | 90 | 20.9% | 65 | 31.9% | 3,056 | 3.5% |
| Guilty by Plea | 286 | 66.4% | 112 | 54.9% | 78,878 | 89.3% |
| Non-Convictions | 55 | 12.8% | 27 | 13.2% | 6,435 | 7.3% |
| Acquitted | 10 | 2.3% | 8 | 3.9% | 416 | 0.5% |
| Dismissed | 37 | 8.6% | 13 | 6.4% | 4,842 | 5.5% |
| Mistrial | 1 | 0.2% | 1 | 0.5% | 1 | 0.0% |
| Other | 7 | 1.6% | 5 | 2.5% | 1,176 | 1.3% |
| Total Cases | 431 | 100% | 204 | 100% | 88,369 | 100% |

Overall, the number of closed cases resulting in a guilty by trial verdict is 21% for jihadist cases, 32% for jihadist defendants with terrorism or national security charges, and 3.5% for all federal criminal cases. **Aside from the rate of cases that go to trial, there appears to be no statistically significant difference in how effectively the justice system processes terrorism cases versus all federal criminal cases.**

| 11 Cases Tried | All Jihadist Cases | | Jihadist Terror or National Security Cases | | All Federal Criminal (2010) | |
|---|---|---|---|---|---|---|
| All to Trial | 101 | 100% | 74 | 100% | 3,473 | 100% |
| Guilty by Trial | 90 | 89.1% | 65 | 87.8% | 3,056 | 87.9% |
| Acquitted | 10 | 9.9% | 8 | 10.8% | 416 | 12.0% |
| Mistrial | 1 | 1.0% | 1 | 1.4% | 1 | 0.0% |

Jihadist cases that proceed to trial result in an 89% conviction rate, about the same rate as all federal criminal cases.[8]

---

[8] Due to uncertainty over what "Other" means in all federal criminal cases, the category is dropped for tabulating conviction rate for tried cases.  Given the low percentage of cases categorized as "Other", the overall proposition that conviction rates are substantially similar remains.

## 2. FISA and CIPA Prosecutions

Most cases proceed without the use of classified evidence, but 23% of cases involve the Classified Information Protection Act, and 25% mention the Foreign Intelligence Surveillance Act. Defendants have been charged under 156 different federal statutes ranging from misuse of a passport to attempt to use a weapon of mass destruction.

## 3. Top Statutes Charged[9]



In the past ten years, the most commonly charged crimes have been 18 U.S.C. § 371, general criminal conspiracy; 18 U.S.C. § 2339A, material support for terrorists; and 18 U.S.C. §

---

[9] See Appendix A for detailed description of statutes.

2339B, material support for foreign terrorist organizations.  Since 2009, the most common charges have been § 2339B, material support for foreign terrorist organizations; § 2339A, material support for terrorists; 18 U.S.C. § 956A, conspiracy to kill, kidnap, maim, or injure persons or property in a foreign country; and § 371, general criminal conspiracy.

### 4.  Terrorist Organization Affiliation



The defendants represent 18 different terrorist organizations of varying size.



Terror group affiliation remained largely steady throughout the last 10 years.  One notable exception is Al Shabab.  Prosecutions of defendants associated with **Al Shabab** since 2008 have turned the Somalia-based organization into **the third-most prosecuted terror group in the United States.**

The following charts illustrate a sharp contrast between pre- and post-2007 in rate of terrorist group affiliation.



The year 2007 saw a high volume of jihadist cases (86), many without terrorist organization affiliation (68).  Conversely in 2008, federal prosecutors only indicted seven jihadist defendants, all of whom were affiliated with terrorist organizations.  Six of these seven were charged with national security or terrorism crimes.

In recent years, the percentage of prosecutions involving defendants with terrorist organization affiliation is increasing.  The idea that terror organization affiliation is on the rise is buttressed, for example, by the increase in material support charges, in which 85% are conclusively associated with a terrorist group.



