**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES | ) |
| | ) |
| | ) |
| v. | )       Criminal No. 09-10017-GAO |
| | ) |
| TAREK MEHANNA | ) |
| | ) |

<u>**DEFENDANT'S MEMORANDUM ON APPROPRIATE SENTENCE UNDER THE**</u>
<u>**SENTENCING GUIDELINES**</u>

Defendant Tarek Mehanna, through undersigned counsel, submits the instant Sentencing

Memorandum for the Court's consideration regarding the appropriate and fair sentence in this

case as calculated by the Sentencing Guidelines with deference to the factors under 18 U.S.C. §§

3553(a) and 3661. Counsel respectfully submits the following Memorandum to assist the Court

in fashioning Mr. Mehanna's sentence.

Respectfully submitted,

TAREK MEHANNA
By his attorneys,

CARNEY & BASSIL

*Janice Bassil*
Janice Bassil
BBO# 033100

*J. W. Carney, Jr.*
J. W. Carney, Jr.
BBO# 074760

Sejal H. Patel
B.B.O. # 662259

1

John E. Oh
B.B.O. # 675916

Carney & Bassil
20 Park Plaza, Suite 1405
Boston, MA 02116
617-338-5566

Dated: April 9, 2012

**MEMORANDUM**

**I.      Presentence Report and Sentencing Guidelines.**

This Court should sentence Mr. Mehanna to a Guidelines range of 63 to 78 months after

using a base level of 26 (which includes a 2 point reduction for being a minor participant (*see* §

3B1.2(b)), and a criminal history category I. First and foremost, the 2000 Sentencing Guidelines

(passed in November 2000) rather than the 2009 Guidelines apply for Counts 1, 2 and 4 because

the government specifically dates those conspiracies as beginning in 2001. The 2001 Sentencing

Guidelines apply to Count 3 since the government specifically dates that conspiracy as beginning

in the spring of 2002. If this Court restricted itself to the 2009 Guidelines, that action would

violate the ex post facto and due process clauses of the United States Constitution.

Second, the "one book" provision under § 1B1.11(b)(2) and (3), which directs this Court

to retroactively apply the latest, harshest Guidelines to conduct years beforehand, should be

given no deference whatsoever because such a provision violates both the ex post facto clause

and the due process clause as articulated by *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and

*United States v. Booker*, 543 U.S. 220 (2005). *See United States v. Gabayzadeh*, 428 Fed. Appx.

43 (2nd Cir. 2011), *Gabayzadeh v. United States*, No. 11-1034 (*petition for certiorari pending*)

(bringing same constitutional challenge to this provision). The one-book rule puts Mehanna at

"significant risk" that he would receive increased punishment for his offenses. *See United States

v. Lewis*, 606 F.3d 193, 198 (4th Cir. 2010). The first significant risk is that this Court would

assign a base level of 33 for Counts 2, 3 and 4 in accordance with the 2011 Guidelines even

though the base level for those offenses was assigned as 28 under the 2000 and 2001 Guidelines.

The second significant risk is that this Court would apply § 2M5.3 to Count 1 when that

guideline did not even exist in 2001. § 2M5.3 became effective in November 2002. The final

significant risk is that this Court would add 6 levels under § 3A1.2 or the "official victim" enhancement when prior to November 2004, it called for only 3 levels.

The Ex Post Facto Clause "forbids the application of any law or rule that increases punishment for pre-existing conduct." *United States v. Havener*, 905 F.2d 3, 5 (1st Cir. 1990). *See* U.S. Const. Art. I, § 9, cl. 3; cf. U.S. Const. Art. I, § 10, cl. 1. Applying this logic, the 9th Circuit has held the "one book" provision unconstitutional. "The harm caused by the earlier offenses can be counted in sentencing the later one but [t]hat does not mean that the punishment for the earlier offenses themselves can be increased, simply because the punishment for the later one can be." *United States v. Ortland*, 109 F.3d 539, 546 (9th Cir. 1997). The 3rd Circuit has also held that "the fact that various counts of an indictment are grouped cannot override ex post facto concerns." *United States v. Bertoli*, 40 F.3d 1384, 1404 (3rd Cir. 1994). Finally, the Commentary to § 1B1.11(a) and (b)(1) states that "[w]hile the Commission concurs in the policy expressed by Congress, courts to date generally have held that the ex post facto clause does apply to sentencing guideline amendments that subject the defendant to increased punishment." Nevertheless, the 1st Circuit has held prior to *Booker* that so long as the pre-amendment and post-amendment conduct relate to one ongoing scheme, the later, harsher amendment applies. *United States v. Regan*, 989 F.2d 44, 48 (1st Cir. 1993). This Court must follow *Booker* and the Guidelines Commentary which require it to weigh ex post facto and due process concerns before increasing punishment based upon a later Guidelines book.

