AO 245B(05-MA)        (Rev. 06/05) Judgment in a Criminal Case
                      Sheet 1 - D. Massachusetts - 10/05

# UNITED STATES DISTRICT COURT
## District of Massachusetts

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| **V.** | |
| **TAREK MEHANNA** | Case Number: **1: 09 CR 10017 - 001 - GAO** |
| | USM Number: 27152-038 |
| | J.W. CARNEY, ESQUIRE |

Defendant's Attorney                    ☑ Additional documents attached

☐ Correction of Sentence for Clerical Mistake (Fed. R. Crim. P.36)

**THE DEFENDANT:**

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
   which was accepted by the court.

☑ was found guilty on count(s)   1ss-7ss   ( Date of Verdict:  12/20/11 )
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:        Additional Counts - See continuation page ☑

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC Sec. 2339B | Conspiracy to Provide Material Support or Resources to a Designated Foreign Terrorist Group. | 06/17/10 | 1ss |
| 18 USC Sec. 2339A | Conspiracy to Provide Material Support to Terrorists. | 06/17/10 | 2ss |
| 18 USC Sec. 2339A | Providing and Attempting to Provide Material Support to Terrorists. | 02/28/07 | 3ss |
| 18 USC Sec. 956 | Conspiracy to Kill in a Foreign Country | 06/17/10 | 4ss |

The defendant is sentenced as provided in pages 2 through ___10___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

04/12/12
Date of Imposition of Judgment

Signature of Judge

The Honorable George A. O'Toole
Judge, U.S. District Court
Name and Title of Judge

April 13, 2012
Date

AO 245B(05-MA)    (Rev. 06/05) Judgment in a Criminal Case
Sheet 1A - D. Massachusetts - 10/05

Judgment—Page   2   of   10

DEFENDANT:    **TAREK MEHANNA**
CASE NUMBER: **1: 09  CR  10017   - 001  - GAO**

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC Sec 371 | Conspiracy | 06/17/10 | 5ss |
| 18 USC Sec. 1001 (a)(2) | Making False Statements | 12/16/06 | 6ss |
| 18 USC Sec. 1001 (a)(2) | Making False Statements | 12/16/06 | 7ss |

AO 245B(05-MA)    (Rev. 06/05) Judgment in a Criminal Case
Sheet 2 - D. Massachusetts - 10/05

DEFENDANT:    **TAREK MEHANNA**                                    ▣
CASE NUMBER: **1: 09 CR 10017  - 001 - GAO**

Judgment — Page    3    of    10

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:    210        month(s)

210 months on count 4ss, 180 months on each of counts 1ss-3ss, 60 months on each of counts 5ss-7ss.  All terms of imprisonment to be served concurrently.

☐ The court makes the following recommendations to the Bureau of Prisons:



☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

☐ at _____ ☐ a.m.  ☐ p.m.  on _____ .

☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐ before 2 p.m. on _____ .

☐ as notified by the United States Marshal.

☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:




Defendant delivered on _____ to _____

a_____ , with a certified copy of this judgment.


_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B(05-MA)      (Rev. 06/05) Judgment in a Criminal Case
                    Sheet 3 - D. Massachusetts - 10/05

Judgment—Page    4    of    10

DEFENDANT:     **TAREK MEHANNA**
CASE NUMBER: **1: 09 CR 10017   - 001  - GAO**

## SUPERVISED RELEASE

☑ See continuation page

Upon release from imprisonment, the defendant shall be on supervised release for a term of :     7     year(s)

on each of counts 1ss-7ss, to run concurrently with each other.

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, not to exceed  104  tests per year, as directed by the probation officer.