Charges tend to be more serious for jihadist defendants associated with a known terrorist organization.  **The increase in terror group affiliation for prosecuted individuals, coupled with the rise of material support charges, suggests that federal prosecutors have been focusing on more serious crimes in the last few years.**

### 5.  Terror Targets



A significant majority of jihadist defendants have no specific target.[10]



Recent years show a slight decrease, relative to all cases, in cases involving no targets. The anomaly of 2007, with its high number of prosecutions, reappears.

## 6.  Material Support Cases on the Rise

The Center on Law and Security considers a material support charge to be 18 U.S.C. § 2339, § 2339A, or § 2339B.[11]  Harboring or concealing a terrorist, 18 U.S.C. § 2339, was charged in only 21 cases.

---

[10] Cases with no target include defendants who participated in terror training abroad or those who provided purely financial support to a terror organization, with no specific terror plots in mind.

[11] 18 U.S.C. § 2339 prohibits harboring or concealing terrorists, whereas § 2339A and § 2339B outlaw providing material support to individuals or organizations.  § 2339A makes it illegal to give material support to terrorists, while § 2339B prohibits providing material support or resources to designated foreign terrorist organizations.  The former is more general and can include domestic terrorists, while the latter is confined to organizations designated by the State Department.



Since 2007, material support has gone from being charged in 11.6% of cases to 69.4% in 2010. **In 2011 so far, 87.5% of cases involve a material support charge.**



Material support[12] convictions may result in up to fifteen years for each count, or up to life in prison if the death of another person results.  Actions that have been considered material support for terrorists or a terrorist group range from raising $300 for Al Shabab to attempting to provide anti-aircraft missiles for Al Qaeda.  Material support is a serious charge that usually results in long prison sentences.  Where material support is the top charge, the resulting sentence is 7.8 times longer than for defendants not charged with terrorism or national security.  **This is significant because § 2339B charges do not require proof of intent that the material support go to illegal activities.**



[12] The definition of material support in § 2339A and § 2339B is referred to § 2339A(b)(1-3), which includes a litany of examples of support for a terrorist operation at various stages of planning.  Material support includes any property or service, exempting medicine or religious materials.  Services can include training, expert advice, personnel (including oneself), transportation, safe houses, communications, and more.  Section 2339A(b)(2) and 2339A(b)(3) further define training and expert advice to include specific or specialized, rather than general, assistance.

Material support charges have included the provision of money, weapons, personnel, communications, technical assistance, and the defendant's person and services.

Section 2339A requires that the defendant knows or intends the material support provided will be used to prepare or carry out a violation of certain sections of the criminal code. Section 2339C, the prohibition on the financing of terrorism, has a similar intent requirement to 2339A. Section 2339B requires knowing that the organization to which one is providing support is a designated FTO, that the organization engages in terrorist activities, or that the organization engages in or has engaged in terrorism. **The knowledge requirement does not require a showing that the defendant intended to further the illegal activities of the organization.**[13]

The statute's merging of the broad scope of activities that constitute material support with the lack of specific intent in Section 2339B means that any knowing material support for a foreign terrorist organization, whether intended to support illegal activity or not, can result in prosecution for very serious terrorism charges and in lengthy prison sentences. The Supreme Court found that Congress purposefully weakened the intent language in 2339B relative to 2339A. The Court also deferred to Congress' finding that there is no meaningful separation between a terrorist organization's legal and illegal activities, therefore support for one is functionally equivalent to support for the other.[14]

---

[13] *Holder v. Humanitarian Law Project*, 130 S. Ct 2705 (2010).
[14] *Id.* at 2710.

## 7.  Citizenship of Defendants



The group of defendants charged with jihadist crimes is highly diverse.  **While 42% are U.S. citizens, the rest are citizens of more than 45 other countries.**



There has been an uptick in the number of U.S. citizens charged with jihadist terrorism since 2009, although so far in 2011, we have observed a reversal of this trend, as well as an overall decrease in terrorism prosecutions, compared to the last several years.

### 8. Al Shabab

In recent months, Representative Peter King (R-NY) held a series of hearings about the homegrown terror threat in the U.S.  One hearing focused primarily on the alleged domestic threat represented by the Somalia-based group, Al Shabab, which the U.S. State Department designated a foreign terrorist organization in February 2008.