Third, no enhancements should apply as they would vastly overstate Mehanna's actual offense conduct and criminal history. Instead, after calculating the base level of 28 for the material support charges, this Court should grant a two point reduction based upon Mehanna's minor participation in these offenses. The Authors' Discussion to § 3B1.2(b) states that a minor

4

participant is "a defendant…who is less culpable than most other participants, but whose role could not be described as minimal." Mehanna was not a minimal participant but he was far less culpable than Pippin, who provided a possible contact in Yemen and received military training in Pakistan; AbuZahra, who provided the money for the Yemen trip and suggested attacking a shopping mall; and Abousamra, who spearheaded the travel plans to Yemen and went to both Pakistan and Iraq for jihadist training. This Court should also apply the § 5K2.11 or "Lesser Harms" departure which recognizes that "a defendant may commit a crime in order to avoid a perceived greater harm." Mehanna's actions, as shown throughout trial, were based upon his knowledge that his Muslim brothers overseas were being oppressed and brutalized. *See United States v. Carvell*, 74 F.3d 8 (1ˢᵗ Cir. 1996) (downward departure not barred for defendant who grew and used marijuana to combat depression and suicidal tendencies).

### A. Objections to the Pre-Sentence Report ("PSR")

The defendant has filed objections to the PSR which have been provided to the court in the report filed by Probation Officer Jennifer Sinclair. *See* Exhibit A. The defendant refers the Court to the specific PSR objections rather than repeat them here.

### B. The Proposed Enhancement Under U.S.S.G. § 3A1.4 is Not Appropriate

The PSR improperly suggests that each of the counts of conviction should be enhanced 12 levels pursuant to U.S.S.G. § 3A1.4. This enhancement provides:

(a)     If the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, increase by 12 levels; but if the resulting offense level is less than 32, increase to 32.

b)     In each such case, the defendant's criminal history category from Chapter Four (Criminal History and Criminal Livelihood) shall be Category VI.

U.S.S.G. § 3A1.4.

First and foremost, this enhancement, which would substantially increase Mehanna's sentence, can only apply if it involves a federal crime of terrorism as that is specifically defined in 18 U.S.C. § 2332b(g)(5). A federal crime of terrorism is one that "(A) is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct; and (B) is a violation of [the material support and conspiracy to kill statutes as in this case.]" The government was not required to prove the first specific intent element to the jury beyond a reasonable doubt. Therefore, the application of § 3A1.4 without that critical jury finding would violate his right to due process and to "the defendant's right to have the jury find the existence of 'any particular fact' that the law makes essential to his punishment. That right is implicated whenever a judge seeks to impose a sentence that is not solely based on 'facts reflected in the jury verdict or admitted by the defendant.'" *Booker*, 543 U.S. at 232 (citations omitted). Indeed, this Court instructed the jury that innocent acts can satisfy the material support charges. "…just to illustrate, furnishing office space to a terrorist organization, otherwise an innocent act, could suffice as material support within the meaning of the statute." (Tr. 12/16/11 at p. 23). It also instructed that conspiracy to kill was a sweeping charge which only required "proof that there was a conspiracy to murder, kidnap or maim *somebody* outside the United States." (Tr. 12/16/11 at p. 35) (emphasis added). In *United States v. Chandia*, the 4th Circuit remanded for re-sentencing of the defendant's convictions under § 2339A and § 2339B convictions because the district court did not make a factual finding of the "specific intent requirement, namely, that the underlying felony was 'calculated to influence or affect the conduct of government by intimidation.'" *United States v. Chandia*, 514 F.3d 365, 375-376 (4th Cir. 2008). It reserved ruling on the appropriate burden of proof (preponderance of the evidence or clear and convincing evidence) and referred to the circuit split on this point. *Id.* at 376 n.4, *see*

6

*United States v. Hammoud*, 381 F.3d 316, 355 (4th Cir. 2004). Mehanna submits that the government's burden is proof beyond a reasonable doubt before a jury. *See also Stewart*, 590 F.3d at 138-139 (affirming the district court's refusal to apply the terrorism enhancement because, in part, there was no evidence that the defendant, Yousry, specifically intended to affect the conduct of government).