☑ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☑ The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

☑ The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐ The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐ The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B(05-MA)     (Rev. 06/05) Judgment in a Criminal Case
Sheet 5 - D. Massachusetts - 10/05

DEFENDANT: **TAREK MEHANNA**
CASE NUMBER: **1: 09  CR  10017   - 001  - GAO**

Judgment — Page ___5___ of ___10___

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $ $700.00 | $ | $ |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |

☐ See Continuation Page

| **TOTALS** | $ $0.00 | $ $0.00 | |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B(05-MA)   (Rev. 06/05) Judgment in a Criminal Case
                 Sheet 6 - D. Massachusetts - 10/05

DEFENDANT:   **TAREK MEHANNA**                     Judgment — Page ___6___ of ___10___

CASE NUMBER: **1: 09 CR 10017  - 001 - GAO**

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A  ☐ Lump sum payment of $ _____ due immediately, balance due

   ☐ not later than _____ , or
   ☐ in accordance   ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

B  ☐ Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

C  ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
      _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D  ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
      _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
      term of supervision; or

E  ☐ Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
      imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☒ Special instructions regarding the payment of criminal monetary penalties:

   The assessment fee is due forthwith.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several                                           ☐ See Continuation
                                                                Page

   Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount,
   and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

AO 245B    (Rev. 06/05) Criminal Judgment
           Attachment (Page 1) — Statement of Reasons - D. Massachusetts - 10/05

DEFENDANT:      **TAREK MEHANNA**                            ▣          Judgment — Page  7  of    10
CASE NUMBER: **1: 09 CR 10017  - 001 - GAO**
DISTRICT:       **MASSACHUSETTS**

## STATEMENT OF REASONS

**I    COURT FINDINGS ON PRESENTENCE INVESTIGATION REPORT**

    A  ☐   **The court adopts the presentence investigation report without change.**

    B  ☑   **The court adopts the presentence investigation report with the following changes.**
        (Check all that apply and specify court determination, findings, or comments, referencing paragraph numbers in the presentence report, if applicable.)
        (Use Section VIII if necessary.)

        1    ☐   **Chapter Two of the U.S.S.G. Manual** determinations by court (including changes to base offense level, or
              specific offense characteristics):

        2    ☑   **Chapter Three of the U.S.S.G. Manual** determinations by court (including changes to victim-related adjustments,
              role in the offense, obstruction of justice, multiple counts, or acceptance of responsibility):

              No adjustments under sec. 3A1.2

        3    ☐   **Chapter Four of the U.S.S.G. Manual** determinations by court (including changes to criminal history category or
              scores, career offender, or criminal livelihood determinations):

        4    ☐   **Additional Comments or Findings** (including comments or factual findings concerning certain information in the
              presentence report that the Federal Bureau of Prisons may rely on when it makes inmate classification, designation,
              or programming decisions):

    C  ☐   **The record establishes no need for a presentence investigation report pursuant to Fed.R.Crim.P. 32.**

**II   COURT FINDING ON MANDATORY MINIMUM SENTENCE** (Check all that apply.)

    A  ☑   No count of conviction carries a mandatory minimum sentence.

    B  ☐   Mandatory minimum sentence imposed.

    C  ☐   One or more counts of conviction alleged in the indictment carry a mandatory minimum term of imprisonment, but the
        sentence imposed is below a mandatory minimum term because the court has determined that the mandatory minimum
        does not apply based on

        ☐   findings of fact in this case
        ☐   substantial assistance (18 U.S.C. § 3553(e))
        ☐   the statutory safety valve (18 U.S.C. § 3553(f))

**III  COURT DETERMINATION OF ADVISORY GUIDELINE RANGE (BEFORE DEPARTURES):**

Total Offense Level:            47
Criminal History Category:   VI
Imprisonment Range:                     to  **life**    months
Supervised Release Range:  2              to  **life**    years
Fine Range: $  25,000          to  $  250,000
☑   Fine waived or below the guideline range because of inability to pay.

AO 245B (05-MA)   (Rev. 06/05) Criminal Judgment
Attachment (Page 2) — Statement of Reasons - D. Massachusetts - 10/05

| | |
|---|---|
| DEFENDANT: **TAREK MEHANNA** ⊞ | Judgment — Page  8  of  10 |

CASE NUMBER: **1: 09 CR 10017  - 001 - GAO**
DISTRICT:      **MASSACHUSETTS**

# STATEMENT OF REASONS

**IV    ADVISORY GUIDELINE SENTENCING DETERMINATION** (Check only one.)

    A    ☐    The sentence is within an advisory guideline range that is not greater than 24 months, and the court finds no reason to depart.