The small increase in prosecution of U.S. citizens since 2009 can be partially explained by Somali-Americans predominantly charged with providing material support to Al Shabab.



Of the 41 people alleged to have a link to Al Shabab, 30, or 73.2%, face a material support charge.  Support ranges from providing equipment, sending others to fight, raising money, and providing oneself to fight.



About half of the Al Shabab cases are tried in Minnesota.  Approximately 25,000 of the U.S.'s 87,500 Somalian refugees live in that state.[15]  Between 2007-2010, a conspiracy of 20 men in Minnesota allegedly sent individuals to Somalia.  Some may have been lured to fight a nationalist struggle against Ethiopian troops who invaded in 2006.  At least three are dead – one, Farah Mohamed Beledi, was shot in Mogadishu in 2011 before being able to blow up a suicide vest.[16]  The group of 41 does not include Shirwa Ahmed, the first American suicide bomber who killed 31 people in Somalia[17], because he was never charged by U.S. prosecutors.[18]



Those who have been accused in connection with Al Shabab are largely naturalized American citizens, though many are Somali citizens.  Prosecutors have brought 93% of Al Shabab cases in the last three years.  This could be a reflection of Al Shabab's recent addition to the designated foreign terrorist organization list, the growing importance of Somalia in the war on terror, or a combination of both.

---

[15] U.S. Census Bureau's American Community Survey, 2009.
[16] "Minn. woman IDs alleged suicide bomber as stepson" *ABC News*, June 8, 2011 (http://abcnews.go.com/US/wireStory?id=13787341).
[17] U.S. Attorney's Office, District of Minnesota, Press Release November 23, 2009 (http://www.fbi.gov/minneapolis/press-releases/2009/mp112309.htm).
[18] ""A Call to Jihad, Answered in America" *N.Y. Times*, July 11, 2009 (http://www.nytimes.com/2009/07/12/us/12somalis.html?pagewanted=all).

### 9.  Government Informants and Entrapment



Since 9-11, 41% of terrorism cases have involved an informant.   Since 2009, the federal government has expanded its use of aggressive and often controversial investigations, whereby a confidential informant or undercover officer makes contact with a potential terror suspect and assists him in the planning of an attempted terror crime.[19]   Sting operations often target American-born suspects who have expressed interest in committing jihadist crimes within the United States.  Ten defendants who have been caught up in sting operations since 9-11 formally presented entrapment[20] as a defense in court proceedings, but the defense has never been successful in a terrorism prosecution.

---

[19] The crimes never threaten public safety, as defendants are either arrested before the violence is initiated or are arrested after attempted use of inert weapons provided by FBI agents.

[20] The entrapment defense is the claim that government officials induced an otherwise innocent person to commit a criminal act.  The defendant has the initial burden of proving that he was induced to commit the crime.  If the defense meets that burden, the prosecution must then prove that the defendant was predisposed to commit the crime in order to vitiate the defense.  If the prosecution cannot prove predisposition, the jury must acquit the defendant.