Second, this so-called terrorism enhancement is unwarranted as applied to Mehanna because it grossly overstates his offense conduct and calls for a "one size fits all" draconian sentence. Furthermore, the Guidelines counsel against increasing a total adjusted offense level above 43. However, if this Court applied solely the § 3A1.4(b) enhancement in order to prevent double counting, his resulting Criminal History VI along with his accurate base level of 26, the Guidelines recommend a sentence between 120 and 150 months – far below life. If this Court applied solely the § 3A1.4(a) enhancement, his resulting offense level of 38 along with his accurate criminal history of I would yield a sentence of 234 months or 19 ½ years. The latter application would result in a grossly unfair sentence given Mehanna's actual conduct but one still less damning than life in solitary confinement. Applying both prongs of this enhancement would not serve 18 U.S.C. § 3553(a)'s directive that the sentence be "sufficient, but not greater than necessary" to achieve the purposes of punishment and deterrence.

Mr. Mehanna objects to the § 3A1.4 enhancement in its entirety as its application (i) would result in impermissible double counting; (ii) is unworthy of deference from this Court because it is an enhancement the Sentencing Commission developed as a result of a congressional directive and is not based up on empirical data, and (iii) would cause Mr. Mehanna's criminal history to be substantially over-represented.

### i. Application of U.S.S.G. § 3A1.4 Results in Impermissible Double Counting.

A district court engages in "double counting" when "precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways." *United States v. Farrow*, 198 F.3d 179, 193 (6th Cir. 1999). Double counting is impermissible unless "it appears that Congress or the Sentencing Commission intended to attach multiple penalties to the same conduct." *Id.* at 194.

The PSR's suggestion that U.S.S.G. § 3A1.4 applies to Mr. Mehanna's convictions demonstrates one of the chief flaws in this enhancement. In *United States v. Crocker*, Case No. 04CR10097, the PSR suggested the same 12-level enhancement after the defendant was convicted of possessing chemical weapons, in violation of 18 U.S.C. § 229 (a). The applicable guideline for this offense was U.S.S.G. § 2M1.6 and, as applied to Crocker, resulted in an offense level of 42 because the offense was committed with intent to injure the United States. *Crocker*, Sentencing Transcript, p. 26 (relevant portions of the transcript are attached here as Exhibit B. As to the 12-level enhancement under § 3A1.4, the Honorable James D. Todd stated:

> How could you ever have a 2M6.1 offense committed with intent to injure the United States that would not also have a 3A1.4 twelve-level enhancement for a crime intended to promote federal terrorism? I can't think of one – I can't think of a crime where if you had one, you wouldn't have the other.
>
> It seems to me there may be some odd case where you could think of where you could have a 2M6.1(a)(1) without 3A1.4, but it's not this case. It seems to me in this case, this offense was committed with intent to injure the United States. It's a base level 42.  It seems double counting to then add 12 more levels because this felony was intended to promote a federal crime of terrorism.
>
> And a federal crime of terrorism is described in 18 U.S.C. 2332[b]g, which I read it earlier. By the federal crime of terrorism means an offense that is calculated to influence or affect the conduct of government by intimidation or coercion and or to retaliate against government conduct. It seems to me that is substantially what 2M6.1 is, and offense to injure the United States. So I think it's a double counting.

*Id.* at pp. 26, 39. Judge Todd therefore sustained the defendant's objection to the 12-level enhancement. *Id.* at 39.

Applying Judge Todd's analysis to this case, application of the 12 level enhancement also results in impermissible double counting. Each of the counts of conviction relate to a federal crime of violence. Mr. Mehanna asks this Court to refrain from imposing this enhancement when calculating his sentence under the advisory guidelines.

### ii. Application of U.S.S.G. § 3A1.4 is Unworthy of Deference from this Court as it is an Enhancement the Sentencing Commission Developed only as a result of Congressional Directive and is not based upon Empirical Data

In 1994, Congress enacted the Violent Crime Control and Law Enforcement Act of 1994. Section 120004 of that Act "direct[ed] the [Sentencing] Commission to provide an appropriate enhancement for any felony that involve or is intended to promote international terrorism." Guidelines Manual, Appendix C, Amendment 526. Specifically, the act directed the Commission as follows:

SENTENCING GUIDELINES INCREASE FOR TERRORIST CRIMES

The United States Sentencing Commission is directed to amend its sentencing guidelines to provide an appropriate enhancement for any felony, whether committed within or outside the United States, that involves or is intended to promote international terrorism, **unless such involvement or intent is itself an element of the crime**.