    B    ☐    The sentence is within an advisory guideline range that is greater than 24 months, and the specific sentence is imposed for these reasons.
          (Use Section VIII if necessary.)

    C    ☐    The court departs from the advisory guideline range for reasons authorized by the sentencing guidelines manual.
          (Also complete Section V.)

    D    ☑    The court imposed a sentence outside the advisory sentencing guideline system.   (Also complete Section VI.)

**V    DEPARTURES AUTHORIZED BY THE ADVISORY SENTENCING GUIDELINES** (If applicable.)

    A    **The sentence imposed departs** (Check only one.):
        ☐ below the advisory guideline range
        ☐ above the advisory guideline range

    B    **Departure based on** (Check all that apply.):

        1    **Plea Agreement** (Check all that apply and check reason(s) below.):
            ☐    5K1.1 plea agreement based on the defendant's substantial assistance
            ☐    5K3.1 plea agreement based on Early Disposition or "Fast-track" Program
            ☐    binding plea agreement for departure accepted by the court
            ☐    plea agreement for departure, which the court finds to be reasonable
            ☐    plea agreement that states that the government will not oppose a defense departure motion.

        2    **Motion Not Addressed in a Plea Agreement** (Check all that apply and check reason(s) below.):
            ☐    5K1.1 government motion based on the defendant's substantial assistance
            ☐    5K3.1 government motion based on Early Disposition or "Fast-track" program
            ☐    government motion for departure
            ☐    defense motion for departure to which the government did not object
            ☐    defense motion for departure to which the government objected

        3    **Other**
            ☐    Other than a plea agreement or motion by the parties for departure (Check reason(s) below.):

    C    **Reason(s) for Departure** (Check all that apply other than 5K1.1 or 5K3.1.):

| | | | | | |
|---|---|---|---|---|---|
| ☐ 4A1.3 | Criminal History Inadequacy | ☐ 5K2.1 | Death | ☐ 5K2.11 | Lesser Harm |
| ☐ 5H1.1 | Age | ☐ 5K2.2 | Physical Injury | ☐ 5K2.12 | Coercion and Duress |
| ☐ 5H1.2 | Education and Vocational Skills | ☐ 5K2.3 | Extreme Psychological Injury | ☐ 5K2.13 | Diminished Capacity |
| ☐ 5H1.3 | Mental and Emotional Condition | ☐ 5K2.4 | Abduction or Unlawful Restraint | ☐ 5K2.14 | Public Welfare |
| ☐ 5H1.4 | Physical Condition | ☐ 5K2.5 | Property Damage or Loss | ☐ 5K2.16 | Voluntary Disclosure of Offense |
| ☐ 5H1.5 | Employment Record | ☐ 5K2.6 | Weapon or Dangerous Weapon | ☐ 5K2.17 | High-Capacity, Semiautomatic Weapon |
| ☐ 5H1.6 | Family Ties and Responsibilities | ☐ 5K2.7 | Disruption of Government Function | ☐ 5K2.18 | Violent Street Gang |
| ☐ 5H1.11 | Military Record, Charitable Service, | ☐ 5K2.8 | Extreme Conduct | ☐ 5K2.20 | Aberrant Behavior |
|  | Good Works | ☐ 5K2.9 | Criminal Purpose | ☐ 5K2.21 | Dismissed and Uncharged Conduct |
| ☐ 5K2.0 | Aggravating or Mitigating Circumstances | ☐ 5K2.10 | Victim's Conduct | ☐ 5K2.22 | Age or Health of Sex Offenders |
|  |  |  |  | ☐ 5K2.23 | Discharged Terms of Imprisonment |
|  |  |  |  | ☐ | Other guideline basis (*e.g.*, 2B1.1 commentary) |

    D    **Explain the facts justifying the departure.** (Use Section VIII if necessary.)