# Appendix A: Table of Statutes by Category

**COMMERCIAL FRAUD, EMBEZZLEMENT, AND THEFT**

| | |
|---|---|
| 7 U.S.C. § 2024 | Agriculture -- Food stamp program: Violations and enforcement |
| 18 U.S.C. § 471 | Crimes and criminal procedure -- Crimes -- Counterfeiting and forgery: Obligations or securities of United States |
| 18 U.S.C. § 473 | Crimes and criminal procedure -- Crimes -- Counterfeiting and forgery: Dealing in counterfeit obligations or securities |
| 18 U.S.C. § 513 | Crimes and criminal procedure -- Crimes -- Counterfeiting and forgery: Securities of the States and private entities |
| 18 U.S.C. § 542 | Crimes and criminal procedure -- Crimes -- Customs: Entry of goods by means of false statements |
| 18 U.S.C. § 545 | Crimes and criminal procedure -- Crimes -- Customs: Smuggling goods into the United States |
| 18 U.S.C. § 641 | Crimes and criminal procedure -- Crimes -- Embezzlement and theft: Public money, property or records |
| 18 U.S.C. § 659 | Crimes and criminal procedure -- Crimes -- Embezzlement and theft: Interstate or foreign shipments by carrier; State prosecutions |
| 18 U.S.C. § 1014 | Crimes and criminal procedure -- Crimes -- Fraud and false statements: Loan and credit applications generally; renewals and discounts; crop insurance |
| 18 U.S.C. § 1341 | Crimes and criminal procedure -- Crimes -- Mail fraud and other fraud offenses: Frauds and swindles |
| 18 U.S.C. § 1343 | Crimes and criminal procedure -- Crimes -- Mail fraud and other fraud offenses: Fraud by wire, radio, or television |
| 18 U.S.C. § 1344 | Crimes and criminal procedure -- Crimes -- Mail fraud and other fraud offenses: Bank fraud |
| 18 U.S.C. § 1347 | Crimes and criminal procedure -- Crimes -- Mail fraud and other fraud offenses: Health care fraud |
| 18 U.S.C. § 1349 | Crimes and criminal procedure -- Crimes -- Mail fraud and other fraud offenses: Attempt and conspiracy |
| 18 U.S.C. § 1365 | Crimes and criminal procedure -- Crimes -- Malicious mischief: Tampering with consumer products |
| 18 U.S.C. § 2314 | Crimes and criminal procedure -- Crimes -- Stolen property: Transportation of stolen goods, securities, moneys, fraudulent State tax stamps, or articles used in counterfeiting |
| 18 U.S.C. § 2315 | Crimes and Criminal Procedure -- Crimes -- Stolen property: Sale or receipt of stolen goods, securities, moneys, or fraudulent State tax stamps |
| 18 U.S.C. § 2320 | Crimes and Criminal Procedure -- Crimes -- Stolen property: Trafficking in counterfeit goods or services |
| 18 U.S.C. § 2342 | Crimes and Criminal Procedure -- Crimes -- Trafficking in contraband cigarettes and smokeless tobacco: Unlawful acts |
| 42 U.S.C. § 408 | Public health and welfare -- Social Security Act -- Federal old age, survivors, and disability insurance benefits: Penalties |
| 47 U.S.C. § 223 | Telegraphs, telephones, and radiotelegraphs -- Wire or radio communication -- Common carriers -- Common carrier regulation: Obscene or harassing telephone calls in the District of Columbia or in interstate or foreign communications |

**DRUG CRIMES**

| | |
|---|---|
| 21 U.S.C. § 841 | Food and Drugs -- Drug abuse prevention and control -- Control and enforcement -- Offenses and penalties: Prohibited acts A |
| 21 U.S.C. § 844 | Food and Drugs -- Drug abuse prevention and control -- Control and enforcement -- Offenses and penalties: Penalty for simple possession |
| 21 U.S.C. § 846 | Food and Drugs -- Drug abuse prevention and control -- Control and enforcement -- Offenses and penalties: Attempt and conspiracy |
| 21 U.S.C. § 853 | Food and Drugs -- Drug abuse prevention and control -- Control and enforcement -- Offenses and penalties: Criminal forfeitures |
| 21 U.S.C. § 952 | Food and Drugs -- Drug abuse prevention and control -- Import and export: Importation of controlled substances |
| 21 U.S.C. § 959 | Food and Drugs -- Drug abuse prevention and control -- Import and export: Possession, manufacture or distribution of controlled substance |
| 21 U.S.C. § 960 | Food and Drugs -- Drug abuse prevention and control -- Import and export: Prohibited acts A |
| 21 U.S.C. § 963 | Food and Drugs -- Drug abuse prevention and control -- Import and export: Attempt and conspiracy |