Public Law No. 103-322 (emphasis added).

The Sentencing Commission promptly deleted the previous upward departure provision in U.S.S.G. § 5K2.15 (which allowed district court's discretion to depart upward if the defendant committed the offense in furtherance of a terrorist action) and replaced it with U.S.S.G. § 3A1.4. This new enhancement not only created an upward adjustment, it created a minimum offense level of 32 if the offense involved or was intended to promote international terrorism, and required a criminal history category of VI regardless of the defendant's actual criminal history.

The Sentencing Commission did not give any reason for selecting these particular offense levels or for imposing a criminal history category of VI in every case. The Commission also did not mention how or even if this adjustment addressed Congress' express limitation that the Commission was to provide for an enhancement in such cases "unless such involvement or intent is itself and element of the crime." The next year, the Sentencing Commission amended the enhancement again, also by congressional directive, to apply the enhancement more broadly to include "federal crime of terrorism" as defined in 18 U.S.C. § 2332b(g). *See* Guidelines Manual, Appendix C, Amendment 539.

This Court's ability to draw any useful advice from a guideline depends first upon whether the Sentencing Commission, in promulgating or amending that guideline, did so in "exercise of its characteristic institutional role." *Kimbrough*, 128 S.Ct. at 575. Section 3A1.4 simply does not warrant any deference. This enhancement was not enacted based upon reliance of empirical evidence of pre-Guidelines sentencing practice, and not enacted in light of judicial decisions, sentencing data, and comments from participants and experts in the field. *See Rita*, 127 S.Ct. at 2464-65. Mr. Mehanna therefore urges this Court to exercise its discretion to conclude that this enhancement "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes" in this case and either find it inapplicable or apply a downward variance to eliminate its effect upon the advisory guidelines calculations. *See Kimbrough*, 128 S.Ct. at 575.

Again, this Court cannot displace the jury and find the specific intent necessary to trigger § 3A1.4. Before applying this enhancement, the 2nd and and 4th Circuits have carefully considered the underlying offense conduct and whether it constitutes a specific intent to coerce the government. "Unlike in some cases where the enhancement has been applied, the acts underlying the conviction in this case were not violent terrorist acts." *Chandia*, 514 F.3d at 376.

Here, Mehanna's own acts were not violent or in any sense, "operational." The 2nd Circuit has also rejected the argument that it must have been reasonably foreseeable to the defendant that his co-conspirators acted to affect the conduct of the government. "We cannot conflate [the defendant's] acts with his co-defendants' mental states." *Stewart*, 590 F.3d at 139. This Court should also not conflate Mehanna's mental state with that of Abousamra, AbuZahra or other co-conspirators. *Kimbrough* and *Rita* have given even more latitude to district courts in declining to apply an enhancement when it fails to appreciate the actual offense and the actual offender.

### iii. Application of U.S.S.G. § 3A1.4(b) would cause Tarek Mehanna's Criminal History to be Substantially Over-represented.

If this Court were to apply U.S.S.G. § 3A1.4(b) over Mr. Mehanna's objection, the enhancement would substantially increase his criminal history category from level I to level VI. Thus, while Mr. Mehanna actually still has zero criminal history points, application of U.S.S.G. § 3A1.4 would take him from the lowest criminal history category to the highest based solely on this enhancement. The enhancement therefore does not accurately represent Mr. Mehanna's criminal history.

Section 4A1.3(b)(1) of the advisory Guidelines allows this court to depart downward from the suggested sentencing range if the defendant's "criminal history category substantially over-represents the seriousness of [his] criminal history or the likelihood that [he] will commit other crimes." In *United States v. Fletcher*, 15 F.3d 553 (6th Cir. 1994), the Sixth Circuit specifically recognized the validity of a downward departure on this basis.