AO 245B ( 05-MA)   (Rev. 06/05) Criminal Judgment
Attachment (Page 3) — Statement of Reasons - D. Massachusetts 10/05

DEFENDANT:   **TAREK MEHANNA**                        Judgment — Page  9  of   10
CASE NUMBER: **1: 09 CR 10017  - 001 - GAO**
DISTRICT:          **MASSACHUSETTS**

# STATEMENT OF REASONS

## VI   COURT DETERMINATION FOR SENTENCE OUTSIDE THE ADVISORY GUIDELINE SYSTEM
(Check all that apply.)

A   **The sentence imposed is** (Check only one.):
☑ below the advisory guideline range
☐ above the advisory guideline range

B   **Sentence imposed pursuant to** (Check all that apply.):

1   **Plea Agreement** (Check all that apply and check reason(s) below.):
☐ binding plea agreement for a sentence outside the advisory guideline system accepted by the court
☐ plea agreement for a sentence outside the advisory guideline system, which the court finds to be reasonable
☐ plea agreement that states that the government will not oppose a defense motion to the court to sentence outside the advisory guideline system

2   **Motion Not Addressed in a Plea Agreement** (Check all that apply and check reason(s) below.):
☐ government motion for a sentence outside of the advisory guideline system
☐ defense motion for a sentence outside of the advisory guideline system to which the government did not object
☐ defense motion for a sentence outside of the advisory guideline system to which the government objected

3   **Other**
☐ Other than a plea agreement or motion by the parties for a sentence outside of the advisory guideline system (Check reason(s) below.):

C   **Reason(s) for Sentence Outside the Advisory Guideline System** (Check all that apply.)

☐ the nature and circumstances of the offense and the history and characteristics of the defendant pursuant to 18 U.S.C. § 3553(a)(1)
☐ to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense (18 U.S.C. § 3553(a)(2)(A))
☐ to afford adequate deterrence to criminal conduct (18 U.S.C. § 3553(a)(2)(B))
☐ to protect the public from further crimes of the defendant (18 U.S.C. § 3553(a)(2)(C))
☐ to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner (18 U.S.C. § 3553(a)(2)(D))
☐ to avoid unwarranted sentencing disparities among defendants (18 U.S.C. § 3553(a)(6))
☐ to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7))

D   **Explain the facts justifying a sentence outside the advisory guideline system.** (UseSection VIII if necessary.)

See statement of reasons made on the record in open court, a transcript of which is attached and is incorporated herein.

AO 245B ( 05-MA) (Rev. 06/05) Criminal Judgment
Attachment (Page 4) — Statement of Reasons - D. Massachusetts - 10/05

DEFENDANT:       **TAREK MEHANNA**
CASE NUMBER: **1: 09 CR 10017  - 001 - GAO**
DISTRICT:        **MASSACHUSETTS**

Judgment — Page 10 of 10

# STATEMENT OF REASONS

## VII  COURT DETERMINATIONS OF RESTITUTION

A   ☑  Restitution Not Applicable.

B   Total Amount of Restitution:  _____

C   Restitution not ordered (Check only one.):

1  ☐  For offenses for which restitution is otherwise mandatory under 18 U.S.C. § 3663A, restitution is not ordered because the number of identifiable victims is so large as to make restitution impracticable under 18 U.S.C. § 3663A(c)(3)(A).

2  ☐  For offenses for which restitution is otherwise mandatory under 18 U.S.C. § 3663A, restitution is not ordered because determining complex issues of fact and relating them to the cause or amount of the victims' losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim would be outweighed by the burden on the sentencing process under 18 U.S.C. § 3663A(c)(3)(B).

3  ☐  For other offenses for which restitution is authorized under 18 U.S.C. § 3663 and/or required by the sentencing guidelines, restitution is not ordered because the complication and prolongation of the sentencing process resulting from the fashioning of a restitution order outweigh the need to provide restitution to any victims under 18 U.S.C. § 3663(a)(1)(B)(ii).

4  ☐  Restitution is not ordered for other reasons.  (Explain.)

D   ☐  Partial restitution is ordered for these reasons (18 U.S.C. § 3553(c)):

## VIII  ADDITIONAL FACTS JUSTIFYING THE SENTENCE IN THIS CASE (If applicable.)

Sections I, II, III, IV, and VII of the Statement of Reasons form must be completed in all felony cases.