## FRAUD AND FALSE STATEMENTS

| | |
|---|---|
| 18 U.S.C. § 1001 | Crimes and criminal procedure -- Crimes -- Fraud and false statements: Statements or entries generally |
| 18 U.S.C. § 1028 | Crimes and criminal procedure -- Crimes -- Fraud and false statements: Fraud and related activity in connection with identification documents, authentication features, and information |
| 18 U.S.C. § 1029 | Crimes and criminal procedure -- Crimes -- Fraud and false statements: Fraud and related activity in connection with access devices |
| 18 U.S.C. § 1030 | Crimes and criminal procedure -- Crimes -- Fraud and false statements: Fraud and related activity in connection with computers |
| 26 U.S.C. § 7201 | Internal Revenue Code -- Procedure and administration -- Crimes, other offenses, and forfeiture -- Crimes -- General provisions: Attempt to evade or defeat tax |
| 26 U.S.C. § 7202 | Internal Revenue Code -- Procedure and administration -- Crimes, other offenses, and forfeiture -- Crimes -- General provisions: Willful failure to collect or pay over tax |
| 26 U.S.C. § 7203 | Internal Revenue Code -- Procedure and administration -- Crimes, other offenses, and forfeiture --Crimes -- General  provisions: Willful failure to file return, supply information, or pay tax |
| 26 U.S.C. § 7206 | Internal Revenue Code -- Procedure and administration -- Crimes, other offenses, and forfeiture --Crimes: General  provisions: Fraud and false statements |
| 26 U.S.C. § 7212 | Internal Revenue Code -- Procedure and administration -- Crimes, other offenses, and forfeiture --Crimes -- General  provisions: Attempts to interfere with administration of Internal Revenue laws |
| 31 U.S.C. § 5313 | Money and finance -- Money -- Monetary transactions -- Records and reports on monetary instruments transactions: Reports on domestic coins and currency transactions |
| 31 U.S.C. § 5316 |  Money and finance -- Money -- Monetary transactions -- Records and reports on monetary instruments transactions: Reports on exporting and importing monetary instruments |
| 31 U.S.C. § 5324 | Money and finance -- Money -- Monetary transactions -- Records and reports on monetary instruments transactions: Structuring transactions to evade reporting requirement prohibited |
| 31 U.S.C. § 5332 | Money and finance -- Money -- Monetary transactions -- Records and reports on monetary instruments transactions: Bulk cash smuggling into or out of the United States |

## IMMIGRATION VIOLATIONS

| | |
|---|---|
| 8 U.S.C. § 1253 | Aliens and nationality -- Immigration and nationality -- Immigration adjustment and change of status: Penalties related to removal |
| 8 U.S.C. § 1305 | Aliens and nationality -- Immigration and nationality -- Immigration -- Registration of aliens: Notices of change of address |
| 8 U.S.C. § 1306 | Aliens and nationality -- Immigration and nationality -- Immigration -- Registration of aliens: Penalties |
| 8 U.S.C. § 1324 | Aliens and nationality -- Immigration and nationality -- Immigration -- General penalty provisions: Bringing in and harboring certain aliens |
| 8 U.S.C. § 1325 | Aliens and nationality -- Immigration and nationality -- Immigration -- General penalty provisions: Improper entry by an alien |
| 8 U.S.C. § 1326 | Aliens and nationality -- Immigration and nationality -- Immigration -- General penalty provisions: Reentry of removed aliens |
| 18 U.S.C. § 911 | Crimes and criminal procedure -- Crimes -- False personation: Citizen of the United States |
| 18 U.S.C. § 1015 | Crimes and criminal procedure -- Crimes -- Fraud and false statements: Naturalization, citizenship or alien registry |
| 18 U.S.C. § 1425 | Crimes and criminal procedure -- Crimes -- Nationality and citizenship: Procurement of citizenship or naturalization unlawfully |
| 18 U.S.C. § 1542 | Crimes and criminal procedure -- Crimes -- Passports and visas: False statement in application and use of passport |
| 18 U.S.C. § 1543 | Crimes and criminal procedure -- Crimes -- Passports and visas: Forgery or false use of passport |
| 18 U.S.C. § 1544 | Crimes and criminal procedure -- Crimes -- Passports and visas: Misuse of passport |
| 18 U.S.C. § 1546 | Crimes and criminal procedure -- Crimes -- Passports and visas: Fraud and misuse of visas, permits, and other documents |