Many circuits recognize U.S.S.G. § 4A1.3 as a basis for downward departures where a criminal history category overstates the seriousness of the defendant's record.  *See, e.g., United States v. Shoupe*, 35 F.3d 835, 838 (3rd Cir. 1994) (holding the Sentencing Commission recognized the imprecision inherent in the criminal history classification, thus promulgating §

4A1.3 "to give the sentencing judges discretion to depart from the prescribed range where it misrepresents a defendant's criminal history or likelihood of recidivism"); *United States v. Gayles*, 1 F.3d 735, 739 (8th Cir. 1993) (holding the court "may depart downward from an otherwise applicable sentencing range when reliable information shows that defendant's criminal history category significantly over represents the seriousness of defendant's past criminal conduct"); *United States v. Summers*, 893 F.2d 63, 68 (4th Cir. 1990) (affirming finding that the criminal history category overrepresented the seriousness of the record, thus justifying departure); *United States v. Bowser*, 941 F.2d 1019, 1023 (10th Cir. 1991) (same); *United States v. Collins*, 915 F.2d 618, 621-22 (11th Cir. 1990); *United States v. Abbott,* 30 F.3d 71, 73 (7th Cir. 1994); *United States v. Spencer*, 25 F.3d 1105, 1113 (D.C. Cir. 1994); *United States v. Rivers*, 50 F.3d 1126, 1131 (2nd Cir. 1995).

More recently, the United States District Court for the Northern District of New York refused to apply the Criminal History VI terrorism enhancement even though the defendant had been convicted after a jury trial of **27** charges, including § 2339A, § 2339B and money laundering charges (which proved that he provided financial assistance to terrorists). *United States v. Aref*, 2007 WL 804814 (N.D. New York 2007) (McAvoy, J.). The defendant like Mehanna had zero criminal history. Before announcing the defendant's ultimate sentence of 180 months, the Court reasoned as follows:

> The Court finds that a criminal history category of VI does substantially over-represent the seriousness of Hossain's criminal history. As indicated in the PSR at paragraphs 82 through 87, Hossain received zero total criminal history points as scored by the United States Probation Department. The credible and reliable evidence indicates that Hossain has provided for his family until his arrest through lawful employment in various capacities, and there is no indication that he has engaged in any other criminal activity in this country other than reported. Based upon Hossain's lack of prior criminal history, and his personal characteristics, the Court finds his circumstances to be extraordinary and that a downward departure is warranted to a criminal history category of I.

12

*Aref*, 2007 WL 804814 at *3. Similarly, the United District Court for the Eastern District of

Virginia granted a downward departure under § 4A1.3, or in the alternative, a § 3553 variance,

due to the defendant's lack of a criminal record and the fact there was "no evidence of [his] ever

having committed an illegal act in his life outside of the conduct for which he is convicted."

*United States v. Benkhala*, 501 F.Supp.2d 748, 759 (E.D. Virginia 2007). It found that the

defendant's personal traits, including his pursuit of a Master's degree as well as his ties to his

family and community, were significant in fashioning his ultimate sentence. The Court became

convinced that the defendant "does not share the same characteristics or the conduct of a

terrorist, and in turn, he does not share the same likelihood of recidivism, the difficulty of

rehabilitation, or the need for incapacitation." *Id*.

A category VI designation substantially overstates the seriousness of Mr. Mehanna's

criminal history and the likelihood of his committing future crimes. The seriousness of his record

is completely overstated as his placement in criminal history category VI occurs only through

application and operation of this enhancement – not because of his own personal criminal history

or record. The tremendous increase in Mr. Mehanna's criminal history category is simply not

reflective of his actual criminal history. Mehanna's commitment to his community, as reflected

by the outpouring of letters on his behalf, as well as his commitment to his faith, education and

family demonstrate as in *Benkhala* that he "does not share the same characteristics or the conduct

of a terrorist[.]" *Benkhala*, 501 F.Supp. at 759.

### C. This Court must reject the Government's Request for the Special Skill Enhancement under § 3B1.3.

The application of § 3B1.3 would violate *Apprendi* and *Booker* because the government

was not required to prove, and did not prove, at trial that Mehanna used a "special skill" in

Counts 1 or 2. With the § 2339A and § 2339B charges, the jury could have found material

support in a number of ways: expert advice or assistance; personnel (i.e. providing himself as

personnel in Yemen); service (i.e. sharing videos); or training, which is the only material support

term that mentions "special skill." 18 U.S.C. § 2339A(b)(2). There was no special verdict form

by which one can determine the jury's finding of the specific material support provided.

Therefore, this Court may not supplant the jury and apply a special skill enhancement.

"Regardless of whether the legal basis of the accusation is in a statute or in guidelines

promulgated by an independent commission, the principles behind the jury trial are equally

applicable." *Booker*, 543 U.S. at 239.