Defendant's Soc. Sec. No.:   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

Defendant's Date of Birth:   00-00-1982

Defendant's Residence Address:  Sudbury, MA 01776

Defendant's Mailing Address:
Plymouth County House of Correction

Date of Imposition of Judgment
04/12/12

Signature of Judge
The Honorable George A. O'Toole  Judge, U.S. District Court
Name and Title of Judge
Date Signed   4/13/12

1        STATEMENT OF REASONS (FROM TRANSCRIPT)

2

3                        * * *

4

5        THE COURT:  The sentencing statute, Section 3553(a) of

6   Title 18, sets forth a number of specific categorical factors

7   to be considered by a court in devising an appropriate

8   sentence.  The weight given to any particular factor varies

9   from case to case based on the particular facts and context of

10  the case at hand.  It is not uncommon that the factors

11  sometimes might point in different directions, and it is an

12  accommodation, or the balance of the several factors, that

13  ultimately should support the judgment that is made.  So let me

14  address the factors in some detail.

15        Two of the factors are the nature and circumstances of

16  the offense and the need to provide for just punishment of that

17  offense.  The defendant was convicted after trial of providing

18  and attempting and conspiring to provide material support to

19  al Qa'ida, support that he intended to have the effect of

20  advancing al Qa'ida's murderous operations in Iraq and

21  elsewhere.  He was convicted of conspiring with others to join

22  in training camps in the hope of actually engaging in fighting

23  himself.  He was also convicted of conspiring with others both

24  in person and through the internet to perform services,

25  including translation and dissemination services, in support of

1  al Qa'ida.  The proof came some through witnesses, but much of
2  it consisted of the defendant's own words in chats and emails
3  and recordings.

4        The trip to Yemen for the defendant in the end proved
5  to be a more or less feckless attempt, though it was no less a
6  serious attempt for its failure.  It was an attempt, the result
7  of a conspiracy, to join in an armed struggle against American
8  forces and American nationals.  It is long settled in our law
9  that conspiracy and attempt are punishable by substantial
10  penalties even in the event of their failure to succeed.

11        Later the defendant found a more suitable and
12  congenial role:  He could provide material support to al Qa'ida
13  by proselytizing and translating, knowingly and intentionally,
14  according to the evidence, aiding the media wing of al Qa'ida,
15  As-Sahab, and others in promoting violent jihad and recruiting
16  young Muslim men of the English-speaking West to active
17  participation in that jihad.  He was effective in those efforts
18  both at a micro and at a macro level.

19        At the micro level he was a charismatic leader, as I
20  think we have seen this morning, of a small group of
21  Massachusetts men who, with him, were drawn into radical
22  Salafist jihadi theology and ideology, such as Massoud,
23  Abu Bakr, Maldonado, Spaulding, Abu Zahra, and even Abousamra.
24  Among other things, including his strong and magnetic
25  personality and his native intelligence, the defendant's

1    serious religious scholarship made him a kind of leader in that
2    group, and they looked to him for leadership and guidance and
3    he encouraged them to radical action.

4            At the macro level he was a respected voice in web
5    forums, chat rooms, one-on-one messaging.  He was an active
6    participant in the radical at-Tibyan forum and was, from the
7    evidence at trial, including posts from that forum -- he was
8    accorded a degree of respect from the other participants.

9            It is true he eventually was "kicked off," I think as
10   Mr. Carney put it at trial, the forum because his views were
11   not as extreme as others, but extremity is a relative term and
12   it would be hard to characterize the defendant's views as
13   moderate simply because they weren't at the outer edge of
14   extremity.  The debate was -- or at least the one that was
15   highlighted at trial -- was exactly who it was permitted to
16   kill in the execution of jihad.  And the defendant expressed
17   concern about violence to those whom he regarded as truly
18   innocent, but it was also plain that he had no qualms about the
19   killing by explosive device or by beheading of persons whom he
20   regarded as supporting U.S. military action in Muslim
21   countries, including non-military personnel who were in
22   support.

23           He translated important propaganda works including, of
24   course, the "39 Ways" and the "Expedition of Umar Hadeed,"
25   which celebrated and encouraged suicide bombers, and as a

1  consequence he was sought out on occasion by al Qa'ida in Iraq
2  as a translator for other works, including one by as important
3  a figure as Ayman al-Zawahiri.  That he was sought out in this
4  way even though in that instance he did not undertake the work,
5  showed that at least some in al Qa'ida valued the support that
6  he was able to give.