## NATIONAL SECURITY VIOLATIONS AND HOSTAGE TAKING

| | |
|---|---|
| 18 U.S.C. § 32 | Crimes and criminal procedure -- Crimes -- Aircraft and motor vehicles: Destruction of aircraft or aircraft facilities |
| 18 U.S.C. § 43 | Crimes and criminal procedure -- Crimes -- Animals, birds, fish, and plants: Force, violence, and threats involving animal enterprises |
| 18 U.S.C. § 175 | Crimes and criminal procedure -- Crimes -- Biological weapons: Prohibitions with respect to biological weapons |
| 18 U.S.C. § 229 | Crimes and criminal procedure -- Crimes -- Chemical weapons: Prohibited activities |
| 18 U.S.C. § 793 | Crimes and criminal procedure -- Crimes -- Espionage and censorship: Gathering, transmitting, or losing defense information |
| 18 U.S.C. § 841 | Crimes and criminal procedure -- Crimes -- Importation, manufacture, distribution and storage of explosive materials: Definitions |
| 18 U.S.C. § 842 | Crimes and criminal procedure -- Crimes -- Importation, manufacture, distribution and storage of explosive materials: Unlawful acts |
| 18 U.S.C. § 844 | Crimes and criminal procedure -- Crimes -- Importation, manufacture, distribution and storage of explosive materials: Penalties |
| 18 U.S.C. § 871 | Crimes and criminal procedure -- Crimes -- Extortion and threats: Threats against President and successors to the presidency |
| 18 U.S.C. § 951 | Crimes and criminal procedure -- Crimes -- Foreign relations: Agents of foreign governments |
| 18 U.S.C. § 956 | Crimes and criminal procedure -- Crimes -- Foreign relations: Conspiracy to kill, kidnap, maim, or injure persons or damage property in a foreign country |
| 18 U.S.C. § 960 | Crimes and criminal procedure -- Crimes -- Foreign relations: Expedition against friendly nation |
| 18 U.S.C. § 1114 | Crimes and criminal procedure -- Crimes -- Homicide: Protection of officers and employees of the United States |
| 18 U.S.C. § 1203 | Crimes and criminal procedure -- Crimes -- Kidnapping: Hostage taking |
| 18 U.S.C. § 1751 | Crimes and criminal procedure -- Crimes -- Presidential and presidential staff assassination, kidnapping, and assault: Penalties |
| 18 U.S.C. § 2155 | Crimes and criminal procedure -- Crimes -- Sabotage: Destruction of national-defense materials, national-defense premises, or national-defense utilities |
| 18 U.S.C. § 2381 | Crimes and criminal procedure -- Crimes -- Treason, sedition, and subversive activities: Treason |
| 18 U.S.C. § 2383 | Crimes and criminal procedure -- Crimes -- Treason, sedition, and subversive activities: Rebellion or insurrection |
| 18 U.S.C. § 2384 | Crimes and criminal procedure -- Crimes -- Treason, sedition, and subversive activities: Seditious conspiracy |
| 22 U.S.C. § 2778 | Foreign relations and intercourse -- Arms export control -- Military export controls: Control of arms exports and imports |
| 49 U.S.C. § 46306 | Transportation -- Aviation programs -- Air commerce and safety -- Enforcement and penalties -- Penalties: Registration violations involving aircraft not providing air transportation |
| 49 U.S.C. § 46314 | Transportation -- Aviation programs -- Air commerce and safety -- Enforcement and penalties -- Penalties: Entering aircraft or airport area in violation of security requirements |
| 49 U.S.C. § 46502 | Transportation -- Aviation programs -- Air commerce and safety -- Enforcement and penalties -- Special aircraft jurisdiction of the U.S.: Aircraft piracy |
| 49 U.S.C. § 46504 | Transportation -- Aviation programs -- Air commerce and safety -- Enforcement and penalties -- Special aircraft jurisdiction of the U.S.: Interference with flight crew members and attendants |
| 49 U.S.C. § 46505 | Transportation -- Aviation programs -- Air commerce and safety -- Enforcement and penalties -- Special aircraft jurisdiction of the U.S.: Carrying a weapon or explosive on an aircraft |
| 49 U.S.C. § 46506 | Transportation -- Aviation programs -- Air commerce and safety -- Enforcement and penalties -- Special aircraft jurisdiction of the U.S.: Application of certain criminal laws to acts on aircraft |
| 50 U.S.C. § 1702 | War and national defense -- International emergency economic powers: Presidential authorities |
| 50 U.S.C. § 1705 | War and national defense -- International emergency economic powers: Penalties |