However, if this Court determines that it does have the constitutional authority to apply

this enhancement, then it should find that the enhancement does not apply on its own terms. §

3B1.3 states "[t]his adjustment may not be employed if an abuse of trust or skill is included in

the base offense level or specific offense characteristic." The government charged his translation

and distribution of videos as *the crime* in Counts 1 and 2. The government sought to prove at

trial that Mehanna's translation for Tibyan Publications, alone, constituted material support to

terrorists and a foreign terrorist organization under Counts 1 and 2 because he was using his

special Arabic skills to further terrorist goals. Evan Kohlmann would have been a strange expert

to call if the government did not believe that such conduct went to the heart of its case against

Mehanna. Because the government alleged and sought to prove translation as the specific offense

characteristic, it cannot now seek to increase Mehanna's sentence again through § 3B1.3. The

probation department appropriately omitted such an enhancement.

Finally, as *Holder* dictates, Mehanna cannot be punished for independent translation

which the government *never* linked to the commission of any terrorism crime. Although the jury

could have found that Mehanna's translation activity was criminal based upon this Court's

instructions, such a finding is unconstitutional. Furthermore, the government does not explain

how translating and distributing a video "significantly facilitates" any terrorism offense. Counsel

is also aware of no case that holds that knowledge of another language is a "special skill" as that

is defined by § 3B1.3. Application Note 4 defines special skill as "a skill not possessed by

members of the general public and usually requiring substantial education, training or licensing."

Speaking and writing in another language does not require "substantial education, training or

licensing." *See* Exhibit C.

### D. This Court must reject Probation's Request for the Official Victim Enhancement under § 3A1.2.

First, the application of § 3A1.2 would violate *Apprendi* and *Booker*

because the government was not required to prove at trial the fact of a specified, official victim

or the fact that Mehanna's offenses were motivated by that official status. *See Apprendi*, 530

U.S. at 471-73 (holding that New Jersey's hate crime enhancement statute, which allowed the

prosecution to carry a minimal burden to prove by a preponderance of the evidence to a

sentencing judge a "purpose to intimidate" was unconstitutional). This Court instructed the jury

that it need only find a conspiracy to kill "somebody" without any further specificity of the

victim. (Tr. 12/16/11 at pp. 28, 35). It also defined terrorism as violence against "non-combatant

targets," presumably then, not United States soldiers. (*Id*. at p. 25).

Second, the government did not allege or prove at trial that Mehanna intended to

kill specific victims overseas – only that he intended to harm the United States Army *writ large*

as an organization. In Application Note 1, the Commentary states that "[t]his guideline applies

when specified individuals are victims of the offense. This guideline does not apply when the

only victim is an organization, agency, or the government." Because the government did not

prove that Mehanna targeted specific officials or planned attacks on places where he would have

15

known those officials to be, this enhancement is inappropriate. In *Cirilo-Munoz*, the 1st Circuit reversed the district court's application of § 3A1.2 after finding ineffective assistance of appellate counsel for failing to raise the issue. *Cirilo-Munoz v. United States,* 404 F.3d 527, 533 (1st Cir. 2005). The Court reversed for several reasons. First, the proof of the defendant's motivation to harm an official victim, "which had a dramatic effect on the sentence, rested on very thin evidence and a possible misinterpretation of the jury verdict by the district court." *Cirilo-Munoz*, 404 F.3d at 530. Second, "the court's instructions to the jury stated that '[k]nowledge of the victim's status as a law enforcement officer is not necessarily an element of the offense.'" *Id.* Similarly here, Mehanna's alleged motivation to harm a specified, official victim rested on thin evidence and this Court clearly instructed the jury that it need not find any such motivation to convict him of these charges.

Alternatively, as required by the ex post facto clause, this Court should not impose 6 levels but rather, the 3 levels in existence at the time of these offenses in 2000 and 2001. *United States v. Wood*, 486 F.3d 781, 790 (3rd Cir. 2007).

### E. This Court must reject Probation's Request for the Specific Offense Characteristic Enhancement under § 2M5.3(b)(1)(E) for Count 1.