7          It was possible, even appropriate, a few months ago to
8  wonder whether the defendant could be guilty of the crimes he
9  was charged with, but the jury has answered that question, and
10  that verdict necessarily implies the rejection of the
11  defendant's argument made at trial that his activity was
12  limited to protected speech or independent advocacy.  To think
13  otherwise, one would have to disregard a great deal of the
14  actual trial evidence.  So that's a summary of the criminal
15  acts that support the verdicts in the case, and those acts
16  warrant a substantial criminal sanction as a penalty.

17          Another factor in the statute is the need to promote
18  respect for the law.  This is a consideration that looks in two
19  directions.  On the one hand, the sentence must be one that
20  satisfies the wider community that the law has been vindicated
21  by the sentence imposed; that is, that the punishment fits the
22  crime and is imposed in an appropriate and proportionate way to
23  the seriousness of the offense.  This satisfies the community's
24  legitimate interest in a retributive punishment.

25          On the other hand, the sentence must also promote

1    respect for the law in the sense that it serves as a warning to
2    those who might be tempted to commit similar offenses, that
3    their criminal acts will be punished appropriately as well.
4    And this serves as an instrument of deterrence of future
5    criminal conduct.  Both of these interests are also significant
6    in this case.

7           Another factor in the statute is the history and
8    characteristics of the defendant.  This can often be a
9    confounding factor.  In many ways, many genuine ways, the
10   defendant has behaved as an exemplary citizen, as the many
11   letters submitted in his support attest.  I credit the facts
12   and opinions expressed in those letters, as far as they go.
13   Even the evidence in the case showed the defendant to be an
14   intensely serious young man interested sincerely in how he
15   should form his life and conduct to please God and to exemplify
16   Islamic life properly lived.  That itself is noble and
17   praiseworthy.

18          He became, however, consumed with a religious
19   enthusiasm that was at once partly admirable and partly
20   horrifying.  And as to the events at issue in this case, the
21   horrifying part came to dominance and it led him to willful
22   participation in the conspiracies and attempts, of which he
23   stands convicted.

24          Many of the letter-writers have noted how difficult it
25   is for them to believe that the Tarek Mehanna that they knew

1 | could simultaneously be the Tarek Mehanna described in the
2 | indictment and, it must be said, substantiated in the trial
3 | evidence.

4 | The sad fact is that it is not an uncommon phenomenon.
5 | One might call it the Jekyll-and-Hyde phenomenon. It is a
6 | reality of human nature that we all have capacities for both
7 | good and evil, and we all do acts both good and evil in various
8 | proportions in the course of our lives. And the good and evil
9 | impulses and acts sometimes occur simultaneously with each
10 | other. In sentencing we see this phenomenon, as I say,
11 | commonly. You might be surprised how frequently people
12 | convicted of serious crimes are shown to have lived, in other
13 | respects, lives of probity and charity. Just as two wrongs
14 | don't make a right, two rights don't excuse a wrong, and the
15 | wrong still must be punished. Still, the punishment must be
16 | appropriate specifically to this defendant and it should take
17 | account of who he is, fully considered.

18 | A related consideration mandated by the statute is the
19 | need to protect the public from future crimes by the defendant.
20 | One object of criminal punishment is simply to incapacitate a
21 | defendant from committing another offense by reason of
22 | incarceration. That is typically an immediate or near-term
23 | objective effective during the term of incarceration. Another
24 | object of punishment for the longer term is to deter the
25 | punished defendant from repeating his offense. This could