## OBSTRUCTION

| | |
|---|---|
| 18 U.S.C. § 4 | Crimes and criminal procedure -- Crimes -- General provisions: Misprision of felony |
| 18 U.S.C. § 201 | Crimes and criminal procedure -- Crimes -- Bribery, graft, and conflicts of interest: Bribery of public officials and witnesses |
| 18 U.S.C. § 401 | Crimes and criminal procedure -- Crimes -- Contempts: Power of court |
| 18 U.S.C. § 1038 | Crimes and criminal procedure -- Crimes -- Fraud and false statements: False information and hoaxes |
| 18 U.S.C. § 1073 | Crimes and criminal procedure -- Crimes -- Fugitives from justice: Flight to avoid prosecution or giving testimony |
| 18 U.S.C. § 1503 | Crimes and criminal procedure -- Crimes -- Obstruction of justice: Influencing or injuring officer or juror generally |
| 18 U.S.C. § 1505 | Crimes and criminal procedure -- Crimes -- Obstruction of justice: Obstruction of proceedings before departments, agencies, and committees |
| 18 U.S.C. § 1512 | Crimes and criminal procedure -- Crimes -- Obstruction of justice: Tampering with a witness, victim, or an informant |
| 18 U.S.C. § 1621 | Crimes and criminal procedure -- Crimes -- Perjury: Perjury generally |
| 18 U.S.C. § 1623 | Crimes and criminal procedure -- Crimes -- Perjury: False declarations before grand jury or court |

## OTHER

| | |
|---|---|
| 18 U.S.C. § 2 | Crimes and criminal procedure -- Crimes -- General provisions: Principals |
| 18 U.S.C. § 371 | Crimes and criminal procedure -- Crimes -- Conspiracy: Conspiracy to commit offense or to defraud United States |
| 18 U.S.C. § 876 | Crimes and criminal procedure -- Crimes -- Extortion and threats: Mailing threatening communications |
| 18 U.S.C. § 981 | Crimes and criminal procedure -- Crimes -- Forfeiture: Civil forfeiture |
| 18 U.S.C. § 982 | Crimes and criminal procedure -- Crimes -- Forfeiture: Criminal forfeiture |
| 18 U.S.C. § 1716 | Crimes and criminal procedure -- Crimes -- Postal service: Injurious articles as nonmailable |
| 18 U.S.C. § 2252 | Crimes and criminal procedure -- Crimes -- Sexual exploitation and other abuse of children: Certain activities relating to material involving the sexual exploitation of minors |
| 18 U.S.C. § 3238 | Crimes and criminal procedure -- Criminal procedure -- Jurisdiction and venue: Offenses not committed in any district |
| 22 U.S.C. § 287C | Foreign relations and intercourse -- International bureaus, congresses, etc. -- United Nations educational, scientific, and cultural organization: Economic and communication sanctions pursuant to United Nations Security Council Resolution |

## RACKETEERING

| | |
|---|---|
| 18 U.S.C. § 1951 | Crimes and criminal procedure -- Crimes -- Racketeering: Interference with commerce by threats or violence |
| 18 U.S.C. § 1952 | Crimes and criminal procedure -- Crimes -- Racketeering: Interstate and foreign travel or transportation in aid of racketeering enterprises |
| 18 U.S.C. § 1956 | Crimes and criminal procedure -- Crimes -- Racketeering: Laundering of monetary instruments |
| 18 U.S.C. § 1957 | Crimes and criminal procedure -- Crimes -- Racketeering: Engaging in monetary transactions in property derived from specified unlawful activity |
| 18 U.S.C. § 1960 | Crimes and criminal procedure -- Crimes -- Racketeering: Prohibition of unlicensed money transmitting businesses |
| 18 U.S.C. § 1962 | Crimes and criminal procedure -- Crimes -- Racketeer influenced and corrupt organizations: Prohibited activities |