First, application of § 2M5.3(b)(1)(E) violates the ex post facto clause because this guideline did not even exist in 2000 or 2001. Second, under Application Note 2(A), the Commentary suggests a departure may be warranted on the following bases: "the court may consider the degree to which the violation threatened a security interest of the United States, the volume of funds or other material support or resources involved, the extent of planning or sophistication, and whether there were multiple occurrences." There was no evidence that Mehanna's actions actually threatened United States security interests. There was no evidence that Mehanna provided any tangible material support such as funds or weapons to terrorist

16

activity or to Al Qaeda. Mehanna's short trip to Yemen at the age of 21 was entirely unsophisticated and ended once Abousamra indicated he wanted to move on to Iraq. Mehanna took part of little, if any, planning behind this trip and the "plan" itself had no real direction, no real contacts and no real training camps to attend since they did not exist in Yemen in 2004. Finally, Mehanna did not engage in "multiple occurrences" of this offense. He had nothing to do with Abousamra's trips to Pakistan or Iraq. The actions and mental states of Mehanna's co-conspirators, most of whom testified for the government, should not be imputed to him.

### F. This Court must reject Probation's Request for the Obstruction of Justice Enhancement under § 3C1.1 for Counts 1-4.

Applying this enhancement would violate *Apprendi* and *Booker* and would violate the enhancement's own terms. § 3C1.1 provides a two-level enhancement where the defendant "wilfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction[.]" In § 3C1.1's Commentary under Application Note 4(G) ("Examples of Covered Conduct"), this enhancement covers only "providing a materially false statement to a law enforcement officer that *significantly obstructed* or impeded the official investigation or prosecution of the instant offense." (emphasis added). In Application Note 5(B), the Commentary expressly excludes "making false statements, not under oath, to law enforcement officers, unless Application Note 4(g) above applies[.]"

The jury did not find the "particular facts" of wilful, attempted and/or significant obstruction of justice in any of these counts. Nor could the jury have found these particular facts because Mehanna's false statements did not even slightly obstruct the official investigation in this case. This Court instructed the jury that it need not find such obstruction: "The statement need not have actually influenced the actions of the government official, and government agents

17

need not have been actually deceived by it in order for it to be material[.]" (Tr. 12/16/11 at pp.

36-37). The government cannot prove actual or attempted obstruction in this case because the

FBI agents knew exactly where Maldonado was and knew about the Yemen trip when they

interviewed Mehanna. *See United States v. Biheiri*, 356 F.Supp.2d 589 (E.D. Va. 2005) (because

federal agents who interviewed defendant had actual knowledge that defendant's statements

were false, such statements caused no actual obstruction of the investigation) and *United States*

*v. Shriver*, 967 F.2d 572 (11th Cir. 1992) (government failed to meet its burden of proving that

defendant's false statement to IRS investigator significantly impeded official investigation).

Therefore, this Court may not apply this enhancement.

### G. This Court must reject Probation's Request for the Section 2J1.2 Enhancement for Counts 5-7.

Applying this guideline would violate *Apprendi* and *Booker*. This Court instructed the

jury, over defense objection, that it need only find that the false statements "involved"

international terrorism. (Tr. 12/16/11 at pp. 36-37). "International terrorism" has a very specific

definition under 18 U.S.C § 2331, to which § 2J1.2 references. Under 18 U.S.C. § 2331(B),

international terrorism is a violent activity that "appear[s] to be intended--**(i)** to intimidate or

coerce a civilian population; **(ii)** to influence the policy of a government by intimidation or

coercion; or **(iii)** to affect the conduct of a government by mass destruction, assassination, or

kidnapping." Because the jury was not required to find, and did not find, any of these three

elements, this Court cannot increase Mehanna's punishment based upon these disputed, alleged

facts.

**II.**     **Conclusion**

Mr. Mehanna moves that the Court depart downward and/or vary downward from whatever guidelines range it determines to be appropriate under the advisory guidelines and impose a sentence that is "sufficient but not greater than necessary" to achieve the statutory purposes of punishment and deterrence under 18 U.S.C. § 3553.

Respectfully submitted,

TAREK MEHANNA
By his attorneys,

CARNEY & BASSIL

*Janice Bassil*
Janice Bassil
BBO# 033100

*J. W. Carney, Jr.*
J. W. Carney, Jr.
BBO# 074760

Sejal H. Patel
B.B.O. # 662259

John E. Oh
B.B.O. # 675916

Carney & Bassil
20 Park Plaza, Suite 1405
Boston, MA 02116
617-338-5566

Dated: April 9, 2012

**<u>Certificate of Service</u>**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on or before the above date.

/s/ J. W. Carney, Jr.
J. W. Carney, Jr.