Case 1:09-cr-10017-GAO  Document 432  Filed 04/13/12  Page 17 of 23

1   occur by effecting a change of heart or by inducing a practical
2   and self-interested calculation.  In either event, the sentence
3   should be sufficient to promote, optimally bring about, a
4   commitment in the defendant not to reoffend.  Both
5   considerations apply here.
6         I am, frankly, concerned by the defendant's apparent
7   absence of remorse notwithstanding the jury verdict.  His
8   position in this respect has, as I think we have seen this
9   morning, a quality of defiance.  As a consequence, this factor
10  has significant prominence in the overall assessment of an
11  appropriate punishment.
12        Two other related and important statutory factors
13  affecting sentencing are the advice of the Sentencing
14  Guidelines and the need of a sentence to avoid creating
15  unwarranted disparities with other similarly situated cases.
16  The statute requires the Court to consider the advice that
17  emerges from the Sentencing Guidelines as to appropriate
18  sentencing ranges, and it requires the Court to consider the
19  need to avoid unwarranted disparity for similarly situated
20  defendants.
21        These two requirements work in harmony.  A principal
22  purpose of the Guidelines has always been to provide judges
23  with a common rubric and framework for deciding on an
24  appropriate sentence, and by that commonality to try to reduce
25  disparity in judgments from one judge to another and one

1  defendant to another.  And in general terms, adhering to
2  Guidelines' recommendations tends to have that effect.
3  Nevertheless, the Guidelines are advisory, not mandatory, and a
4  sentencing judge is ultimately responsible for imposing a just
5  sentence in the particular case at hand, and that ultimate goal
6  is not to yield to an uncritical adherence to the Guidelines'
7  recommendation.

8          Some Guidelines provisions, such as the drug offense
9  guidelines, are frequently consulted.  And as a result, there
10  is a large body of decisions involving their application.
11  Where there has been such wide experience with guideline
12  provisions, there is an opportunity to assess how well those
13  provisions serve all the relevant sentencing factors, including
14  the reduction of disparity in sentencing.  And as has recently
15  occurred with the drug guidelines, that experience can lead to
16  a revision of the Guidelines to improve the match between their
17  intention and their effect.  The Guidelines at issue in this
18  case have not had a similar frequency of application and,
19  consequently, our collective experience with them is much more
20  limited.

21          At least from the perspective of this case to which my
22  attention has been directed, I do not think the Guidelines
23  applied in accordance with their terms do an adequately
24  reliable job in balancing the relevant sentencing factor for
25  several reasons:  First, the terrorism adjustments that we

```
 1   referred to when we set the Guidelines range operate in a way
 2   that is too general to be convincingly reliable in a given
 3   case.  Both the 12-level adjustment to the offense level and
 4   the automatic assignment of a Criminal History Category VI
 5   which are applied in any case that can be fairly characterized
 6   as a terrorism case, regardless of the particular facts, not
 7   only make the recommendation unuseful as a guide in a
 8   particular case but is actually, in my view, contrary to and
 9   subversive of the mission of the Guidelines which is to address
10   with some particularity the unique facts of the given case.
11   And gross adjustments such as the ones I've referenced do not
12   do that.
13           Moreover, the automatic assignment of a defendant to a
14   Criminal History Category VI is not only too blunt an
15   instrument to have genuine analytical value, it is
16   fundamentally at odds with the design of the Guidelines.  It
17   can, as it does in this case, import a fiction into the
18   calculus.  It would impute to a defendant who has had no
19   criminal history a fictional history of the highest level of
20   seriousness.  It's one thing to adjust the offense level upward
21   to signify the seriousness of the offense.  It is entirely
22   another to say that a defendant has a history of criminal
23   activity that he does not, in fact, have.
24           Contrast this situation with the career offender
25   guideline which makes a somewhat similar adjustment.  But in
```

1    that instance the Guidelines make an adjustment to a
2    defendant's criminal history score precisely because he has a
3    certain criminal history.  The adjustment to criminal history
4    called for by Section 3A1.4(b) is, I believe, simply a way of
5    "cooking the books" to get to a score and a desired sentencing
6    range, at least as it is applied in the context of this case.
7    So I find the Guidelines literally taken, because of those
8    problems and perhaps a few others, not to be reliable advice.

9            Another way of assessing the usefulness of Guidelines
10   advice is to look at how they have been actually applied, a
11   kind of judicial biofeedback.  A survey of cases involving
12   convictions under the same statutes that are involved in this
13   case indicates that courts have frequently varied downward by
14   significant degrees from the range recommended by these
15   Guidelines.