## TERRORISM

| | |
|---|---|
| 18 U.S.C. § 1992 | Crimes and criminal procedure -- Crimes -- Railroad carriers and mass transportation systems on land on water, or through the air: Terrorist attacks and other violence against railroad carriers and against mass transportation systems on land, on water, or through the air |
| 18 U.S.C. § 1993 | Crimes and criminal procedure -- Crimes -- Railroad carriers and mass transportation systems on land, on water, or through the air: Terrorist attacks and other acts of violence against mass transportation systems (repealed) |
| 18 U.S.C. § 2332 | Crimes and criminal procedure -- Crimes -- Terrorism: Criminal penalties |
| 18 U.S.C. § 2332a | Crimes and criminal procedure -- Crimes -- Terrorism: Use of weapons of mass destruction |
| 18 U.S.C. § 2332b | Crimes and criminal procedure -- Crimes -- Terrorism: Acts of terrorism transcending national boundaries |
| 18 U.S.C. § 2332f | Crimes and criminal procedure -- Crimes -- Terrorism: Bombings of places of public use, government facilities, public transportation systems and infrastructure facilities |
| 18 U.S.C. § 2332g | Crimes and criminal procedure -- Crimes -- Terrorism: Missile systems designed to destroy aircraft |
| 18 U.S.C. § 2339 | Crimes and criminal procedure -- Crimes -- Terrorism: Harboring or concealing terrorists |
| 18 U.S.C. § 2339A | Crimes and criminal procedure -- Crimes -- Terrorism: Providing material support to terrorists |
| 18 U.S.C. § 2339B | Crimes and criminal procedure -- Crimes -- Terrorism: Providing material support or resources to designated foreign terrorist organizations |
| 18 U.S.C. § 2339C | Crimes and criminal procedure -- Crimes -- Terrorism: Prohibitions against the financing of terrorism |
| 18 U.S.C. § 2339D | Crimes and criminal procedure -- Crimes -- Terrorism: Receiving military-type training from a foreign terrorist organization |

## VIOLENT CRIMES

| | |
|---|---|
| 18 U.S.C. § 37 | Crimes and criminal procedure -- Crimes -- Aircraft and motor vehicles: Violence at international airports |
| 18 U.S.C. § 111 | Crimes and criminal procedure -- Crimes -- Assault: Assaulting, resisting, or impeding certain officers or employees |
| 18 U.S.C. § 373 | Crimes and criminal procedure -- Crimes -- Conspiracy: Solicitation to commit a crime of violence |
| 18 U.S.C. § 751 | Crimes and criminal procedure -- Crimes -- Escape and rescue: Prisoners in custody of institution or officer |
| 18 U.S.C. § 1111 | Crimes and criminal procedure -- Crimes -- Homicide: Murder |
| 18 U.S.C. § 1117 | Crimes and criminal procedure -- Crimes -- Homicide: Conspiracy to commit murder |
| 18 U.S.C. § 2261 | Crimes and criminal procedure -- Crimes -- Domestic violence and stalking: Interstate domestic violence |

## WEAPONS VIOLATIONS

| | |
|---|---|
| 18 U.S.C. § 922 | Crimes and criminal procedure -- Crimes -- Firearms: Unlawful acts |
| 18 U.S.C. § 924 | Crimes and criminal procedure -- Crimes -- Firearms: Penalties |
| 26 U.S.C. § 5841 | Internal Revenue Code -- Alcohol, tobacco, and certain other excise taxes -- Machine guns, destructive devices, and certain other firearms -- General Provisions and Exemptions -- General Provisions: Registration of firearms |
| 26 U.S.C. § 5861 | Internal Revenue Code -- Alcohol, tobacco, and certain other excise taxes -- Machine guns, destructive devices, and certain other firearms -- Prohibited acts: Prohibited acts |



## About the Center on Law and Security

*An independent, nonpartisan institute offering expertise, research, and analysis on terrorism and national security*

*Through its Terrorist Trial Report Card, document collections, policy reports, and public programs, the Center works to enhance the quality and vision of national security policy in the U.S. and abroad.*

# www.lawandsecurity.org

# www.CenterLineBlog.org

www.lawandsecurity.org