16           I asked our probation officer to obtain some
17   statistical data from the Sentencing Commission regarding
18   recent sentences under Sections 2339A and 2339B and 956, the
19   key statutes involved here.  The data she obtained is for
20   fiscal years 2009 through 2011.  It is a small sample and may
21   not be statistically reliable.  I don't use it for that purpose
22   but for illustrative purposes.

23           In that period, that three-year period, offenders
24   convicted under 2339B received non-government-sponsored
25   below-range sentences slightly more than half the time.  For

1    convictions under 2339A that figure rose to just above
2    two-thirds.  In cases involving both statutes there are only
3    seven cases, and six of the seven received
4    non-government-sponsored below-range sentences.  Five offenders
5    were convicted in that period under both 2339A and 956, and
6    four of the five received non-government-sponsored below-range
7    sentences.
8             As I say, these figures are, admittedly, a
9    non-rigorous analysis, but they do suggest that judges faced
10   with sentencing decisions in individual cases have not found
11   the Guidelines range helpful in establishing the appropriate
12   sentence.  And, of course, in this case, even the government's
13   recommended sentence is below the calculated guideline range
14   and is, I guess, implicitly, a government-sponsored below-range
15   recommendation.
16            All that said, the guidelines at issue are not wholly
17   without some advisory value.  If the principal defects, as I've
18   found them, are omitted from the calculation, leaving in place
19   the respective base offense levels and more common adjustments,
20   such as role in the offense or obstruction of justice, one can
21   hypothesize a calculation that tends to correct for what I find
22   to be the defects in the Guidelines as they are written and
23   strictly applied.
24            Without going through the details, because this is a
25   hypothesis and not a strict application, leaving out the

1    terrorist adjustment to the offense level and the postulation
2    of a criminal history of Category VI, the offense level under
3    Count 1 would be 30; under Counts 2 through 4, 35; and under
4    Counts 5 through 7, 14.  Under the grouping rules, which are
5    uncontroversial, the highest level, 35 for Counts 2 through 4,
6    would be used, and that is appropriate in this case because
7    those represent the gravamen of the prosecution.
8            Using a true criminal history category of I with a
9    Level 35 produces a suggested guideline range -- and this is
10   hypothetical, I repeat -- of 168 to 210 months.  That range is
11   generally in line with what the Sentencing Commission
12   statistics indicate.  For the same period, 2009 to 2011, the
13   average sentence imposed on convictions under 2339B was 179 and
14   a half months and the median was 135.  For convictions under
15   2339A the average sentence was 164.7 months and the median was
16   144.   For convictions under both sections the average was
17   171.5, and the median 112.5.  The numbers are substantially
18   higher when a conviction under 956 is involved, as it is here,
19   although, again, the sample size is very small for these cases.
20   For convictions under 956 alone -- and there are a total of 12
21   in the relevant period -- the average sentence was 276.3
22   months, and the median 222.  For the five convictions under
23   both 2339A and 956, which is also the case here, the average
24   sentence was 242 and a half months and the median was 204.
25           Now, I've used a lot of numbers, and I don't mean this

to be a mathematical computation. My point is simply to try to consult those non-guidelines Guidelines that might help make a decision about an appropriate sentence, having in mind what is legitimate, in my view, about the guidelines and, two, the need to avoid unwanted disparities across cases. I should add, of course, that none of this comparison addresses the particular facts of any of the cases; this is simply outcomes only. But in sum, when the features of the relevant guidelines here that I find to be defective are removed from the calculation, the resulting range is substantially consistent with what judges seem to have been actually doing in cases involving charges under the same statutes.

Now, proposing that hypothetical or "ghost" guideline, as I say, yields a suggested range, if we can even call it that, of 168 to 210. In coming to that conclusion, I have made two major judgments, disregarding parts of the guidelines as written, that have been favorable to the defendant.

Taking consideration of all the factors in 3553(a), including, in particular, the need for just punishment for the offense, the need to protect the public from future offenses by the defendant, and the need to avoid unwanted disparity, I think it is appropriate to impose a sentence at the upper end of that range, hypothetical range, of 210 months.

                          * * *